# Exhibit 72

# Rental employment - interpretation - double taxation agreement - USA and Canada

Previous instance: (SKM2001.396.ØLR) Judgment of the Eastern High Court of 6 April 2001, B-3194-96

| | |
|---|---|
| Date of release | 14 Feb 2003 08:09 |
| Date of judgment / ruling / decision / control signal | February 4, 2003 |
| SKM number | SKM2003.62.HR |
| Authority | Supreme Court |
| Case number | 2nd Division, 326-2001 |
| Document type | Dom |
| Overall topics | treasure |
| Topics Topics | Employer's withholding of A-tax etc. for employees + Personal tax, corporate tax, shareholders and companies as well as capital gains taxation |
| Keywords | Rental employment, employer, double taxation, interpretation, OECD, model agreement, USA, Canada |
| Summary | The double taxation agreements with the USA and Canada from 1948 and 1955, respectively, contained a provision that the right to tax wage income exceptionally belonged to the country where the employee resided and not, as a general rule, to the country where the work was performed. |
| | Assumed that neither of the two double taxation treaties actually took a position on whether temporary employment cases should be classified under the main rule of tax law for the State of employment or the exception of tax law for the State of residence, as it was not until around 1980 that international tax authorities raised questions about international labor hire was to be taxed under rules corresponding to the two double taxation treaties. |
| | Article 2 (1) of both double taxation agreements 2, it follows that Denmark must interpret the terms in the agreements in accordance with the Danish tax rules, unless otherwise follows from the context. Since the double taxation agreements did not take a position on the processing of work rental cases, the Supreme Court found that the interpretation of the agreements in relation to work rental had to be made in accordance with the tax rules in force at the time of taxation. The Supreme Court therefore found that Denmark had been entitled to apply the relevant provisions of the double taxation agreements with the USA and Canada in accordance with the internal Danish tax rules on temporary employment, which were introduced in 1982. |
| | No basis was found to consider Danish tax practice to be an obstacle to taxation in 1990. |
| | The Supreme Court also emphasized that the tax law that accrues to Denmark in accordance with the internal Danish tax rules is in accordance with international developments, cf. the interpretation used in pkt. 8 of the OECD's comments from 1992 on the corresponding derogation in Article 15 (2). 2 of the OECD Model Convention. The interpretation in that paragraph was not considered to concern only cases of abuse. (Dissent) |
| Reference (s) | The Withholding Tax Act § 2, para. 1, letter c<br>The Withholding Tax Act § 43, para. 2, letter h<br>Equation Guide 2002 DD2 , DE USA |

**Parties**

H1 Company Germany GmbH c / o H1 Denmark A / S

(lawyer Bente Møll Pedersen)

against

Ministry of Taxation
(Chamber Advocate by Lawyer Kim Lundgaard Hansen)

**Judged by the Supreme Court judges**

Hornslet, Wendler Pedersen, Torben Melchior, Peter Blok, Børge Dahl, Lene Pagter Kristensen and Niels Grubbe.

In a previous instance, a judgment was handed down by the 13th Chamber of the Eastern High Court on 6 April 2001.

The appellant, H1 Company Germany GmbH c / o H1 Denmark A / S, claims that the Court should:

The respondent, the Ministry of Taxation, must recognize,

1. that Article 11 (1) 2 of the double taxation agreement of 6 May 1948 between Denmark and the United States was to apply in the income year 1990, if a natural person resident in the United States was made available by an American employer to perform work in Denmark for a Danish employer under such conditions that the agreement between the American employer and the Danish employer had to be regarded as temporary employment, cf. the withholding tax act, section 2, subsection. 1 ,. letter c, and that Denmark was therefore obliged to exempt worker A, USA, from Danish taxation of his wage income in the income year 1990, provided that the other conditions set out in Article 11 were met; and
2. that Article 9 (1) 2 of the double taxation agreement of 30 September 1955 between Denmark and Canada was to apply in the income year 1990, if a natural person resident in Canada was made available by a Canadian employer to perform work in Denmark for a Danish employer under such conditions that the agreement between the Canadian employer and the Danish employer had to be regarded as temporary employment, cf. the withholding tax act, section 2, subsection. 1, letter c; and that Denmark was therefore obliged to exempt worker B, Canada, from Danish taxation of his wage income in the income year 1990, provided that the other conditions set out in Article 9 were met; as well
3. that the order of the Customs and Tax Region Esbjerg issued to the appellant on 13 May 1993 to withhold withholding 30% of the employment rent tax should be annulled in respect of workers A, USA, and B, Canada.

The Ministry of Taxation has claimed confirmation.

H1 Germany's Danish branch regularly reimbursed H1 USA and H1 Canada the salary expenses to A and B, respectively, for the periods during which they worked for the branch. It is agreed that according to the criteria set out in p. 8 in the comments from 1992 to Article 15, para. 2 of the OECD's model agreement, H1 Germany's Danish branch must be regarded as an employer in accordance with this provision.

As stated in the judgment, Article 2 (1) 2 of the Double Taxation Agreement of 6 May 1948 with the United States:

"(2) By the application of the provisions of this Agreement by one of the Contracting States, unless the context otherwise requires, any term which is not otherwise defined shall have the meaning given to it by the State's own tax legislation. . "

The double taxation agreement of 30 September 1955 with Canada contains in Article 2, para. 2 a corresponding provision.

In the withholding tax act, section 2, subsection 1, state, inter alia:

"§ 2. The obligation to pay income and wealth tax to the state also rests with persons who are not covered by the provisions of § 1 ... insofar as the persons in question ...

...

c) receives income arising from activities carried out in this country which, pursuant to section 43, subsection 2, letter h), shall be included in A-income, ".

In § 43, para. 2, is determined, inter alia:

"Subsection 2. The following types of income may also be classified as A-income in accordance with the Minister of Taxation's further determination:

...

h) Remuneration in cash and in connection therewith provided free board and lodging to a person who is made available to perform work in this country. "

The provisions were inserted by Act No. 244 of 9 June 1982. In the general comments on the bill, it is stated, among other things, (Folketingstidende 1981-82, 2nd collection, appendix A, questions 3299-3302)

"Furthermore, it is proposed that remuneration for personal work performed by a person who has been hired for this purpose by a third party can be classified as A-income according to the Minister of Taxation's specification. The proposal means that workers who are hired out to perform work in this country and who are not fully taxable will be subject to limited tax liability on the remuneration for the work in question. .

…

Rental of labor

The proposal is a consequence of the Nordic agreement on tax deductions (hereinafter referred to as the deduction agreement), which has now been completed at official level.

Under the double taxation agreements with the Nordic countries, the country of residence is granted the right to tax on remuneration which a person resident in one of the Contracting States receives for services in the other Contracting State. However, it is i.a. a condition that the recipient does not stay in the other state for more than 183 days.

This provision is repealed by the Nordic Wood Agreement when there is a rental of labor. If the tax authorities in the labor state find that there is a rental of labor, advance tax can thus be demanded from the first working day.

According to the deduction agreement, a worker is considered the landlord when the person in question is made available by another person (the landlord) to perform work in someone else's company and the landlord is not responsible for or bears the risk of the work result.

In the migration agreement, Denmark has waived the right to tax wages for Danes who are employed in one of the other Nordic countries under the mentioned conditions, also in cases where the stay in the labor state is less than 183 days.

Pursuant to the present proposal, the Minister of Taxation is authorized to lay down provisions on the taxation of workers from the other Nordic countries who are employed in this country under the said conditions. "

In the bill's comments on the individual provisions, it is stated about section 43, subsection 2, letter h, which in the proposal was letter i, i.a. (Folketingstidende 1981-82, 2nd collection, Appendix A, sp. 3304):

"The proposed provision to section 43 (2) (i) of the Withholding Tax Act stipulates that remuneration in money and in connection therewith provided free board and lodging to a person who is rented out by another third party or otherwise made available to to perform work in this country for another, can be attributed to A-income according to the Minister of Taxation's specification. § 2 (1) (c).

With regard to the question of whether a worker should be considered as hired out, special emphasis must be placed on whether

   a. the overall management of the work is the responsibility of the client,
   b. the work is carried out at a workplace at the disposal of the client and for which he is responsible,
   c. the remuneration of the landlord is calculated according to the time elapsed or taking into account other correlations between the remuneration and the salary received by the employee,
   d. the majority of work tools and equipment are provided by the client, and
   e. the landlord does not unilaterally determine the number of workers and their qualifications. "

By the Ministry of Taxation's executive order no. 561 of 19 October 1982, the authorization was exercised with effect from 28 October 1982.

Circular no. 70 of 3 June 1983 states about taxation on temporary employment, among other things:

"An agreement has been concluded between the Nordic countries on the collection of taxes, called the" wooden agreement ", which entered into force on 22 October 1982 and which includes Denmark, Finland, Iceland, Norway and Sweden.

The double taxation agreements stipulate that the tax right to remuneration as a general rule belongs to the state of employment. This main rule is deviated from according to the so-called "183 day rule",

according to which the tax law remains in the state of residence on condition that the stay in the state of employment is a maximum of 183 days within a calendar year, that the employer is not resident in the state and that the wage is not fixed place of business in the State of employment.

This exception rule (the 183-day rule) does not apply in the case of temporary employment, because in these cases it must be assumed that the employee has an employer in the State of employment. The fact that the "183-day rule" does not apply in cases of temporary employment means that the main rule, according to which the labor state has the right to tax the wage, applies from the first day, and that the labor state is consequently entitled to deduct withholding tax from the first working day. Whether the State of employment can exercise this right depends solely on the national law of the State of employment.

An employee is considered hired out when he is made available by another person (the landlord) to perform work in someone else's company (the employer) and the landlord is not responsible for or bears the risk of the work result.

The decision on whether a worker should be considered as hired is made on the basis of an overall assessment, with particular emphasis on whether

   a. the overall management of the work is the responsibility of the employer,
   b. the work is carried out at a place of work at the disposal of the employer and for which he is responsible,
   c. the remuneration of the landlord is calculated according to the time elapsed or taking into account other correlations between the remuneration and the salary received by the employee,
   d. the majority of work tools and equipment are provided by the employer, and
   e. the landlord does not unilaterally determine the number of workers and their qualifications.

In the case of Denmark, the above criteria will also apply in relation to countries other than the Nordic countries. "

An OECD report from 1985, "Taxation Issues Relating to International Hiring-out of Labor", states, among other things:

"2. Possible solutions

62. The Committee considered the various suggestions put forward in relation to Article 5 and to Article 15 of the 1977 OECD Model Convention. All of these suggestions would tend to reinforce the possibilities of the State where the employment is exercised to tax the remuneration.

...

b) Under Article 15 (dependent services)

i) Excluding biring-out of labor from the scope of Article 15, paragraph 2.

66. A radical solution to a number of problems arising for taxing biring-out activities under Article 15 would be to exclude these activities altogether from the scope of paragraph 2 of the Article. This would enable the State where the employment has been exercised (for the user) to levy tax on payments made either directly to the workers, or to the intermediary, deeming therefore these payments to be the remuneration of the workers employed by the user.

...

69. The Committee noted that a similar solution had been adopted multilaterally by the Nordic countries, which had concluded between themselves a "withholding tax agreement", giving the right to withhold advance tax on wages, from the first day of work, to the State where the work is performed, when the tax authorities of that State consider that the situation is one of a biring-out of labor. If it appears later that the worker may get the fair benefit of the 183-day rule, the amount of tax withheld is transferred to the State of residence of the worker, who will be granted credit or refund.

70. The Agreement between Nordic countries provides a definition as well as criteria for identifying cases where an employee is to be considered as bired out - ie basically, where the intermediary neither has responsibility, nor bears any risk for the achievement of the work.

...

ii) Interpreting the concept of "employer" under Article 15.

73. Paragraph 2 b) of Article 15 implies that the State of source of the remuneration may tax it if the remuneration is paid by, or on behalf of, an employer who is a resident of that State.

74. It has been pointed out that, in the case of international biring-out of labor, the employees exercise the work abroad, not on behalf of the intermediary, who may not be a resident of the country

where that work is carried out, but on behalf of the user, who is normally resident there. Some Delegates have therefore stressed that if, in a particular situation, the analysis shows that the functions of employer are mainly exercised by the user, it might be asked whether this should not be decisive for the interpretation of Article 15 and whether the exception rule in paragraph 2 is applicable at all.

75. The Committee found a lot of value in such a "substance over form" approach. The Model Convention offers no definition of the concept of employer. On the other hand, the Commentary clearly states that the employer envisaged was the one having rights on the work produced and bearing the responsibility and risks for the employee's activities. In the hiring-out situation, these functions lie with the user, and not with the intermediary; it is therefore arguable whether it would be right to put a decisive weight on the formal existence of an employment contract, and not on these material facts, which cannot be changed at will and played around with to achieve particular results.

76. For this interpretation to be recognized in the context of bilateral treaties, agreement should be reached between Contracting States on situations where the intermediary does not fulfill the requirements for being regarded as employer within the meaning of Article 15, paragraph 2 b). Some relevant criteria have been set in the Nordic "withholding tax agreement" (cf. paragraphs 69 and 70 above and Annex II). For the solution to be effective the domestic legislation of the Contracting States should enable them to levy tax, in the hands of the user, on payments made to the workers or to the intermediary.

77. Some members of the Committee were uncertain as to the practicality of the solution for the working of the convention. However, it was pointed out that, for the application of the convention, there was no need to identify or define the employer. Nor would there be any need to identify the workers themselves in the States of source. In order to avoid double taxation, the workers - resident of the other Contracting State - would approach their tax authorities which would only have to check that the workers have effectively been employed in the State of source, and that the tax was levied there.

78. When considering the application of such a "substance over form" concept to existing conventions drafted along the lines of Article 15 of the 1977 Model Convention, the Committee noted that a considerable number of actual cases had been solved bilaterally in accordance with this approach (eg between Nordic countries). However, certain Delegates stated that it would be difficult, if not legally impossible, for the tax authorities of their countries to apply this concept under existing texts, when this clearly implied that the "legal" employer (ie the intermediary) would be ignored.

79. However, for the purposes of new conventions or protocols to be signed between Member countries, a large majority of Delegates expressed their countries' willingness to consider inserting, in any new texts, provisions according to which the employer, within the meaning of paragraph 2 b) of Article 15, is the user of the labor when certain conditions are met. These conditions would be further specified by the Contracting States during bilateral negotiations. "

Tidsskrift for Skatteret 1987.361 mentions a decision from the Ministry of Taxation on taxation in a case where Mærsk Olie og Gas A / S had for a period borrowed a specialist from Shell International Petroleum. Following a submission to the Dutch Ministry of Finance, the Ministry replied that Denmark could not make tax deductions in accordance with the rules on temporary employment, as in the opinion of the Dutch Ministry of Finance there is no temporary employment, and that the Danish-Dutch double taxation agreement of 20 February 1957 does not contain special rules. in the case of temporary employment.

In Tidsskrift for Skatteret 1987.597 it is stated in a mention of a decision from the State Tax Directorate:

"An English company made some English, Dutch, American, Norwegian and French workers available to a Danish company. During the stay in Denmark, all workers were taxable according to the rules on temporary employment, cf. KL § 2, subsection 1c.

All workers stayed in Denmark for less than 183 days per year.

Regarding the right to tax in accordance with double taxation agreements entered into in the case of employment, Denmark as a state of employment has the right to tax, as the 183-day rule does not apply in the case of employment, because in these cases it is assumed that the employee has an employer in the state. .

However, England and the Netherlands have expressed that they do not share this view. In the opinion of these countries, it must be assumed that the landlord is the employer of the worker.

An agreement has been reached between Denmark and the United Kingdom, and Denmark and the Netherlands, that the 183-day rule applies in the case of temporary employment, so that the labor state can only tax when the stay in the labor state exceeds 183 days per. year.

However, the current Danish / Dutch double taxation agreement does not cover the continental shelf. This means that Denmark can tax Dutch persons working on the Danish continental shelf in accordance with Danish law, as any collective agreement restrictions do not apply to the shelf area. the towing obligation imposed on Englishmen and Dutchmen working on-shore, with effect from the commencement of work. "

In circular no. 135 of 4 November 1988 on the collection of income and wealth tax according to the withholding tax act, it is stated in pkt. 16 among others:

"In the case of temporary employment, cf. section 12, letter c), it is agreed in the Nordic double taxation agreement that the state has the right to tax the wage, regardless of whether the recipient's stay in this state is less than 183 days. competent authorities the possibility of agreeing that the undertaking which hires the labor must be regarded as the employer, so that the State of employment has the right to tax the remuneration. "

Point 8 of a translation of the OECD's commentary on Article 15 of the 1992 OECD Model Convention states:

that the term "employer" is not defined in the agreement, but it must be understood as meaning that the employer is the person who has the right to the work performed and who bears the responsibility and risk. In the case of international labor hire, the user largely performs these functions. In this context, the facts should take precedence over formality, ie. that each case should be investigated in order to determine whether the employer's functions are mainly exercised by the intermediary or by the user. It is therefore for the Contracting States to agree on the situations in which the intermediary does not fulfill the conditions required of him in order to be regarded as an employer within the meaning of this paragraph. 2.

| - | the landlord does not bear the responsibility or risk of the work result; |
| - | the user has the authority to instruct the worker; |
| - | the work is performed in a workplace that the user controls and is responsible for; |
| - | the remuneration of the landlord is calculated on the basis of the time elapsed or in other respects, taking into account a link between this remuneration and the salary received by the worker; |
| - | the majority of work tools and equipment are made available to the worker by the user; |
| - | the number of workers and their qualifications are not unilaterally determined by the landlord. " |

Point 13 - "Comments on the comment" - states:

"13. Switzerland is of the opinion that the comments in paragraph 8 above should only apply to the international hiring of labor only in cases where there are dispositions of an abusive nature."

The equation guide for 1992 contains in pkt. DD2 a new section in relation to previous equation guidelines, where it is stated:

"Work rental

The 183-day rule is also deviated from if, according to a double taxation agreement, it can be as-

sumed that the state of employment has the right to tax remuneration to a hired person, see DA2.3. If this is the case, the labor state has the right to tax the wage income from the 1st day. The OECD Model Agreement does not yet contain rules on temporary agency work, but agreement has been reached in principle between OECD countries that the temporary agency point of view should be interpreted in Article 15 on remuneration for personal work in employment.

However, this does not mean that all OECD countries bilaterally recognize the concept of temporary employment, cf. below.

Separate rules on temporary employment are only found in some of the double taxation agreements entered into by Denmark, e.g. the Nordic double taxation agreement and the double taxation agreement between Denmark and the United Kingdom, where Article 15 has been amended with effect from 1 January. 1992. In the case of double taxation treaties which do not contain separate provisions on temporary agency work, the concept of temporary agency work is applied in relation to the countries concerned, unless there is positive information that the other country does not recognize the concept of temporary agency work.

The Danish tax authorities are so far aware that the concept of temporary employment is not recognized by the Netherlands, France and Germany. The same applies to England for the time being before 1 Jan. 1992. "

A double taxation agreement of 22 November 1995 between Denmark and Germany states in Article 15 (1) 4, that remuneration for work within the framework of professional hiring of labor is not covered by the usual 183-day rule. It is also provided that the competent authorities must conclude the necessary agreements in order to avoid double taxation.

In Tax Abroad 1997.133, a mention of a decision from the Danish Customs and Tax Administration states, among other things:

"According to the OECD model agreement, it is usually assumed that the hired worker has his employer (= the work tenant) in the state of employment, and thus the work landlord is not considered an employer.

However, the Netherlands has considered the employer to be the employer of the temporary worker. Denmark and the Netherlands have so far interpreted the double taxation agreement between the two countries as meaning that the 183-day rule in Article 14 (a) of the agreement applies to the employment situation, so that the hired worker only becomes taxable after 183 days.

The Netherlands has not made any reservations about the concept of work rental established by the OECD in the 1992 model agreement, and the Danish Customs and Tax Administration is therefore of the opinion that the concept of work rental must now be understood in accordance with the OECD guidelines in the comment section. 8 to Article 15 of the Model Convention (corresponding to Article 14 of the Danish-Dutch double taxation agreement).

As a result of this, it has been decided that employed persons must pay tax to Denmark from day one, cf. KSL § 2, subsection. 1, letter c, as well as Article 14 of the Dutch-Danish double taxation agreement.

The same applies to France, cf. Article 14 of the Franco-Danish double taxation agreement.

The changed practice takes effect from the income year 1997. "

The double taxation agreement of 17 September 1997 with Canada and of 19 August 1999 with the United States contains provisions identical to Article 15 (1). 2 of the OECD Model Convention.

**Supreme Court remarks**

Five judges - Hornslet, Torben Melchior, Børge Dahl, Lene Pagter Kristensen and Niels Grubbe - say:

A and B, who were domiciled in the USA and Canada, respectively, were made available by H1 USA and H1 Canada in part of 1990 to H1 Germany's Danish branch to carry out work in this country. It was thus the Danish branch that decided what work they were to perform and which bore the risk of the work. The branch reimbursed their salaries to H1 USA and H1 Canada respectively. It is undisputed that they were covered by the rules on temporary employment in section 2 (1) of the Withholding Tax Act. 1, letter c, cf. § 43, para. 2, letter h. An application of these rules would lead to H1 Germany's Danish branch as their Danish employer in an international employment relationship with the Danish tax authorities having to settle employment tax in the form of A-tax of 30% of their

salary. However, H1 Germany claims that

Denmark's double taxation agreements of 6 May 1948 and 30 September 1955 with the United States and Canada, respectively - contain - in the same way as the OECD model agreement since 1963 - a provision that the right to tax wage income exceptionally belongs to the country where the employee resides and not as a general rule, the country where the work was performed. It is i.a. a condition that the work has been "performed as an Officer (" employee ") at or under Contract with" a person in the country of residence, cf. Article 11, para. Or is "performed for" a person in the country of residence, in accordance with Article 9 (2) of the Agreement with the United States. 2 of the Agreement with Canada.

It was reported that it was not until around 1980 that questions were raised internationally by tax authorities as to how international labor hire should be taxed under such rules. The parties agree that neither of the states, when the agreements were concluded, had any idea as to whether employment should be classified under the general rule of taxation of the State of employment or of the exception of the right of taxation of the State of residence. In our view, this is an open question in the wording of the said provisions, and the agreements do not contain any definition of the terms used concerning working conditions which are relevant to the answer to the question. In these circumstances, according to Article 2, para. 2, in both agreements interpret the terms in accordance with the Danish tax rules, unless otherwise stated in the context. In the present case, which concerns the application of the agreements to an activity on which the agreements, as mentioned, have not taken a position, the interpretation must be made in accordance with the tax rules in force at the time of taxation. There is no information that the United States or Canada is of the opinion that in a case such as the present - where international employment has been arranged in such a way that the employment company (H1 USA and H1 Canada, respectively) has undertaken to pay the employee's any income tax to the labor state - there is a collision between their tax law and the tax law that the Danish authorities claim against H1 Germany. We then find,

The Withholding Tax Act, section 2, subsection 1, letter c, and § 43, para. 2, letter h, which was introduced in 1982, was a consequence of an agreement between the Nordic countries on tax deductions in cases where there was international employment. However, the legislation was not limited to employees from the Nordic countries, but also applies to temporary employment in other international conditions. There are not sufficient grounds for considering Danish tax practice to be an obstacle to taxation in 1990, cf. the decision in TfS 1987.597.

The tax law which hereafter accrues to Denmark vis-à-vis H1 Germany is otherwise in good accordance with international developments, as this, among other things, reflected in the interpretation in paragraph 8 of the OECD's 1992 comments on the effectively equivalent derogation in Article 15 (1). 2 of the OECD Model Convention - an interpretation which, in our view, does not only concern cases of abuse. Both Canada and the USA have also entered into new double taxation agreements with Denmark in 1997 and 1999, respectively, with provisions that are identical to Article 15 (1) of the Model Agreement. 2, without distancing itself from the OECD's comments on the provision.

On this ground, we are voting in favor of the judgment.

Judges Wendler Pedersen and Peter Blok say:

Pursuant to Article 11 (1) 2 of the 1948 double taxation treaty with the United States and Article 9 para. 2, in the double taxation agreement of 1955 with Canada, a person who resides in the USA or Canada, but performs work in Denmark, shall be exempt from taxation of the remuneration in Denmark, if his stay in Denmark does not exceed 180 days or 183 days, and the work is "performed as an Officer at or under Contract with" a person or a company domiciled in the United States, respectively, is "performed for" a person or a company domiciled in Canada. These provisions must be understood as meaning that they at least as a clear starting point include persons who are employed by - have entered into an employment agreement with - a company domiciled in the USA and Canada, respectively. This is explicitly stated in the wording of the provision of the double taxation agreement with the United States, and there is no basis for understanding the provision of the agreement with Canada in any other way. The purpose of the provisions has i.a. has been to ensure that

tax rules do not impede the international movement of skilled labor, for example in cases where a plant supplied by a company in the other country has to be installed by its employees. Such a case is thus certainly also covered by the provision of the double taxation agreement with Canada, although the work in a sense can be said to be "performed for" the company in the workplace. The purpose of the provisions has i.a. has been to ensure that tax rules do not impede the international movement of skilled labor, for example in cases where a plant supplied by a company in the other country has to be installed by its employees. Such a case is thus certainly also covered by the provision of the double taxation agreement with Canada, although the work in a sense can be said to be "performed for" the

company in the workplace. The purpose of the provisions has i.a. has been to ensure that tax rules do not impede the international movement of skilled labor, for example in cases where a plant supplied by a company in the other country has to be installed by its employees. Such a case is thus certainly also covered by the provision of the double taxation agreement with Canada, although the work in a sense can be said to be "performed for" the company in the workplace.

In the case of temporary employment, where a company temporarily makes an employee available to another company for remuneration, the landlord must, as a starting point, continue to be considered the employee's employer in terms of contract law. For companies that are both located in Denmark, the same applies in relation to the obligation to include tax on salary and other tax law rules, for example in cases where a temp agency "rents out" a temp. Against this background and in accordance with the purpose of the mentioned provisions in the double taxation agreements with the USA and Canada, it is most obvious to understand these so that - provided that the time limit is not exceeded - as a starting point also authorizes tax exemption in Denmark for persons, which is temporarily leased by a company in the USA or Canada to a company in Denmark. Even if this starting point is used, it must, however, be possible to deviate according to general principles in the case of abuse - attempted circumvention - of the provisions. This will i.a. This may be the case if there is no real employment with the company in the USA or Canada, as this company is only deposited as an intermediary (intermediary) in order to create an opportunity to utilize the tax exemption in accordance with the regulations.

The Withholding Tax Act, section 2, subsection 1, letter c, cf. § 43, para. 2, letter h, on limited tax liability for foreign companies' leasing of work to Danish companies, which was carried out in 1982, is not limited to cases of abuse, but according to the preparatory work applies in principle in all cases where the Danish company - as it normally will be the case of work outsourcing - is responsible for and bears the risk of the work result. The purpose of the rule in particular was to create an internal legal basis for tax liability in accordance with an agreement entered into between the Nordic countries - the so-called draft agreement. It is said in the preparatory work, cf. Folketingstidende 1981-82, appendix A, sp. 3302, that the 183-day rule in the double taxation agreements with the other Nordic countries - which essentially corresponded to the rules in the double taxation agreements with the USA and Canada - is hereby "put out of force" for temporary employment, and that Denmark "waives" taxation of wages. to Danes who are rented out to a company in another Nordic country, even in cases where the stay is less than 183 days. In implementing the rule of the Withholding Tax Act, it was thus assumed that such a rule on temporary employment could not be unilaterally interpreted in the applicable double taxation agreements, but presupposed the conclusion of an agreement to this effect with the other state. to tax wages for Danes who are rented out to a company in another Nordic country, even in cases where the stay is less than 183 days. In implementing the rule of the Withholding Tax Act, it was thus assumed that such a rule on temporary employment could not be unilaterally interpreted in the applicable double taxation agreements, but presupposed the conclusion of an agreement to this effect with the other state. to tax wages for Danes who are rented out to a company in another Nordic country, even in cases where the stay is less than 183 days. In implementing the rule of the Withholding Tax Act, it was thus assumed that such a rule on temporary employment could not be unilaterally interpreted in the applicable double taxation agreements, but presupposed the conclusion of an agreement to this effect with the other state.

This also seems to have been laid down by the tax authorities in the following years. In circular no. 135 of 4 November 1988 on the collection of income and wealth tax according to the withholding tax act, it is thus stated in pkt. 16 in relation to double taxation agreements other than the Nordic one, that "the competent authorities have the opportunity to agree that the company that hires the labor must be considered an employer, so that the labor state has the right to tax the remuneration". In 1987, the tax authorities stated that the rule on taxation of employment would not be applied to persons residing in the Netherlands and England, as these countries did not agree that cases of employment were exempt from the 183-day rule, cf. TfS 1987 no. 361 and 597.

The model agreements for the avoidance of double taxation drawn up by the OECD contain in Article 15 (1) A provision which essentially corresponds to Article 11 (2). 2, i. The double taxation treaty of 1948 with the United States and Article 9, para. 2 of the 1955 Agreement with Canada. A report on "Taxation Issues Relating to International Hiringout of Labor" issued in 1985 by an OECD committee states that no agreement could be reached that the tenant should be considered an employer for the purposes of Article 15 (1). 2, corresponding provisions in applicable double taxation agreements. The Committee therefore recommended that the question of the application of these provisions in the employment of workers be resolved by agreement between the States Parties.

The scope of the statements in the commentary to the 1992 OECD Model Convention (point 8 of the comments on Article 15) gives rise to doubts. It thus seems unclear whether the statement that the tenant should in principle be regarded as an employer, refers only to cases of abuse, or whether the

lenant should in principle be regarded as an employer, refers only to cases of abuse, or whether the intention is that when renting out work, a general rule on tax liability in the labor state corresponding to the Danish withholding tax law should apply. In addition, at the same time, the Contracting States are referred by agreement to define in more detail the concept of employer that is to apply to temporary employment. It must also be emphasized that the comment, as it appears from the 1985 report and from Denmark's negotiations with a number of other countries, not only clarifies a generally accepted view, but - at least to the extent that implies an exception to the 183-day rule, which has the character of a change in the model agreement itself.

Against this background, the commentary to the 1992 Model Convention cannot, in our view, be taken into account outside cases of abuse in the interpretation of double taxation treaties entered into prior to the commentary. This is true even if the Contracting States have not made reservations about the content of the later comment, as this cannot be understood as an acceptance that a general rule of tax liability in the country of employment can be interpreted in older double taxation treaties.

It follows that there will be an imminent risk of double taxation if a general rule on tax liability in the state of employment when hiring is interpreted in older double taxation agreements entered into by Denmark by unilateral steps on the part of Denmark.

The interpretation of the concept of employer, which can be said to lie in the withholding tax law's rules on employment, was introduced in Denmark after the conclusion of the double taxation agreements with the USA and Canada and, if applied to these, will in fact mean an amendment of the provisions in Article 11 para. . 2, respectively Article 9, para. In those circumstances, Article 2 (1) of the agreements may: 2, in our opinion is not invoked by Denmark.

We then find - in accordance with what was the position of the Danish tax authorities in the amendment of the Withholding Tax Act in 1982 - that a rule on temporary employment corresponding to the Withholding Tax Act can not be interpreted in older double taxation agreements by unilateral steps on the Danish side, and that interpretation of such a rule therefore can only take place if the other Contracting State agrees.

Although the Danish tax authorities have had occasion to raise the issue with the American and Canadian authorities partly in connection with the present case and partly in connection with the negotiations on the new double taxation agreements, no information has been submitted that the US and Canadian side agrees that a general rule on tax liability in the country of employment for temporary employment can be interpreted in the previous double taxation agreements. It is common ground that there is no abuse in the present case.

We find that H1 Germany's claims 1 and 2 have the character of pleas and cannot be upheld in their very general form, which i.a. does not take into account that a different outcome is conceivable in case of abuse.

We then vote in favor of H1 Germany's claim 3, but dismiss the Ministry of Taxation for claims 1 and 2.

The decision is taken by a majority of votes.

The question of legal costs is postponed for a decision in connection with the conclusion of the case, cf. section 320 of the Administration of Justice Act.

**T hi is known for right**

The judgment of the High Court is upheld.