# Exhibit 81



Absolute Translations Ltd
Voest Alpine House
Albion Place
London
W6 0QT

London Office:
Liberty House
222 Regent Street
London
W1B 5TR

Manchester Office:
111 Piccadilly
Manchester
M1 2HY

Birmingham Office:
Cornwall Buildings
45 Newhall Street
Birmingham
B3 3QR

Tel: +44 (0)333 577 0767

@: main@absolutetranslations.com
www.absolutetranslations.com

22 April 2020

### To whom it may concern

This is to certify that the proofreading from Danish to English of the enclosed document has been carried out by an experienced translator for and on behalf of Absolute Translations, and is, to the best of his ability, a true and accurate proofreading.

Yours faithfully

Cristina Costa
Project Manager

ATC membership no. 2019ATCR1222








Registered Office: Voest Alpine House, Albion Place, London W6 0QT    Registered No. 5078111    VAT Registered No. 775 9220 00



# Tidsubegrænset aktielån - aktierne ikke videresolgt

| | |
|---|---|
| Dato for udgivelse | 15 Apr 2010 15:59 |
| Dato for afsagt dom/kendelse | 26 Jan 2010 10:45 |
| SKM-nummer | SKM2010.266.SR |
| Myndighed | Skatterådet |
| Sagsnummer | 08-156303 |
| Dokument type | Bindende svar |
| Emneord | ISLA-aftalen, aktielån, tidsubegrænset, ikke videresalg |
| Resumé | Skatterådet kan ikke bekræfte, at Danmark alene kan beskatte udbytte udloddet på aktier i danske selskaber med 15 %, jf. artikel 10 i dobbeltbeskatningsoverenskomsten mellem Danmark og Storbritannien, når aktierne på tidspunktet for beslutningen om udlodning af udbyttet er udlånt til spørger som er skattemæssigt hjemmehørende i Storbritannien. Begrundelsen herfor er, at långiver fortsat skattemæssigt anses for ejer af aktierne, hvorfor udbyttet skal beskattes efter de regler der gælder for långiver, herunder en eventuel dobbeltbeskatningsoverenskomst mellem Danmark og den stat hvor långiver er hjemmehørende.

Skatterådet kan endvidere ikke bekræfte, at Danmark alene kan beskatte udbytte udloddet på aktier i danske selskaber med 15 %, jf. artikel 10 i dobbeltbeskatningsoverenskomsten mellem Danmark og Storbritannien når aktierne på tidspunktet for udlodningen af udbyttet var stillet til sikkerhed hos spørger. Skatterådet finder, at aktierne - i lighed med aktier der udlånes til spørger - fortsat må anses for ejet af sikkerhedsstilleren og udbytte der udbetales til spørger på aktier modtaget til sikkerhed, må anses at tilkomme sikkerhedsstiller. Beskatningen af udbyttet skal således ske efter de regler der gælder for sikkerhedsstiller, herunder en eventuel dobbeltbeskatningsoverenskomst mellem Danmark og den stat, hvor sikkerhedsstiller er hjemmehørende |
| Reference(r) | Dobbeltbeskatningsoverenskomsten mellem Danmark og Storbritannien art. 10. |
| Henvisning | Ligningsvejledningen 2010-1 **S.G.2.3.3.** |

Det har ikke været muligt at foretage en effektiv anonymisering af den samlede afgørelsestekst. SKAT har derfor set sig nødsaget til, at udelade nogle faktiske forhold i sagen for at undgå en overtrædelse af reglerne om tavshedspligt.

## Spørgsmål

1. Det bedes bekræftet, at udbytte udloddet på aktier i danske selskaber, som på tidspunktet for beslutningen om udlodning af udbytte er udlånt til spørger, i Danmark alene kan beskattes med 15%, jf. artikel 10 i dobbeltbeskatningsoverenskomsten mellem Danmark og Storbritannien.

2. Det bedes bekræftet, at udbytte udloddet på aktier i danske selskaber, som på tidspunktet for beslutningen om udlodning af udbytte er stillet til sikkerhed til eje til spørger, i Danmark alene kan beskattes med 15%, jf. artikel 10 i dobbeltbeskatningsoverenskomsten mellem Danmark og Storbritannien.

## Spørgers forslag

1. Ja.
2. Ja.

## SKATs indstilling

1. Nej.
2. Nej.

## Beskrivelse af de faktiske forhold

*Vedrørende spørger:*

Spørger er et engelsk selskab og er en finansiel virksomhed. Selskabet er skattemæssigt hjemmehørende i Storbritannien.

*Vedrørende aktielån:*

Som led i sin virksomhed låner spørger regelmæssigt aktier i børsnoterede selskaber hjemmehørende i Danmark.

Spørgers lån af aktier er baseret på Global Master Securities Lending Agreement Version May 2000 ("ISLA-aftalen").

Efter ISLA-aftalens punkt 4.2, skal parterne i forbindelse med aktieudlån sørge for, at ejendomsretten i forhold til de udlånte aktier i låneperioden overgår fra långiver til låntager.

Det følger videre af ISLA-aftalens punkt 6.1, at i det omfang der udbetales udbytte på de aktier som långiver har udlånt til låntager, er låntager forpligtet til at betale et beløb til långiver svarende til det udbytte som långiver ville have modtaget, hvis aktierne ikke var udlånt til låntager.

Der vil ikke på forhånd være aftalt en løbetid ved spørgers lån af aktier. I henhold til ISLA-aftalens punkt 8.2. kan långiver til enhver tid ophæve lånet. Tilsvarende kan låntager i henhold til ISLA-aftalens punkt 8.3. til enhver tid ophæve lånet.

*Vedrørende sikkerhedsstillelse i form af overdragelse af ejendomsret til aktier:*

Når spørger låner penge til klienter modtager spørger ofte sikkerhed i form af aktier i børsnoterede selskaber hjemmehørende i Danmark.

I henhold til spørgers standardvilkår er selskabet i sådanne tilfælde berettiget til at overtage ejerskabet af de aktier, der er stillet til rådighed.

Spørgers standardvilkår er underlagt engelsk ret. Repræsentanten oplyser, at i henhold til engelsk ret indebærer ovennævnte standardvilkår, at spørger - når aktierne overtages som Collateral - anses for at være "beneficial owner" af aktierne og at ejendomsretten til aktierne dermed overgår fra låntager til spørger. Dette indebærer, at spørger har ret til at udøve alle ejerbeføjelser over aktierne, herunder ret til at stille aktierne til sikkerhed for lån ydet af tredjemand til spørger. Da overdragelsen af ejendomsretten til spørger alene

sker som sikkerhedsstillelse påhviler der spørger en tilbageleveringspligt. Spørger har dog alene pligt til at levere aktier af samme type tilbage til låntager, og låntager har således ikke krav på at få tilbageleveret netop de aktier, som låntager har stillet til sikkerhed til spørger. I tilfælde af spørgers konkurs har låntager endvidere alene et simpelt krav på selskabet, dvs. låntager kan i tilfælde af spørgers konkurs ikke kræve at få aktierne stillet som sikkerhed tilbage, men må som alle øvrige simple kreditorer nøjes med dividende fra konkursboet.

Det fremgår af spørgers klausul om sikkerhedsstillelse, at sikkerhedsstilleren kan bede om at få de sikkerhedsstillede aktier retur forud for indfrielse af de forpligtelser der måtte være hos spørgeren. Dette forudsætter dog, at der stilles anden sikkerhed til rådighed for spørger som kan godkendes af denne.

Hvis der betales udbytte på aktier, som spørger i henhold til ovenstående har overtaget ejerskabet til, tilfalder dette udbytte spørger. Spørger skal til gengæld kompensere låntager for dette udbytte, jf. spørgers standardvilkår. Dette indebærer, at spørger skal betale et beløb til låntager svarende til det udbytte som låntager ville have modtaget, hvis ejerskabet til aktierne var forblevet hos låntager.

Den ovenfor beskrevne sikkerhedsstillelse i form af overdragelse af ejendomsret til aktier er ifølge repræsentanten omfattet af artikel 6 i direktiv 2002/47/EF om finansiel sikkerhedsstillelse ("Collateral direktivet").

SKAT har forespurgt repræsentanten, hvorvidt de underliggende pengelån har en bestemt løbetid, eller om der er tale om tidsubestemte lån som f.eks. en kassekredit. Repræsentanten har oplyst overfor SKAT, at der er tale om lån uden nogen fast løbetid. Der er tale om en form for kassekredit, hvor der er et aftalt kreditmaksimum og hvor der inden for dette kan trækkes efter behov som på en kassekredit. Spørger kan på et eller andet tidspunkt forlange pengene indbetalt. På samme måde som en bank også kan gøre med en kassekredit.

## Spørgers eventuelle opfattelse ifølge anmodning og bemærkninger til sagsfremstilling

### Ad. spørgsmål 1

Det er repræsentantens opfattelse, at spørgsmålet skal besvares med et "ja". Dette med følgende argumentation:

I den bindende forhåndsbesked offentliggjort som TfS 2001, 146 LR (SKM2001.76) tog Ligningsrådet blandt andet stilling til hvorledes udbytte modtaget af låntager på udlånte aktier skulle beskattes. Ligningsrådet fandt, at det af låntager modtagne udbytte på de udlånte aktier hos låntager skulle beskattes som udbytte. Det synes dermed at følge af TfS 2001, 146 LR, at det i forbindelse med aktielån i almindelighed er låntager, som må anses for rette indkomstmodtager af udbytte. Efter spørgers opfattelse må det følge heraf, at udbytte modtaget af selskabet på lånte aktier i henhold til artikel 10 i dobbeltbeskatningsoverenskomsten mellem Danmark og Storbritannien i Danmark højest kan beskattes med 15%.

I den bindende forhåndsbesked offentliggjort som TfS 2002,755 (SKM 2002.402.LR) fandt Ligningsrådet endvidere, at aktieudlån i henhold til ISLA aftalen kunne ligestilles med udlån i henhold til de standardvilkår, som Ligningsrådet havde haft til bedømmelse i TfS 1999,408 LR, og at aktieudlån i henhold til ISLA-aftalen derfor skatteretligt skulle anses for lån og dermed ikke afståelse. Ligningsrådet tillagde det i den forbindelse afgørende vægt, at løbetiden på aktieudlånet var begrænset.

Det synes dermed modsætningsvist at følge af TfS 2002,755 LR, at aktieudlån i henhold til ISLA-aftalen med en ubegrænset løbetid skatteretligt skal anses for afståelse af aktier fra långiver til låntager. Da spørgers lån af aktier altid er med ubegrænset løbetid, må spørger derfor under alle omstændigheder skatteretligt anses for at have erhvervet de lånte aktier og selskabet må derfor under alle omstændigheder anses for rette indkomstmodtager af udbytte på de lånte aktier.

Selv, hvis man måtte være af den opfattelse, at Ligningsrådets afgørelse i TfS 2001, 146 LR ikke fører til, at udbytte modtaget af spørger på lånte aktier i Danmark højest kan beskattes med 15%, må det forhold at spørgers lån af aktier har en ubegrænset løbetid derfor efter vores opfattelse føre til, at spørger skatteretligt må anses for ejer af de lånte aktier og at udbytte på de lånte aktier derfor højest kan beskattes med 15% i Danmark.

Efter at repræsentanten har haft SKATs indstilling i høring er det anført, at han ikke kan tilslutte sig indstillingen. Vedr. spørgsmål 1 har repræsentanten anført nedenstående:

I SKATs indstilling til besvarelse af spørgsmål 1 anføres:

"Det er SKATs opfattelse, at aktier, der udlånes til spørger i henhold til den forelagte aftale, ikke skattemæssigt kan anses for afstået, men derimod må anses for udlån af aktier. SKAT lægger derved vægt på, at aktierne overføres til spørger uden vederlag for aktierne, at der påhviler spørger en pligt til at tilbagelevere aktier af samme art og mængde til långiver, jf. aftalens pkt. 8.1., og at såvel långiver som spørger i henhold til aftalens pkt. 8.2. og 8.3. kan ophæve lånet på anfordring under iagttagelse af det respektive varsel herfor.

SKAT finder under disse omstændigheder ikke, at den omstændighed, at det ikke i forbindelse med indgåelse af aftalen på forhånd er aftalt, hvad den tidsmæssige udstrækning af aftalen er, i sig selv kan føre til, at aktierne i skattemæssig henseende må anses for afstået af långiver.

Långiver må således - desuagtet udlånet af aktier til spørger - fortsat skattemæssigt være at anse for retmæssig ejer af aktierne".

Repræsentanten er ikke enig i, at långiver skattemæssigt må anses for ejer af aktierne, når udlånet af aktierne ikke er tidsmæssigt begrænset.

Som anført i anmodningen om bindende svar anførte Ligningsrådet i den bindende forhåndsbesked offentliggjort som **SKM2002.402.LR**, at aktieudlån i henhold til ISLA aftalen kunne ligestilles med udlån i henhold til de standardvilkår, som Ligningsrådet havde haft til bedømmelse i TfS 1999.408 LR, og at aktieudlån i henhold til ISLA aftalen derfor skatteretligt skulle anses for lån og dermed ikke afståelse. Ligningsrådet udtalte i den forbindelse:

"Det er dog afgørende for ligestilling med de danske vilkår, at løbetiden af udlån efter OSLA og ISLA begrænses".

Efter repræsentantens opfattelse kan der ikke være tvivl om, at denne udtalelse må forstås således, at aktieudlån i henhold til ISLA aftalen skatteretligt skal anses for afståelse, hvis løbetiden ikke begrænses, med den konsekvens, at låntager skatteretligt må anses for ejer af aktierne.

Dette var SKAT da også enig i SKATs oprindelige indstilling til Skatterådet, hvor SKAT indstillede, at spørgsmål 1 blev besvaret med et "ja", og hvor SKAT anførte følgende:

"Det er på dette grundlag SKATs opfattelse, at når der foreligger en tidsubegrænset aftale kan der ikke være tale om aktielån. Dette betyder, at långiver skattemæssigt må anses for

at have realiseret aktierne og dermed også, at spørgerne skattemæssigt må anses for at have erhvervet aktierne."

Skatterådet har også i den efterfølgende praksis om udlån af værdipapirer anset det for afgørende, at der er tale om tidsbegrænset udlån.

I det bindende svar offentliggjort som **SKM2008.316.SR** anførtes således følgende:

"Udlån i henhold til Aftalen opfylder i det væsentlige samme betingelser som fremgår af afgørelsen **SKM2002.402.LR**. De anførte betingelser må anses at være:

- "Aftalen omhandler børsnoterede værdipapirer, der omsættes på, en anerkendt børs.
- Udlånet kan opsiges på anfordring og <u>løbetiden er tidsbegrænset og kan højest udgøre 6 mdr.</u>, jfr. Aftalens section 5, h.
- Udlånte værdipapirer eller værdipapirer af samme art skal tilbageleveres. [vores understregning]".

Der kan henvises til det bindende svar offentliggjort som **SKM2009.65.SR** hvor Skatterådet bekræftede, at et udlån af aktier i en tidsbegrænset periode på 6 måneder ikke skatteretligt udgjorde en afståelse. Skatterådet svarede samtidig, at det ville ændre besvarelsen, hvis det blev aftalt at forlænge udlånet ud over de 6 måneder. Hvis aktieudlånet blev forlænget ud over perioden på 6 måneder ville udlånet af aktierne dermed skattemæssigt udgøre en afståelse.

SKATs indstilling bryder således med hidtidig praksis om den skatteretlige behandling af udlån af aktier og andre værdipapirer.

I SKATs indstilling henvises til Landsskatterettens afgørelse offentliggjort som **SKM2004.51.LSR**. Denne afgørelse vedrører udlån af aktier i en tidsbegrænset periode på højest 6 måneder, og dermed en situation, hvor aktierne i henhold til ovenstående praksis ikke kan anses for afståede til låntager. I afgørelsen udtaler Landsskatteretten:

"Da låntager ikke er blevet ejer af aktierne i kraft af låneaftalen eller på anden måde, er han ikke skattepligtig af udbyttet, der tilkommer långiver i henhold til de indgåede aftaler."

Modsætningsvist må det følge, at hvis låntager er blevet ejer af aktierne, må låntager skatteretligt anses for retmæssig ejer af udbyttet, og som redegjort for ovenfor følger det netop af praksis, at låntager skatteretligt bliver ejer af aktierne, når løbetiden på udlånet ikke er tidsbegrænset.

Efter repræsentantens opfattelse følger det således klart af praksis om udlån af aktier og andre værdipapirer, at der skatteretligt er tale om udlån, hvis løbetiden er begrænset til 6 måneder, mens der omvendt er tale om afståelse, når løbetiden ikke er begrænset. Da aktieudlånene til spørger ikke er tidsbegrænsede må aktierne dermed skattemæssigt anses for afståede til spørger. Spørger er derfor retmæssig ejer af udbytte på aktierne.

I SKATs indstilling anføres endeligt:

"Det er herefter SKATs opfattelse, at långiver under disse omstændigheder i skattemæssig henseende fortsat må anses for retmæssig ejer af aktierne, og at udbytte, der udbetales til spørger i låneperioden må anses at tilkomme långiver. Dette gælder under alle omstændigheder, så længe låntager ikke har afstået aktierne - også uanset at der ikke på forhånd er aftalt et udløbstidspunkt for lånet. Dette er ikke i modstrid med afgørelsen i SKM2002.402, hvor det må lægges til grund at meningen med aktieudlånet netop var, at låntager skulle sælge aktierne."

SKAT har telefonisk oplyst, at formuleringen "...meningen med aktieudlånet netop var, at låntager skulle sælge aktierne" skal forstås som en henvisning til låntagers faktiske videresalg af aktierne, og ikke som en henvisning til låntagers hensigt om at videresælge aktierne. For god ordens skyld skal det fremhæves, at baggrunden for nærværende anmodning om bindende svar blandt andet er, at spørger ønsker klarhed over den situation, hvor spørger har lånt en post aktier med henblik på videresalg af aktierne, men hvor videresalget mod forventning ikke bliver gennemført og hvor spørger derfor er i besiddelse af aktierne på tidspunktet for udlodning af udbytte på aktierne.

SKAT synes at lægge til grund, at afgørelsen offentliggjort i **SKM2002.402.LR** er baseret på en forudsætning om, at de lånte aktier i denne afgørelse blev videresolgt af låntager. Dette er imidlertid ikke korrekt. Det fremgår således udtrykkeligt af afgørelsen, at den både vedrører den situation, hvor låntager videresælger de lånte aktier og den situation, hvor låntager beholder de lånte aktier og modtager udbytte på disse, jf. til illustration følgende uddrag:

"Formodningen for, at der kan foretages fradrag for vederlag og kompensation for udbytte, gør sig således gældende, <u>hvad enten aktierne er solgt eller ikke</u>. I **SKM2001.76.LR** fastlagdes, at vederlag og kompensation for udbytte kvalificeres <u>uafhængigt af, om aktierne er solgt videre af låntager eller ej</u>. Tilsvarende betragtninger gør sig gældende på låntagersiden. <u>Aktiernes eventuelle videresalg er derfor irrelevant for låntagers mulighed for at kunne fradrage de overførte beløb i den skattepligtige indkomst.</u>

(...)

Ligningsrådet anførte, at det var afgørende for muligheden for at tillægge omkostninger til anskaffelsessummen på en aktiepost, om der er tale om en omkostning, der relaterer sig til gennemførelsen af handelen. Vederlag og kompensation af udbytte må anses som en integreret del af låneaftalen og ikke en omkostning i forbindelse med erhvervelse af aktierne. Der kan eksempelvis indtræde misligholdelsesbeføjelser for låneaftalen som sådan, såfremt beløbene ikke betales. Omkostningerne er derfor ikke en omkostning i forbindelse med salg og genkøb af aktieposten eller en del af denne på et senere tidspunkt. <u>Dette kommer blandt andet til udtryk ved, at disse udgifter afholdes uafhængigt af, om hele den lånte aktiepost sælges eller genanskaffes, om ingen af de lånte aktier videresælges eller som en tredje mulighed, at kun en del af posten afstås og genanskaffes. Denne type omkostninger er dermed uafhængige af, om aktierne sælges og genkøbes.</u> [repræsentantens understregning]".

SKATs indstilling er således i modstrid med afgørelsen offentliggjort som **SKM2002.402.LR**

Hvis man som indstillet af SKAT skulle ændre praksis og fremover lade spørgsmålet om hvorvidt långiver har afstået de udlånte aktier være afhængig af, om låntager vælger at videresælge de lånte aktier eller ej, vil man i øvrigt etablere en retstilstand, hvor låntagers dispositioner ville være styrende for den skatteretlige behandling af långiver. Dette forekommer ikke hensigtsmæssigt.

På baggrund af ovenstående er det derfor repræsentantens opfattelse, at spørgsmål 1 bør besvares bekræftende.

*Ad. spørgsmål 2*

Det er repræsentantens opfattelse, at spørgsmålet skal besvares med et "ja". Dette med følgende argumentation:

Den beskrevne sikkerhedsstillelse i form af overdragelse af ejendomsret til aktier er omfattet af artikel 6 i Collateral direktivet

Collateral direktivets artikel 6, stk. 1 har følgende ordlyd:

"Medlemsstaterne sikrer, at en aftale om finansiel sikkerhedsstillelse i form af overdragelse af ejendomsret kan få virkning i overensstemmelse med de i aftalen fastsatte vilkår."

Artikel 6 i Collateral direktivet blev i Danmark implementeret ved lov nr. 1171 af 19. december 2003, hvorved § 58k blev indsat i lov om værdipapirhandel. § 58k, stk. 1 i lov om værdipapirhandel har følgende ordlyd:

"En aftale om finansiel sikkerhedsstillelse i form at overdragelse af ejendomsret har i forhold til sikringsakt og realisation virkning i overensstemmelse med de aftalte vilkår."

Der synes ikke tidligere direkte, at have været taget stilling til de skatteretlige konsekvenser af en sikkerhedsstillelse ved overdragelse af ejendomsret som beskrevet ovenfor. Som ovenfor nævnt indebærer sikkerhedsstillelse i form af overdragelse af ejendomsret, at selskabet kan udøve samtlige ejerbeføjelser - dvs. såvel retlige som faktiske ejerbeføjelser - over de aktier der er stillet til sikkerhed. Dette støtter efter repræsentantens opfattelse med betydelig vægt, at selskab skatteretligt må anses for ejer af aktierne, og at udbytte udloddet på sådanne aktier derfor er omfattet af artikel 10 i dobbeltbeskatningsoverenskomsten mellem Danmark og Storbritannien.

Hertil kommer, at den beskrevne sikkerhedsstillelse ved overdragelse af ejendomsret i meget vidt omfang svarer til den overdragelse, der finder sted ved aktieudlån, jf. spm. 1. I begge situationer er der således tale om, at samtlige ejerbeføjelser overgår til selskabet, at långiver/sikkerhedsstiller ikke har krav på tilbagelevering af netop de aktier, som er udlånt/stillet til sikkerhed og at selskabet modtager udbytte på aktierne og til gengæld skal kompensere långiver/sikkerhedsstiller for dette udbytte. Som følge heraf må udbytte på aktier stillet til sikkerhed ved overdragelse af ejendomsret efter repræsentantens opfattelse skatteretligt behandles på samme måde som udbytte på udlånte aktier.

Samlet set er det repræsentantens opfattelse, at udbytte udloddet på aktier i danske selskaber, som er stillet til sikkerhed til selskabet ved overdragelse af ejendomsret i henhold til artikel 10 i dobbeltbeskatningsoverenskomsten mellem Danmark og Storbritannien højest kan beskattes med 15%.

Efter at repræsentanten har haft SKATs indstilling i høring er han fremkommet med følgende bemærkninger vedr. spørgsmål 2:

I SKATs indstilling til besvarelse af spørgsmål 2 anføres:

"Det er SKATs opfattelse, at aktier, der stilles til sikkerhed hos spørger i henhold til den beskrevne aftale, lighed med aktier der udlånes til spørger, jf. spørgsmål 1, ikke skattemæssigt kan anses for afstået, men derimod fortsat må anses for ejet af sikkerhedsstilleren.

SKAT lægger herved vægt på, at aktierne stilles til sikkerhed til spørger uden vederlag for aktierne, at der påhviler spørger en pligt til at tilbagelevere aktier af samme art og mængde til långiver, jf. aftalens pkt. 8.4., og at det ifølge ordlyden af spørgers standardvilkår fremgår, at sikkerhedsstiller til enhver tid kan bede om at få de aktier retur, der er stillet til sikkerhed, hvis der stilles anden sikkerhed for spørger som kan godkendes af denne.

SKAT finder under disse omstændigheder ikke at den omstændighed, at det ikke i

forbindelse med indgåelse af aftalen på forhånd er aftalt, hvad den tidsmæssige udstrækning af aftalen er, i sig selv kan føre til, at aktierne i skattemæssig henseende må anses for afstået af långiver."

SKATs begrundelse for indstillingen til svar på spørgsmål 2 er således på dette punkt den samme som begrundelsen i indstillingen til svar på spørgsmål 1, og vi henviser derfor i det hele til det ovenfor anførte, idet vi bemærker, at SKAT i den oprindelige indstilling til Skatterådet var enig i, at spørgsmål 2 skulle besvares med et "ja", jf. følgende:

"Da der ikke i nærværende sag er tale om en fast tidsbegrænset løbetid på maksimalt 6 måneder på de underliggende pengelån er det SKATs opfattelse, at de omhandlede dispositioner med aktier stillet til sikkerhed for pengelån ikke kan sidestilles med aktielån, idet der ikke er tale om tidsmæssigt begrænsede aftaler.

Der kan således ikke ske en sidestilling med aktielån og derfor er udgangspunktet som er gældende, dvs., at aktierne også skattemæssigt skal anses for afståede. Da spørger også skattemæssigt har overtaget ejendomsretten til aktierne er spørger dermed skattemæssigt at anse for rette indkomstmodtager til udbyttet."

I SKATs indstilling henvises endvidere til det bindende svar offentliggjort som **SKM2009.65.SR**, hvor Skatterådet fandt, at renter modtaget af en investeringsforening på værdipapirer, som foreningen har modtaget til sikkerhed i henhold til ISLA-aftalen, ikke skatteligt skulle anses for indtjent af investeringsforeningen, og dermed heller ikke skulle indgå i minimumsudlodningen, i det omfang investeringsforeningen i henhold til ISLA-aftalen skulle viderebetale sådanne renter til låntager.

Det fremgår udtrykkeligt af **SKM2009.65.SR**, at Skatterådets svar er baseret på en forudsætning om, at værdipapirerne er lagt til sikkerhed for et aktieudlån, der har en løbetid på maksimalt 6 måneder. Som nævnt svarede Skatterådet samtidig, at det ville ændre besvarelsen, hvis der blev aftalt at forlænge udlånet ud over de 6 måneder. Hvis aktieudlånet blev forlænget ud over perioden på 6 måneder ville renter modtaget af investeringsforeningen på værdipapirer lagt til sikkerhed i henhold til ISLA-aftalen dermed skattemæssigt skulle anses for optjent af investeringsforeningen.

På baggrund af ovenstående er det derfor repræsentantens opfattelse, at spørgsmål 2 bør besvares bekræftende.

## SKATs indstilling og begrundelse

*Ad. spørgsmål 1*

Der stilles spørgsmål om, hvorvidt udbytte udloddet på aktier i danske selskaber, som på tidspunktet for beslutningen om udlodning af udbytte er udlånt til spørger, i Danmark alene kan beskattes med 15%, jf. artikel 10 i dobbeltbeskatningsoverenskomsten mellem Danmark og Storbritannien.

Det fremgår af sagsfremstillingen i sagen, at spørgers lån af aktier er baseret på Global Master Securities Lending Agreement Version May 2000 ("ISLA-aftalen").

Ligningsrådet har i TfS 1999.408 LR godkendt, at aktielån ved anvendelse af Finansrådets standardvilkår ikke anses for realisation for långiver men derimod for udlån.

Ligningsrådet har endvidere i **SKM2002.402.LR** godkendt, at udlån af aktier ifølge henholdsvis "Morgan Stanley & Co. International Limited - Overseas Securities Lenders Agreement, Version: December 1995" (OSLA) og "International Securities Lenders Association - Global Master Securities Lending Agreement Version May 2000" (ISLA) kan

Udskrift af Tidsubegrænset aktielån - aktierne ikke videresolgt          https://skat.dk/display.aspx?oid=1895854&vid=0

ligestilles med udlån på de danske standardvilkår, som er behandlet af Ligningsrådet i TfS 1999.408 LR, idet Ligningsrådet bemærker, at det er afgørende for denne ligestilling, at der udlånes børsnoterede aktier, og at lånets løbetid begrænses tidsmæssigt.

Finansrådet ændrede standardvilkårene i 2002. Det er dog SKATs opfattelse, at de foretagne ændringer ikke har betydning for de internationale rammeaftalers ligestilling med Finansrådets standardvilkår, jf. **SKM2008.168.SR** og **SKM2009.65.SR**.

Det er SKATs opfattelse, at aktier, der udlånes til spørger i henhold til den forelagte aftale, ikke skattemæssigt kan anses for afstået, men derimod må anses for udlån af aktier. SKAT lægger derved vægt på, at aktierne overføres til spørger uden vederlag for aktierne, at der påhviler spørger en pligt til at tilbagelevere aktier af samme mængde og art til långiver, jf. aftalens pkt. 8.1., og at såvel långiver som spørger i henhold til aftalens pkt. 8.2. og 8.3. kan ophæve lånet på anfordring under iagttagelse af det respektive varsel herfor.

SKAT finder under disse omstændigheder ikke, at den omstændighed, at det ikke i forbindelse med indgåelsen af aftalen på forhånd er aftalt, hvad den tidsmæssige udstrækning af aftalen er, i sig selv kan føre til, at aktierne i skattemæssig henseende må anses for afstået af långiver.

Långiver vil således - desuagtet udlånet af aktier til spørger - fortsat skattemæssigt være at anse for retmæssig ejer af aktierne.

I henhold til landsskatterettens afgørelse refereret i **SKM2004.51.LSR** er låntager ikke skattepligtig af udbytte, der udloddes i låneperioden, givet at låntager ikke har videresolgt de lånte aktier og endvidere skal kompensere långiver for udbyttet. Landsskatteretten bemærker, at låntager ikke er blevet ejer af aktierne, og dermed heller ikke er skattepligtig af udbyttet, der tilkommer långiver i henhold til de indgåede aftaler.

Det fremgår af den forelagte aftale, jf. pkt. 6.1., at låntager, i det omfang der udbetales udbytte på de lånte aktier, er forpligtet til at betale et beløb til långiver svarende til det udbytte, som långiver ville have modtaget, hvis aktierne ikke var udlånt til låntager.

Det er herefter SKATs opfattelse, at långiver under disse omstændigheder i skattemæssig henseende fortsat må anses for retmæssig ejer af aktierne, og at udbytte der udbetales til spørger i låneperioden, må anses at tilkomme långiver. Dette gælder under alle omstændigheder, så længe låntager ikke har afstået aktierne - også uanset at der ikke på forhånd er aftalt et udløbstidspunkt for lånet. Dette er ikke i modstrid med afgørelsen i SKM2002.402, hvor det må lægges til grund, at låntager skulle sælge aktierne.

Beskatningen af udbyttet skal herefter ske med udgangspunkt i de regler, der gælder for långiver, herunder en eventuel dobbeltbeskatningsoverenskomst mellem Danmark og den stat hvor långiver er hjemmehørende.

*SKATs indstilling til Skatterådet vedrørende spørgsmål 1:*

Spørgsmål 1 kan herefter besvares benægtende.

*Ad. spørgsmål 2*

Der stilles spørgsmål om, hvorvidt udbytte udloddet på aktier i danske selskaber, som på tidspunktet for beslutningen om udlodning af udbytte er stillet til sikkerhed til eje til spørger, i Danmark alene kan beskattes med 15%, jf. artikel 10 i dobbeltbeskatningsoverenskomsten mellem Danmark og Storbritannien.

Det er SKATs opfattelse, at aktier, der stilles til sikkerhed hos spørger i henhold til den

beskrevne aftale, i lighed med aktier der udlånes til spørger, jf. spørgsmål 1, ikke skattemæssigt kan anses for afstået, men derimod fortsat må anses for ejet af sikkerhedsstilleren.

SKAT lægger herved vægt på, at aktierne stilles til sikkerhed til spørger uden vederlag for aktierne, at der påhviler spørger en pligt til at tilbagelevere aktier af samme mængde og art til långiver, jf. aftalens pkt. 8.4, og at det ifølge det oplyste af spørgers standardvilkår fremgår, at sikkerhedsstiller til enhver tid kan bede om at få de aktier retur, der er stillet til sikkerhed, hvis der stilles anden sikkerhed til rådighed for spørger, som kan godkendes af denne.

SKAT finder under disse omstændigheder ikke, at den omstændighed, at det ikke i forbindelse med indgåelse af aftalen på forhånd er aftalt, hvad den tidsmæssige udstrækning af aftalen er, i sig selv kan føre til, at aktierne i skattemæssig henseende må anses for afstået af sikkerhedsstiller.

Skatterådet bekræftede i **SKM2009.65.SR**, at renter modtaget af en investeringsforening på værdipapirer, som foreningen har modtaget til sikkerhed i henhold til ISLA-aftalen, ikke skatteretligt skulle anses for indtjent af investeringsforeningen, og dermed heller ikke skulle indgå i minimumsudlodningen, i det omfang investeringsforeningen i henhold til ISLA-aftalen skulle viderebetale sådanne renter til låntager.

Det fremgår af spørgers standardvilkår, at spørger, i det omfang, der udbetales udbytte på de aktier, der er modtaget til sikkerhed er forpligtet til at betale et beløb til sikkerhedsstiller svarende til det udbytte, som denne ville have modtaget, hvis aktierne ikke var stillet til sikkerhed hos spørger.

Det er herefter SKATs opfattelse, at udbytte, der udbetales til spørger, på aktier modtaget til sikkerhed af spørger, må anses at tilkomme sikkerhedsstiller. Beskatningen af udbyttet skal således ske med udgangspunkt i de regler, der gælder for sikkerhedsstiller, herunder en eventuel dobbeltbeskatningsoverenskomst mellem Danmark og den stat, hvor sikkerhedsstiller er hjemmehørende.

*SKATs indstilling til Skatterådet vedrørende spørgsmål 2:*

Spørgsmål 2 kan herefter besvares benægtende.

**Skatterådets afgørelse og begrundelse**

Skatterådet tiltræder SKATs indstilling og begrundelse.

Print-out of Open-ended Share Loans – shares not resold                     https://skat.dk/ display.aspx?oid= 1895854&vid=0&lang=DA

# Open-ended share loan – shares not resold



| | |
|---|---|
| Date of publication | 15 Apr 2010 15:59 |
| Date of ruling/decision | 26 Jan 2010 10:45 |
| SKM number | SKM2010.266.SR |
| Authority | Danish Tax Council |
| Case number | 08-156303 |
| Document type | Binding answer |
| Subject | The ISLA agreement, share loans, open-ended, no resale |

The Danish Tax Council cannot confirm that Denmark should only tax dividends distributed on shares in Danish companies at a rate of 15%, cf. Article 10 of the Double Taxation Treaty between Denmark and the United Kingdom, when the shares on the date of dividends are on loan to the enquirer who is domiciled for tax purposes in the United Kingdom. The reason for this is that the lender continues to be regarded for tax purposes as the owner of the shares which is why the dividends have to be taxed according to the rules applicable to the lender as well as any double taxation convention in place between Denmark and the country in which the lender is domiciled.

Summary

The Danish Tax Council cannot confirm either that Denmark should only tax dividends distributed on shares in Danish companies at a rate of 15%, cf. Article 10 of the Double Taxation Treaty between Denmark and the United Kingdom, when the shares on the date of distribution of dividends are used as collateral by the enquirer. The Danish Tax Council finds that the shares – similar to shares that are lent to the enquirer – must continue to be regarded as owned by the party providing the collateral and dividends that are paid to the enquirer on shares received as collateral must be regarded as belonging to the party providing the collateral. Dividends must therefore be taxed according to the rules which apply to the party providing the collateral, including any double taxation treaty which exists between Denmark and the state in which the party providing the collateral is domiciled.

| | |
|---|---|
| Reference(s) | Double Taxation Treaty between Denmark and the United Kingdom, Article 10 |
| Reference | Assessment guidelines 2010-1 **S.G.2.3.3**. |

It has not been possible to anonymise the overall text of the decision effectively. SKAT has therefore been compelled to omit certain facts of the case to avoid a breach of confidentiality rules.

## Questions

1. Please confirm that dividends distributed on shares in Danish companies which on the date of the decision to distribute dividends were on loan to the enquirer in Denmark should only be taxed at a rate of 15%, cf. Article 10 of the Double Taxation Treaty between Denmark and the United Kingdom.

2. Please confirm that dividends distributed on shares in Danish companies which on the date of the decision to distribute dividends were supplied to the enquirer as collateral for ownership in Denmark should solely be taxed at a rate of 15%, cf. Article 10 of the Double Taxation Treaty between Denmark and the United Kingdom.

## Enquirer's proposal

1. Yes.

2. Yes.

## SKAT's recommendation

1. No.

2. No.

## Description of the facts of the case

*Re the enquirer:*
The enquirer is a British company and a financial enterprise. The company is domiciled in the United Kingdom for tax purposes.

*Re share loans:*

In the course of its business, the enquirer regularly borrows shares in listed companies domiciled in Denmark.

The enquirer's borrowing of shares is based on the Global Master Securities Lending Agreement Version May 2000 ('the ISLA agreement').

Under sub-section 4.2 of the ISLA agreement, the parties to a share loan must ensure that ownership of the borrowed shares during the loan term passes from the lender to the borrower.

It follows from sub-section 6.1 of the ISLA agreement that insofar as dividends are paid on the shares the lender has lent to the borrower, the borrower is under obligation to pay an amount to the lender equal to the dividends that the lender would have received if the shares had not been on loan to the borrower.

No loan terms will have been agreed in advance for the enquirer's loan of the shares. Pursuant to sub-section 8.2 of the ISLA agreement, the lender is entitled to terminate the loan at any time. Similarly, pursuant to sub-section 8.3 of the ISLA agreement, the borrower is entitled to terminate the loan at any time.

*Re collateral in the form of transferring ownership to the shares:*

When the enquirer lends money to clients, the enquirer is often provided with collateral in the form of shares in listed companies domiciled in Denmark.

According to the enquirer's standard terms, the company is in such cases entitled to assume ownership of the shares that have been provided.

The enquirer's standard terms are governed by English law. The representative states that under English law the above standard terms mean that the enquirer – if the shares are assumed as collateral – is regarded as being the 'beneficial owner' of the shares and that ownership to the shares thereby passes from the borrower to the enquirer. This means the

enquirer is entitled to exercise all ownership rights over the shares, including the right to provide the shares as collateral for loans granted by a third party to the enquirer. As the transfer of ownership to the enquirer is only provided as collateral, the enquirer is bound to return the shares. The enquirer is, however, only under obligation to return shares of the same type to the borrower and the borrower is therefore not entitled to have precisely those shares with which the borrower provided to the enquirer as collateral returned. In the event of the enquirer's bankruptcy, the borrower further only has an unsecured claim on the company, i.e. the borrower cannot in the event of the enquirer's bankruptcy demand to have the shares that were provided as collateral returned, but must like all other unsecured creditors settle for the distribution out of the estate in bankruptcy.

The enquirer's stipulation on collateral states that the provider of the collateral can apply to have the shares provided as collateral returned prior to repaying the liabilities that the enquirer may have. This assumes, however, that the enquirer is provided with other collateral that he can accept.

If dividends are distributed on shares of which the enquirer, according to the above, has assumed ownership, these dividends will belong to the enquirer. The enquirer must, in return, compensate the borrower for these dividends, cf. the enquirer's standard terms. This means the enquirer has to pay the borrower an amount equal to the dividends that the borrower would have received if the ownership to the shares had remained with the borrower.

According to the representative, the collateral described above in the form of transfer of ownership to shares is subject to Article 6 of Directive 2002/47/EC on financial collateral arrangements ('the Collateral Directive').

SKAT has asked the representative whether the underlying monetary loans have a set term or whether they are open-ended loans similar to an overdraft facility. The representative has told SKAT this is an open-ended loan.
This is a kind of overdraft facility where an agreed maximum sum has been agreed and where money may be drawn within this limit similar to an overdraft facility. The enquirer may demand to have the money repaid at some time in the future, in the same way as a bank is entitled to do with an overdraft facility.

### The enquirer's interpretation according to his request and comments on the case

*Question 1*

It is the representative's opinion that this question should be answered with a 'yes', for the reasons below:

In its binding pre-statement published as TfS 2001, 146 LR (SKM2001.76), the Danish National Assessment Council addressed the question of how dividends received by the borrower on loaned shares should be taxed. The Danish National Assessment Council found that the borrower should be taxed on the dividends received by the borrower on the loaned shares. It seems therefore to follow from TfS 2001, 146 LR that, when lending shares, it is usually the borrower who must be regarded as the rightful income recipient of the dividends. In the enquirer's opinion, it must then follow that dividends received by the company on loaned shares under Article 10 of the Double Taxation Treaty between Denmark and the United Kingdom can only be taxed in Denmark at a maximum rate of 15%.

In its binding preliminary statement published as TfS 2002,755 (SKM 2002.402.LR), the Danish National Assessment Council found that share loans entered into under the ISLA agreement could be put on an equal footing with the standard terms that the Danish National Assessment Council had assessed in TfS 1999,408 LR and that share loans entered into under the ISLA agreement could therefore  be regarded as loans and not sales for tax purposes. In this case, the Danish National Assessment Council emphasised as decisive the fact that the share loan was fixed-term.

It seems thereby, conversely, to follow from TfS 2002,755 LR that share loans entered into under the ISLA agreement with an open-ended loan term must for tax purposes be regarded as being a sale of the shares by the lender to the borrower. As the enquirer's share loans are always open-ended, the enquirer must therefore under all circumstances for tax purposes be regarded as having acquired the borrowed shares and the company must therefore under all circumstances be regarded as the rightful income recipient of dividends on the borrowed shares.

Even if it could be accepted that the Danish National Assessment Council's decision in TfS 2001, 146 LR does not lead to dividends received by the enquirer on borrowed shares in Denmark being subject to a maximum tax rate of 15%, the fact that the enquirer's loan of shares has an open-ended term therefore in our opinion will lead to the fact that the enquirer for tax purposes must be regarded as the owner of the borrowed shares and that dividends on the borrowed shares can be taxed at a maximum rate of 15% in Denmark.

After the representative was consulted on SKAT's recommendation, it was stated that he could not accept the recommendation. Re Question 1, the representative has specified the following:

In SKAT's recommendation for the response to Question 1, it is stated:

"SKAT is of the opinion that shares that are loaned to the enquirer under the agreement submitted are not regarded as having been sold for tax purposes, but are, on the contrary, regarded as a share loan. SKAT thereby emphasises that the shares are transferred to the enquirer without payment for the shares, that the enquirer is under obligation to return shares of the same type and volume to the lender, cf. sub-clause 8.1 of the agreement, and that both lender and enquirer under sub-clauses 8.2 and 8.3 of the agreement are entitled to terminate the loan on demand with due regard for their respective notice periods.

Under these circumstances, SKAT does not find that the fact that the term of the agreement has not been agreed in advance can in itself lead to the shares for tax purposes having to be regarded as having been sold by the lender.

The lender must therefore – irrespective of the loan of shares to the enquirer – continue for tax purposes to be regarded as the rightful owner of the shares".

The representative does not agree that the lender must for tax purposes be regarded as the owner of the shares for tax purposes if the loan of the shares is not open-ended.

As stated in the request for a binding answer, the Danish National Assessment Council stated in its binding preliminary statement published as **SKM2002.402.LR** that share loans entered into under the ISLA agreement could be put on an equal footing with the standard terms that the Danish National Assessment Council had assessed in TfS 1999,408 LR and that share loans entered into under the ISLA agreement could therefore for tax purposes be regarded as loans and not sales. The Danish National Assessment Council stated at the time:

"To have the same status as the Danish terms, it is, however, crucial that the loans

concluded under OSLA and ISLA are fixed-term."

In the representative's opinion, there can be no doubt that this statement should be taken to mean that share loans entered into under the ISLA agreement for tax purposes should be regarded as a sale if the loan term is not limited with the result that the borrower will for tax purposes be regarded as the owner of the shares.

SKAT agreed with this in SKAT's original recommendation to the Danish Tax Council in which SKAT recommended that Question 1 be answered with a 'yes' and SKAT stated the following:

"On this basis, SKAT is of the opinion that when an open-ended agreement is in place, the arrangement cannot be characterised as a share loan. This means that the lender must be regarded for tax purposes as having sold the shares and thereby also that the enquirers must be regarded for tax purposes as having acquired the shares."

The Danish Tax Council has also in subsequent practice on lending securities regarded the question of whether the loan has a limited term to be crucial.

The binding answer published as **SKM2008.316.SR** stated:

"Loans entered into under this agreement in essence meet the same conditions as set out in the **SKM2002.402.LR** ruling. The conditions stated must be regarded as being:

- "The agreement pertains to listed securities that are traded on a recognised exchange.
- The loan can be terminated on demand and the loan term is limited and may constitute a maximum of six months, cf. Section 5, h. of the agreement
- Loaned securities or securities of the same type must be returned. [our emphasis]".

Reference can be made to the binding answer published as **SKM2009.65.SR** in which the Danish Tax Council confirmed that a loan of shares for a limited period of six months did not constitute a sale for tax purposes. The Danish Tax Council simultaneously answered that it would change its answer if it was agreed to extend the loan beyond the six months. If the share loan was extended beyond the period of six months, the loan of the shares would then constitute a sale for tax purposes.

SKAT's recommendation thereby breaks with previous practice on how loans of shares and other securities are treated for tax purposes.

SKAT's recommendation refers to the Danish National Tax Tribunal ruling published as **SKM2004.51.LSR**. This ruling on lending shares for a limited period of a maximum of six months and thereby a situation in which the shares according to the above practice could not be regarded as having been sold to the borrower. In its ruling, the Danish National Tax Tribunal states:

"As the borrower has not become the owner of the shares under the loan agreement or in any other way, the borrower is not liable for tax on the dividends that accrue to the lender according to the agreements that have been entered into."

Conversely, it must follow that if the borrower has become the owner of the shares, the borrower must be regarded as the rightful owner of the dividends for tax purposes and, as explained above, it follows from existing practice that the borrower becomes the owner of the shares for tax purposes if the loan term is not limited.

In the representative's opinion, it thus clearly follows from practice of the lending of shares

and other securities that for tax purposes these are loans whose loan term is limited to six months while, conversely, they are regarded as sales if the loan is open-ended. As the share loans to the enquirer are not fixed-term, the shares must therefore be regarded as having been sold to the enquirer for tax purposes. The enquirer is therefore the rightful owner of the dividends on the shares.

SKAT's recommendation states in conclusion:

"SKAT is of the opinion therefore that under these circumstances, the lender  must continue to be regarded as the rightful owner of the shares for tax purposes and that dividends paid to the enquirer during the loan term must be regarded as belonging to the lender. This applies in all circumstances as long as the borrower has not sold the shares – also irrespective of the fact that no expiry date for the loan has been agreed in advance. This does not contradict the ruling contained in SKM2002.402 which states that the purpose of the share loan was precisely for the borrower to sell the shares."

Case 1:18-md-02865-LAK   Document 801-81   Filed 05/12/22   Page 19 of 23   https://skat.ak-display.aspx?oid=1895864&vid=0&lang=DA

SKAT has stated by telephone that the wording "…the purpose of the share loan was precisely for the borrower to sell the shares" should be understood as a reference to the borrower's actual resale of the shares and not as a reference to the borrower's intention to resell the shares. For the avoidance of doubt, it should be emphasised that the basis for the present request for a binding answer is that the enquirer wishes to establish clarity in a situation in which the enquirer has borrowed a number of shares with the view to reselling the shares, but in which the resale, against expectation, is not completed and in which the enquirer therefore is in possession of the shares on the date of distribution of dividends on the shares.

SKAT seems to be claiming that the ruling published in **SKM2002.402.LR** is based on a condition that the borrowed shares were resold by the borrower. However, this is not correct. It is clearly stated in the ruling that it relates both to the situation in which the borrower resells the borrowed shares and to the situation in which the borrower keeps the borrowed shares and receives dividends on them, cf. the following extract for illustration:

"The assumption that deductions can be made for fees and compensation for dividends thus applies whether the shares have been sold or not. In **SKM2001.76.LR** it was determined that fees and compensation for dividends qualify independently of whether the shares have been resold by the borrower or not. Similar considerations apply to the borrower. The resale of the shares is therefore irrelevant to the borrower's ability to deduct the transferred amounts from taxable income.

(…)

The Danish National Assessment Council stated that it was decisive for the ability to add costs to the acquisition price of a shareholding that it is a cost that relates to the completion of the trade. Fees and compensation for dividends must be regarded as an integral part of the loan agreement and not as a cost related to the acquisition of the shares. Remedies for breach of contract may apply to the loan agreement if these amounts are not paid. Costs are therefore not costs relating to the sale and repurchase of the shareholding or part therefore at a later date. This is expressed in the fact that these costs are paid independently of whether the entire shareholding is sold or reacquired, whether none of the borrowed shares are resold or, as a third possibility, only part of the shareholding is sold and reacquired. This type of cost is thereby independent of whether the shares are sold and repurchased. [representative's emphasis]".

SKAT's recommendation therefore contradicts the ruling published as **SKM2002.402.LR**

If, as SKAT recommends, practice were to be changed and the question of whether the lender has sold the shares that have been lent would in future depend on whether the borrower elects to resell the borrowed shares or not, a situation in law would be established in which the borrower's actions would govern how the  lender is treated for tax purposes. This does not seem to be appropriate.

On the basis of the above, it is therefore the opinion of the representative that Question 1 should be answered in the affirmative.

*Question 2*

It is the representative's opinion that this question should be answered in the affirmative for the reasons below:

The collateral described in the form of transfer of ownership to shares is subject to Article 6 of the Collateral Directive.

Article 6, sub-section 1 of the Collateral Directive has the following wording:

"The Member States ensure that an agreement on financial collateral in the form of the transfer of ownership can come into effect according to the provisions contained in the agreement."

Article 6 in the Collateral Directive was implemented in Denmark in Law no. 1171 of 19 December 2003 whereby Section 58k was inserted into the Danish Securities Trading Act. Section 58k, sub-section 1, of the Danish Securities Trading Act has the following wording:

"An agreement on financial collateral in the form of transfer of ownership is effective as regards perfection and realisation in accordance with the agreed terms."

It seems that no position was previously taken on the tax consequences of collateral in the transfer of ownership as described above. As mentioned above, collateral in the form of transfer of ownership means that the company may exercise all owner's rights – i.e. both legal and actual owner's rights – over the shares that have been provided as collateral. In the representative's opinion, this very much supports the fact that the company must be regarded as the owner of the shares for tax purposes and that the dividends on such shares are therefore subject to Article 10 of the Double Taxation Treaty between Denmark and the United Kingdom.

In addition, the described collateral on transfer of ownership corresponds to a very great degree to the transfer that takes place in a share loan arrangement, cf. Question 1. In both situations, this means that all owner's rights pass to the company, the lender/provider of collateral is not entitled to recover precisely those shares that have been lent/provided as collateral and the company receives dividends on the shares and in return must compensate the lender/provider of collateral for these dividends. As a result, dividends on shares provided as collateral on the transfer of ownership must, in the opinion of the representative, be treated for tax purposes in the same way as dividends on shares lent.

Overall, the representative is of the opinion that dividends distributed on shares in Danish companies with which the company has been provided as collateral in the transfer of ownership pursuant to Article 10 of the Double Taxation Treaty between Denmark and the United Kingdom should be taxed at a maximum rate of 15%.

After the representative was consulted on SKAT's, the representative provided the following comments re Question 2:

In SKAT's recommendation for the response to Question 2, it is stated:

"SKAT is of the opinion that shares with which the enquirer has been provided as collateral under the agreement described, in similarity to shares loaned to the enquirer, cf. Question 1, cannot for tax purposes be regarded as having been sold but, on the contrary, must continue to be regarded as owned by the provider of the collateral.

SKAT hereby emphasises that the enquirer has been provided with the shares as collateral without payment for the shares, that the enquirer is under obligation to return shares of the same type and volume to the lender, cf. sub-clause 8.4 of the agreement, and that, according to the wording of the enquirer's standard terms, the provider of the collateral is at any time entitled to have the shares provided as collateral returned if the enquirer is

Case 1:18-md-02865-LAK    Document 801-81    Filed 05/13/22    Page 21 of 23

provided with another type of collateral that he is able to accept.

Under these circumstances, SKAT does not find that the fact that the term of the agreement has not been agreed in advance in itself should lead to the shares for tax purposes having to be regarded as having been sold by the lender.

SKAT's reason for its recommendation for the answer to Question 2 is thus on this point the same as its reason for its recommendation for the answer to Question 1, and we therefore refer to the above as we note that SKAT in its original recommendation to the Danish Tax Council agreed that Question 2 should be answered with a 'yes', cf. the following:

"As no limited loan term of a maximum of six months on the underlying monetary loans applies in this case, SKAT is of the opinion that the transactions in question with shares provided as security for monetary loans cannot be placed on the same footing as share loans as these agreements do not have a limited loan term.

This means that they cannot be on an equal footing with share loans and therefore the starting point applies, i.e. the shares must also be regarded for tax purposes as having been sold. As the enquirer has also assumed the ownership to the shares for tax purposes, the enquirer is thereby regarded for tax purposes as the rightful income recipient of the dividends."

SKAT's recommendation further refers to the binding answer published as **SKM2009.65.SR** in which the Danish Tax Council found that interest received by a unit trust on securities that the unit trust receives as collateral pursuant to the ISLA agreement should not be regarded for tax purposes as having been earned by the unit trust and thereby should not form part of the minimum distribution to the extent that the unit trust pursuant to the ISLA agreement should forward such interest to the borrower.

**SKM2009.65.SR** states expressly that the Danish Tax Council's answer is based on a condition that the securities have been provided as collateral for a share loan that has a loan term of a maximum of six months. As stated, the Danish Tax Council simultaneously answered that it would change its answer if it was agreed to extend the loan beyond the six months. If the share loan was extended beyond the period of six months, interest received by the unit trust on securities provided as collateral under the ISLA agreement would thereby be regarded for tax purposes as having been earned by the unit trust.

On the basis of the above, it is therefore the opinion of the representative that Question 2 should be answered affirmatively.

### SKAT's recommendations and reasons

*Question 1*

The question is whether dividends distributed on shares in Danish companies which on the date of the decision to distribute dividends were on loan to the enquirer in Denmark should solely be taxed at a rate of 15%, cf. Article 10 of the Double Taxation Treaty between Denmark and the United Kingdom.

The facts of the case show that the enquirer's borrowing of shares is based on the Global Master Securities Lending Agreement Version May 2000 ('the ISLA agreement').

In TfS 1999.408, the Danish National Assessment Council agreed that share loans that are entered into on the standard terms of the Danish Bankers Association are not regarded as a sale on the part of the lender, but have to be regarded as a loan.

The Danish National Assessment Council further agreed in **SKM2002.402.LR** that loans of shares under Morgan Stanley & Co. International Limited – Overseas Securities Lenders Agreement, Version: December 1995 (OSLA) and International Securities Lenders Association – Global Master Securities Lending Agreement Version May 2000 (ISLA) can be given the same status as loans on standard Danish terms which have been examined by the Danish National Assessment Council in TfS 1999.408 LR, as the Danish National Assessment Council notes that in order to achieve this same status it is vital that listed shares are the subject of the loan and that the loan term is time-limited.

The Danish Bankers Association changed its Standard Terms in 2002. SKAT is, however, of the opinion that the amendments made are not significant to the international framework agreements being placed on an equal footing with the Danish Bankers Association's Standard Terms, cf. **SKM2008.168.SR** and **SKM2009.65.SR**.

SKAT is of the opinion that shares that are loaned to the enquirer under the agreement submitted are not regarded for tax purposes as having been sold, but are, on the contrary, regarded as share loans. SKAT thereby emphasises that the shares are transferred to the enquirer without payment for the shares, that the enquirer is under obligation to return shares of the same volume and type to the lender, cf. sub-clause 8.1 of the agreement, and that both lender and enquirer under sub-clauses 8.2 and 8.3 of the agreement are entitled to terminate the loan on demand with due regard for their respective notice periods.

Under these circumstances, SKAT does not find that the fact that the term of the agreement has not been agreed in advance should in itself lead to the shares having to be regarded for tax purposes as having been sold by the lender.

The lender will therefore – irrespective of the loan of shares to the enquirer – continue  to be regarded for tax purposes as the rightful owner of the shares".

According to the Danish National Tax Tribunal's ruling referred to in **SKM2004.51.LSR** , the borrower is not liable for tax on dividends that are distributed during the loan term, given that the borrower has not resold the borrowed shares and further needs to compensate the lender for the dividends. The Danish National Tax Tribunal notes that the borrower has not become the owner of the shares and thereby is not liable for tax on dividends that accrue to the lender according to the signed agreements.

It is stated in the submitted agreement, sub-section 6.1, that the borrower, to the extent that dividends are paid on the borrowed shares, is under obligation to pay an amount to the lender equivalent to the dividends that the lender would have received if the shares had not been on loan to the borrower.

SKAT is of the opinion therefore that the lender under these circumstances must continue to be regarded for tax purposes as the rightful owner of the shares and that dividends paid to the enquirer during the term of the loan must be regarded as belonging to the lender. This applies in all circumstances as long as the borrower has not sold the shares – also irrespective of the fact that no expiry date for the loan has been agreed in advance. This does not contradict the ruling contained in SKM2002.402 in which the borrower was to sell the shares.

Dividends must therefore be taxed according to the rules applicable to the lender, including any double taxation convention in place between Denmark and the state in which the lender is domiciled.

*SKAT's recommendation to the Danish Tax Council re Question 1:*

Question 1 can then be answered in the negative.

## Question 2

The question was asked as to whether dividends distributed on shares in Danish companies which on the date of the decision to distribute dividends were supplied to the enquirer as collateral for ownership in Denmark should solely be taxed at a rate of 15%, cf. Article 10 of the Double Taxation Treaty between Denmark and the United Kingdom.

SKAT is of the opinion that shares with which the enquirer has been provided as collateral under the agreement described, in similarity to shares loaned to the enquirer, cf. Question 1, cannot be regarded for tax purposes as having been sold, but, on the contrary, must continue to be regarded as owned by the provider of the collateral.

SKAT hereby emphasises that the enquirer has been provided with the shares as collateral without payment for the shares, that the enquirer is under obligation to return shares of the same volume and type to the lender, cf. sub-clause 8.4 of the agreement, and that, according to the information provided, the enquirer's standard terms state that the provider of the collateral is at any time entitled to have the shares provided as collateral returned if the enquirer is provided with another type of collateral that he is able to accept.

Under these circumstances, SKAT does not find that the fact that the term of the agreement has not been agreed in advance should in itself lead to the shares having to be regarded for tax purposes as having been sold by the provider of the collateral.

The Danish Tax Council confirmed in **SKM2009.65.SR** that interest received by a unit trust on securities that the unit trust receives as collateral pursuant to the ISLA agreement should not be regarded for tax purposes as having been earned by the unit trust and thereby should not form part of the minimum distribution to the extent that the unit trust pursuant to the ISLA agreement should forward such interest to the borrower.

The enquirer's standard terms state that the enquirer, to the extent that dividends are paid on the shares that have been provided as collateral, is bound to pay an amount to the provider of the collateral equivalent to the dividends that the provider would have received if the shares had not been on loan to the enquirer.

SKAT is therefore of the opinion that dividends that are paid to the enquirer on shares received as collateral by the enquirer must be regarded as belonging to the provider of the collateral. Dividends must therefore be taxed according to the rules applicable to the provider of the collateral, including any double taxation convention in place between Denmark and the state in which the provider of the collateral is domiciled.

*SKAT's recommendation to the Danish Tax Council re Question 2:*

Question 2 can then be answered in the negative.

## The Danish Tax Council's ruling and underlying reasoning

The Danish Tax Council endorses SKAT's recommendations and reasoning.