# Exhibit 29



**RIGSREVISIONEN**

# Beretning til Statsrevisorerne om SKATs forvaltning af og Skatteministeriets tilsyn med refusion af udbytteskat



Februar 2016

SKAT_MDL_001_0075124

BERETNING OM SKATS FORVALTNING AF OG SKATTEMINISTERIETS TILSYN MED
REFUSION AF UDBYTTESKAT

# Indholdsfortegnelse

1.  Introduktion og konklusion ............................................................................1
    1.1.  Formål og konklusion..........................................................................1
    1.2.  Baggrund ...........................................................................................3
    1.3.  Revisionskriterier, metode og afgrænsning ........................................5

2.  Formodet svindel med refusion af udbytteskat ...........................................8
    2.1.  SKATs opgørelse af den formodede svindel ......................................8
    2.2.  SKATs forvaltning af refusion af udbytteskat...................................10
    2.3.  Skatteministeriets tilsyn ..................................................................19

Bilag 1. Statsrevisorernes anmodning ...........................................................32
Bilag 2. Metodisk tilgang ...............................................................................33
Bilag 3. Ordliste.............................................................................................35

Undersøgelsen er en statsrevisoranmodning, og Rigsrevisionen afgiver derfor beretningen til Statsrevisorerne i henhold til § 8, stk. 1, og § 17, stk. 2, i rigsrevisorloven, jf. lovbekendtgørelse nr. 101 af 19. januar 2012.

Beretningen vedrører finanslovens § 9. Skatteministeriet og § 38. Skatter og afgifter.

I undersøgelsesperioden har der været følgende ministre:

Kristian Jensen: august 2004 - februar 2010
Troels Lund Poulsen: februar 2010 - marts 2011
Peter Christensen: marts 2011 - oktober 2011
Thor Möger Pedersen: oktober 2011 - oktober 2012
Holger K. Nielsen: oktober 2012 - december 2013
Jonas Dahl: december 2013 - februar 2014
Morten Østergaard: februar 2014 - september 2014
Benny Engelbrecht: september 2014 - juni 2015
Karsten Lauritzen: juni 2015 -

Beretningen har i udkast været forelagt Skatteministeriet, hvis bemærkninger er afspejlet i beretningen.

SKAT_MDL_001_0075126

# 1.  Introduktion og konklusion

## 1.1.  Formål og konklusion

1. Denne beretning handler om SKATs forvaltning af og Skatteministeriets tilsyn med refusion af udbytteskat i perioden 1. januar 2010 - 5. august 2015, som Statsrevisorerne i september 2015 anmodede Rigsrevisionen om at undersøge. Anmodningen er fremsat på baggrund af den formodede svindel med refusion af udbytteskat for 6,2 mia. kr., som SKAT anmeldte til Statsadvokaturen for Særlig Økonomisk og International Kriminalitet (SØIK) den 24. august 2015. SKAT har efterfølgende anmeldt formodet svindel for yderligere 2,9 mia. kr., og det er ifølge Skatteministeriet sandsynligt, at den igangværende gennemgang af området vil vise, at der har været yderligere svindel.

2. Formålet med undersøgelsen er at vurdere, om SKATs forvaltning af refusion af udbytteskat og Skatteministeriets tilsyn hermed har været tilfredsstillende. Rigsrevisionen har derfor bl.a. undersøgt:

- om SKAT har haft tilstrækkelige interne kontroller
- om Skatteministeriet har forholdt sig til de oplysninger, ministeriet fik gennem sit almindelige tilsyn, og om ministeriet har reageret på andre indikationer på problemer i forhold til refusion af udbytteskat.

Derudover har Rigsrevisionen undersøgt, om SKAT har opgjort det fulde omfang af den formodede svindel med refusion af udbytteskat.

*Refusion af udbytteskat*
*I undersøgelsesperioden har udenlandske aktionærer kunnet anmode om refusion af udbytteskat via 2 ordninger: blanketordningen og bankordningen.*

*Ved anmodning om refusion af udbytteskat via blanketordningen skal aktionæren indsende en udfyldt blanket til SKAT med anmodning om refusion af udbytteskat.*

*Bankordningen, som SKAT opsagde i september 2015, var en aftale mellem SKAT og 3 banker, der bestod i, at de 3 banker kunne anmode SKAT om refusion på vegne af udenlandske aktionærer.*

### KONKLUSION

Rigsrevisionen vurderer samlet, at SKATs forvaltning af og Skatteministeriets tilsyn med refusion af udbytteskat har været meget kritisabelt. SKAT har ført en helt utilstrækkelig kontrol med udbetalingerne af refusion af udbytteskat, og Skatteministeriets tilsyn med området har været særdeles mangelfuldt.

SKAT har anmeldt formodet svindel for foreløbig 9,1 mia. kr. Skatteministeriet har dog oplyst, at det er sandsynligt, at SKATs igangværende gennemgang af de resterende udbetalinger på 5,1 mia. kr. i perioden, hvor den formodede svindel er foregået via blanketordningen, vil afdække yderligere formodet svindel.

Både SKAT og Skatteministeriet har i hvert fald siden 2010 været vidende om, at der var problemer med refusion af udbytteskat. På trods heraf kom der først opmærksomhed på den formodede svindel med refusion af udbytteskat, fordi SKAT modtog oplysninger herom udefra. Der er ikke noget i Rigsrevisionens undersøgelse, der peger på, at SKAT eller Skatteministeriet uden disse oplysninger ville have reageret på den markante stigning i refusioner af udbytteskat fra 0,68 mia. kr. for hele 2010 til 9,3 mia. kr. i de første godt 7 måneder af 2015, svarende til en stigning på ca. 1.300 %. Tværtimod var SKAT i gang med at oplære nye medarbejdere for bl.a. at kunne håndtere et stigende antal refusionsanmodninger, da SKAT modtog oplysninger udefra om den formodede svindel.

SKAT har i den periode, hvor den formodede svindel er foregået, refunderet udbytteskat for 14,2 mia. kr. via blanketordningen. Denne refusion er sket på et helt utilstrækkeligt grundlag, og SKAT har ikke kontrolleret helt grundlæggende oplysninger i anmodningerne, fx ejerskab til aktierne, og om ansøger har fået indeholdt udbytteskat.

SKAT har i samme periode refunderet udbytteskat for 5,4 mia. kr. via bankordningen, hvor SKAT ifølge sin egen vurdering uden lovhjemmel har uddelegeret kontrolbeføjelser og kontrolpligt til 3 banker. SKAT har i efteråret 2015 vurderet, at bankordningen ikke har været lovlig, og har derfor opsagt aftalen med de 3 banker ultimo september 2015. SKAT har, da bankordningen eksisterede, ikke kontrolleret, om de 3 banker har udført den uddelegerede myndighedsopgave. SKAT har oplyst, at refusionerne via bankordningen vil blive analyseret med henblik på at vurdere, om der er risiko for eventuel svindel og dermed behov for en nærmere kontrol af grundlaget for disse refusioner.

SKAT har udbetalt 3,2 mia. kr. i refusion af udbytteskat efter det tidspunkt, hvor SKAT modtog oplysninger udefra om den formodede svindel, og indtil udbetalingerne blev sat i bero. Skatteministeriet har oplyst, at SKAT på baggrund af de oplysninger, der fremkom hen over sommeren 2015, først den 6. august 2015 havde det nødvendige grundlag for at stoppe udbetalingerne. Rigsrevisionen kan konstatere, at SKAT, da de modtog oplysninger udefra om den formodede svindel, var vidende om, at antallet af anmodninger og det samlede refusionsbeløb var steget markant, og SKAT var samtidig vidende om, at de interne kontroller var mangelfulde. Rigsrevisionen finder, at SKAT – allerede da de modtog oplysninger udefra – burde have undersøgt området nærmere, inden der blev foretaget yderligere udbetalinger af refusion.

Skatteministeriet har i sit tilsyn reelt ikke forholdt sig til udviklingen i udbytteskat, herunder refusioner. Skatteministeriet har således ikke reageret på udsving i refusion af udbytteskat, som ministeriet flere gange er blevet gjort opmærksom på i forbindelse med de månedlige regnskabsgodkendelser fra SKAT, fx at refusionerne af udbytteskat var stigende, og at udbetalingerne i én måned i 2015 var steget med 200 % i forhold til samme måned året før. Skatteministeriet har i forbindelse med sine godkendelser af ministeriets månedlige indtægtslister til Folketingets Skatteudvalg og Finansudvalg heller ikke forholdt sig til og reageret på fx den negative udvikling i nettoindtægterne fra udbytteskat. Hertil kommer, at Skatteministeriet ikke har reageret på flere indikationer på problemer med refusion af udbytteskat, som ministeriet har modtaget.

SKAT_MDL_001_0075128

Sammenfattende må Rigsrevisionen konstatere, at Skatteministeriets tilsyn har været fragmenteret og reaktivt. Skatteministeriet har således ikke sammenholdt de oplysninger, som ministeriet fik som led i sit almindelige tilsyn, med de øvrige indikationer på problemer med refusion af udbytteskat, som ministeriet løbende modtog gennem årene. Havde Skatteministeriet ført et mere proaktivt tilsyn, herunder sammenholdt de oplysninger, som ministeriet fik på forskellig vis, ville det klart have peget på behovet for en nærmere undersøgelse af området. Rigsrevisionens undersøgelse viser, at helt simple analyser af udviklingen i refusion af udbytteskat ville have peget på problemer på området, som burde have givet anledning til at undersøge området nærmere.

## 1.2. Baggrund

3. Den 24. august 2015 anmeldte SKAT formodet svindel med refusion af udbytteskat for 6,2 mia. kr. til SØIK. SKAT har efterfølgende anmeldt yderligere formodet svindel for 2,9 mia. kr. Den formodede svindel med refusion af udbytteskat er således på nuværende tidspunkt opgjort til 9,1 mia. kr. og er ifølge SKAT foregået i perioden 1. januar 2012 - 5. august 2015. Den formodede svindel kan ifølge en undersøgelse fra Skatteministeriets Interne Revision (SIR) fra 2015 være foregået ved, at udenlandske formodede svindlere har fået refunderet udbytteskat ved at foregive at eje danske aktier, for hvilke der er indeholdt udbytteskat. Skatteministeren oplyste i forbindelse med anmeldelserne til SØIK, at sagen endnu ikke er fuldt afdækket, og at det derfor ikke kan udelukkes, at SKAT vil anmelde yderligere svindel. SKATs afdækning af den formodede svindel forventes afsluttet inden sommerferien 2016.

*SIR's undersøgelse af SKATs administration af udbytteskat og refusion af udbytteskat fra september 2015 er en intern undersøgelse af årsagerne til den formodede svindel. Undersøgelsen blev bestilt af Skatteministeriet i forlængelse af SKATs 1. anmeldelse til SØIK om formodet svindel.*

*SIR reviderer Skatteministeriets enheder efter aftale mellem Skatteministeriet og Rigsrevisionen i henhold til § 9 i rigsrevisorloven. SIR refererer til Skatteministeriets departementschef.*

4. Figur 1 viser processen for refusion af udbytteskat.

***Dobbeltbeskatningsoverens-***
***komst***
*Refusion af udbytteskat sker*
*som udgangspunkt til aktionæ-*
*rer i lande, som Danmark har*
*en dobbeltbeskatningsover-*
*enskomst med. De respektive*
*dobbeltbeskatningsoverens-*
*komster fastsætter, hvor me-*
*get aktionæren skal betale i*
*udbytteskat i henholdsvis Dan-*
*mark og i hjemlandet. For akti-*
*onærer bosat i lande, der har*
*en dobbeltbeskatningsover-*
*enskomst med Danmark, bety-*
*der det, at den udenlandske*
*modtager af dansk aktieudbyt-*
*te kan anmode SKAT om at få*
*refunderet den indeholdte ud-*
*bytteskat helt eller delvist, af-*
*hængigt af hvad der er fastsat*
*i dobbeltbeskatningsoverens-*
*komsten.*



Figur 1. Proces for refusion af udbytteskat

Kilde: Rigsrevisionen på baggrund af SIR's undersøgelse fra 2015.

Det fremgår af figur 1, at når et dansk selskab udbetaler udbytte til sine aktionærer, indbetaler selskabet som udgangspunkt 27 % af udbyttet i udbytteskat til SKAT. En række lande har en dobbeltbeskatningsoverenskomst med Danmark, der betyder, at udenlandske aktionærer kan være berettiget til at få refunderet udbytteskatten helt eller delvist. Aktionærer fra lande med en dobbeltbeskatningsoverenskomst har i undersøgelsesperioden kunnet anmode SKAT om at få den for meget indbetalte udbytteskat refunderet via blanketordningen eller via bankordningen.

5. Det fremgår af SIR's undersøgelse fra 2015, at svindlen formodes at være foregået via blanketordningen, hvor formodede svindlere har foregivet at have modtaget aktieudbytte fra danske selskaber, hvor der er indeholdt udbytteskat. De formodede svindlere har således anmodet SKAT om at få refunderet udbytteskat for aktier, de aldrig har ejet, og har herved fået refunderet udbytteskat, de ikke har betalt.

## 1.3. Revisionskriterier, metode og afgrænsning

**Revisionskriterier**

6. Statsrevisorerne bad os om at undersøge 5 konkrete forhold, jf. bilag 1. Rigsrevisionen har i et notat til Statsrevisorerne i oktober 2015 beskrevet, hvordan vi ville tilrettelægge undersøgelsen og besvare anmodningen.

Formålet med undersøgelsen er at vurdere, om SKATs forvaltning af refusion af udbytteskat og Skatteministeriets tilsyn hermed har været tilfredsstillende.

7. Rigsrevisionen har undersøgt, om SKATs forvaltning af refusion af udbytteskat har været tilfredsstillende. Vi har i den forbindelse undersøgt, om SKATs interne kontroller, herunder datagrundlag og systemunderstøttelse vedrørende refusion af udbytteskat, har været tilstrækkelige til at kontrollere refusionsanmodninger fra udlandet. Vi har lagt til grund, at tilstrækkelig kontrol indebærer nedskrevne eller på anden måde fastsatte forretningsgange, efterprøvning af de oplysninger, som ligger til grund for udbetalingen, tilstrækkelig systemunderstøttelse, tydelig ansvarsfordeling, overvågning af området og opfølgning på kritiske revisionsrapporter og på udefrakommende oplysninger.

8. Rigsrevisionen har derudover undersøgt, om Skatteministeriet har ført et tilstrækkeligt tilsyn med SKATs forvaltning af refusion af udbytteskat. Vi har lagt til grund, at Skatteministeriet som led i sit almindelig tilsyn har det overordnede styrings- og tilsynsansvar for SKAT. Af "Ministerieinstruks for Skatteministeriet" (gældende fra januar 2013) fremgår bl.a. de opgaver, som Skatteministeriet varetager på regnskabsområdet som overordnet myndighed for bl.a. SKAT. Det fremgår, at Skatteministeriet som led i sit almindelige tilsyn bl.a. foretager en overvågning af skatte- og afgiftsindtægter. I den forbindelse fremgår det, at Skatteministeriet skal overvåge, om indtægterne er rimelige.

Derudover har vi lagt til grund, at et tilfredsstillende tilsyn omfatter, at Skatteministeriet reagerer på kritiske revisionsrapporter og forholder sig til øvrige informationer, der indikerer problemer eller risici på et givent område. Det fremgår af ministerieinstruksen, at SKATs forvaltning af udgifter og indtægter skal tilrettelægges ud fra hensyntagen til de konkrete forhold, dvs. væsentlighed og risiko samt størrelsen og arten af de forskellige typer indtægter og udgifter. Det fremgår endvidere, at Skatteministeriet som overordnet myndighed er ansvarlig for at sikre, at forvaltningen inden for Skatteministeriets koncern foretages på en forsvarlig måde. Hvis Skatteministeriet har kendskab til, at et område er risikofyldt, bør ministeriet således sikre, at der er de fornødne resurser og kompetencer til et effektivt tilsyn, indtil forholdene er rettet op. Endvidere har vi lagt til grund, at Skatteministeriet indhenter viden om SKATs forvaltning i et omfang, så ministeriet kan varetage sit overordnede styrings- og tilsynsansvar for SKAT.

Skatteministeriet har i sin koncernstyringsstrategi for 2014-2017 selv udpeget SKAT som en styrelse med behov for udvidet tilsyn og styring, bl.a. med begrundelse i, at der er mange identificerede risici, som kan få meget væsentlige konsekvenser, og samtidig en meget stor kompleksitet i opgaveløsningen. Det fremgår også af Rigsrevisionens beretning til Statsrevisorerne om Skatteministeriets økonomistyring, at Skatteministeriet – efter departementet blev genetableret i 2013 – udpegede SKAT som et område, hvor der på grund af store risici er behov for et udvidet tilsyn.

Skatteministeriet har anført, at Rigsrevisionen på den ene side lægger til grund, at ministeriet har det overordnede styrings- og tilsynsansvar for SKAT, og på den anden side reelt lægger til grund, at ministeriet bør udføre et særdeles detaljeret tilsyn med SKAT. Skatteministeriet er ikke enig i den sidste præmis. Skatteministeriet tilføjer, at ministeriets opgave er at udøve det tilsyn, der bl.a. sikrer en betryggende økonomisk og materiel styring inden for de politisk udstukne rammer, at der er et opdateret risikobillede for SKAT, og at der er etableret en intern styring mv., som sikrer, at der handles på de identificerede risici.

Rigsrevisionen er for så vidt enig i Skatteministeriets definition af tilsyn og opfatter ikke denne definition som værende i konflikt med undersøgelsens revisionskriterier og konklusioner. Rigsrevisionen lægger således ikke til grund, at Skatteministeriet skal føre et særdeles detaljeret tilsyn med alle SKATs enkeltområder, men at Skatteministeriet har pligt til at følge op i forhold til ethvert område i SKAT, som ministeriet bliver bekendt med er et problemområde. I forlængelse heraf har Rigsrevisionen derfor lagt til grund, at Skatteministeriet skal forholde sig til og sammenholde de oplysninger, som ministeriet får igennem sit almindelige tilsyn, med de eventuelt øvrige indikationer på problemer, som ministeriet modtager.

9. Skatteministeriet har oplyst, at departementet (jf. pkt. 8) har besluttet at føre et udvidet tilsyn med SKAT. Skatteministeriet forstår dog ikke dette tilsyn som et meget detaljeret tilsyn, men et tilsyn, hvor departementet agerer mere aktivt end i en "normalsituation" for at sikre, at der bliver gjort noget for at løse de strukturelle udfordringer, som fx ligger bag SKATs administration af refusion af udbytteskat.

Skatteministeriet har videre oplyst, at det er ministeriets opfattelse, at ministeriet i meget høj grad har påtaget sig rollen med at føre et udvidet tilsyn med SKAT, fx ved at gennemføre en turnusanalyse af afdelingen Betaling og Regnskab. At det tager tid at implementere en turnusanalyse, fører ifølge Skatteministeriet ikke naturligt til, at ministeriet også skal foretage en meget detaljeret normering af de aktuelle arbejdsprocesser. Rigsrevisionen finder det positivt, at Skatteministeriet har gennemført en turnusanalyse. Rigsrevisionen konstaterer samtidig, at et sådant initiativ har et langsigtet perspektiv, men at der i Skatteministeriets tilsyn også ligger en forpligtelse til at forholde sig til og agere på oplysninger og indikationer, som peger på problemer, der bør løses på kort sigt.

10. Vi har undersøgt, om SKAT har opgjort det fulde omfang af den formodede svindel med refusion af udbytteskat i perioden 1. januar 2012 - 5. august 2015, hvor SKAT formoder, at svindlen har fundet sted.

11. Skatteministeriet har i sit høringssvar anført, at Rigsrevisionen synes at vurdere sagen med afsæt i den viden, som er til stede i dag, og har anført, at det også ses afspejlet i, at Rigsrevisionen i løbet af undersøgelsesperioden har modtaget de samme revisionsrapporter fra SIR som departementet, uden at der har været advaret kraftigere om risikoen end sket.

Rigsrevisionen skal hertil bemærke, at Skatteministeriet har det overordnede styrings- og tilsynsansvar for SKAT, hvilket bl.a. indebærer, at ministeriet skal følge med i og reagere på kritiske revisionsrapporter, der indikerer problemer eller risici på området, jf. pkt. 8.

Rigsrevisionens revisionsberetning fra 2013 omhandler hele Skatteministeriets regnskab og er baseret på en vurdering af risiko og væsentlighed for hele regnskabet. Rigsrevisionen har i revisionsberetningen henvist specifikt til SIR's revisionsrapport om udbytteskat fra 2013. Rigsrevisionen baserer sig på SIR's arbejde og har via SIR gentagne gange fulgt op på spørgsmål om manglende kontroller på området for udbytteskat.

**Metode**
12. Undersøgelsen er bl.a. baseret på en gennemgang af SIR's undersøgelse fra september 2015 af SKATs administration af udbytteskat og refusion af udbytteskat. Udvalgte resultater fra undersøgelsen er inddraget i beretningen. Herudover indgår Rigsrevisionens løbende årsrevision og it-revision af området for udbytteskat for regnskabsåret 2015. Derudover indgår materiale og revisionsrapporter fra SIR.

Desuden er undersøgelsen baseret på en gennemgang af skriftligt materiale fra SKAT og Skatteministeriet, bl.a. redegørelser, mødereferater, Skatteministeriets månedlige indtægtslister til Folketingets Skatteudvalg og Finansudvalg og SKATs månedlige regnskabsgodkendelser. Endelig har vi holdt møder med SKAT, Skatteministeriet og SØIK.

SKAT_MDL_001_0075132

I perioden 2010-2012 udgjorde Skatteministeriets departement og SKAT en enhedsorgani-
sation. Skatteministeriet bestod af koncerncentret og SKAT. Departementschefen var såle-
des øverste administrative leder af koncerncentret, som varetog de centrale drifts-, udvik-
lings- og styringsopgaver for enhedsorganisationen. Den 1. januar 2013 blev SKAT udskilt
i en selvstændig styrelse under departementet. Derfor behandler Rigsrevisionen i undersø-
gelsen udelukkende SKATs opfølgning på SIR's revisionsrapport fra 2013, mens SIR's re-
visionsrapport fra 2010 alene er behandlet i afsnit 2.3 om Skatteministeriets tilsyn.

*Enhedsorganisation*
*Det fremgår af bekendtgørelse*
*nr. 1438 af 14. december 2009,*
*§ 1: "De opgaver, der ved skat-*
*teforvaltningslovens § 1 er til-*
*lagt told- og skatteforvaltnin-*
*gen, varetages af Skattemini-*
*steriet. Ved denne opgaveva-*
*retagelse kan der fortsat gøres*
*brug af betegnelsen SKAT".*

13. I beretningen indgår en række analyser af udviklingen på området for udbytteskat i pe-
rioden 1. januar 2010 - 5. august 2015. Skatteministeriet har haft indvendinger mod Rigs-
revisionens periodeafgrænsning og metode for fremskrivning. Disse indvendinger og Rigs-
revisionens bemærkninger hertil fremgår af bilag 2.

Revisionen er udført i overensstemmelse med god offentlig revisionsskik, jf. boks 1.

---

BOKS 1. GOD OFFENTLIG REVISIONSSKIK

God offentlig revisionsskik er baseret på de grundlæggende revisionsprincipper i rigsrevisionernes
internationale standarder (ISSAI 100-999).

---

**Afgrænsning**
14. Undersøgelsen vedrører på baggrund af Statsrevisorernes anmodning perioden 1. ja-
nuar 2010 - 5. august 2015. SKAT satte refusion af udbytteskat i bero den 6. august 2015.
Svindlen, som formodes at være foregået i perioden 1. januar 2012 - 5. august 2015, er op-
gjort pr. 13. november 2015, hvor SKAT indgav den 2. anmeldelse til SØIK om formodet
svindel for yderligere 2,9 mia. kr.

15. Beretningen har været i høring hos SØIK, og en række oplysninger er på SØIK's foran-
ledning udeladt af beretningen af hensyn til efterforskningen. Rigsrevisionen har vurderet,
at de udeladte oplysninger ikke har haft betydning for undersøgelsens hovedkonklusioner.
Rigsrevisionen har af hensyn til SØIK's efterforskning således ikke kunnet formidle, hvilke
oplysninger SKAT har modtaget udefra, og hvordan SKAT og Skatteministeriet har behand-
let disse oplysninger om formodet svindel. Rigsrevisionen har derfor heller ikke kunnet for-
midle, hvordan SKAT har opgjort den formodede svindel op indtil videre 9,1 mia. kr. Stats-
revisorernes anmodning herom har derfor ikke fuldt ud kunnet besvares.

16. Undersøgelsen handler om SKATs forvaltning af og Skatteministeriets tilsyn med refu-
sion af udbytteskat i perioden 1. januar 2010 - 5. august 2015. Undersøgelsen omfatter ik-
ke VP-ordningen, som er en nettoafregningsmodel for udbytteskat, hvor den endelige ud-
bytteprocent indeholdes, dvs. at der ikke efterfølgende kan anmodes om refusion af udbyt-
teskat. Undersøgelsen indeholder således heller ikke en analyse af SKATs kontrol med VP-
ordningen. SKAT har vurderet, at VP-ordningen ikke har haft den fornødne hjemmel i lov-
givningen, og har derfor opsagt ordningen i november 2015.

17. Statsrevisorernes anmodning og angivelse af, hvor i beretningen punkterne er behand-
let, fremgår af bilag 1. I bilag 2 redegør vi for de metoder, der er anvendt i undersøgelsen.
Bilag 3 indeholder en ordliste, der forklarer udvalgte ord og begreber.

SKAT_MDL_001_0075133

# 2. Formodet svindel med refusion af udbytteskat

18. Rigsrevisionen har undersøgt SKATs opgørelse af den formodede svindel med refusion af udbytteskat. Derudover har vi undersøgt SKATs forvaltning af refusion af udbytteskat, herunder SKATs kontrol i forbindelse med udbetalinger af refusion. Endelig har vi undersøgt Skatteministeriets tilsyn med området, herunder om ministeriet har forholdt sig til de oplysninger, som ministeriet har fået gennem sit almindelige tilsyn, og om ministeriet har reageret på indikationer på problemer med refusion af udbytteskat.

19. I undersøgelsesperioden har udenlandske aktionærer kunnet anmode om refusion af udbytteskat via 2 ordninger: blanketordningen og bankordningen.

Blanketordningen består i, at udenlandske aktionærer kan indsende en udfyldt blanket til SKAT med anmodning om refusion af udbytteskat. Blanketten hentes på SKATs hjemmeside. Aktionæren udfylder blanketten med oplysninger om det beløb, som søges refunderet, samt aktionærens bankoplysninger og adresse. Derudover skal aktionæren vedlægge bilag med oplysninger om ejerskab af aktierne og udbetalt udbytte samt en attest fra skattemyndigheden i sit hjemland, der bekræfter, at aktionæren er skattepligtig i det pågældende land.

Bankordningen, som SKAT opsagde i september 2015, bestod i en aftale indgået mellem SKAT og 3 banker, hvor disse 3 banker kunne anmode om refusion af udbytteskat på vegne af udenlandske aktionærer. En udenlandsk bank med danske aktier i depot sendte en samlet refusionsanmodning for alle de danske aktier til én af de 3 banker. Herefter sendte dén af de 3 banker, som anmodningen gik gennem, en samlet refusionsanmodning til SKAT i form af et regneark, som indeholdt en opgørelse af det samlede beløb, der blev anmodet om refusion for. SKAT refunderede udbytteskat til de 3 banker på baggrund af sådanne anmodninger, og de 3 banker videresendte refusionen til de udenlandske banker.

## 2.1. SKATs opgørelse af den formodede svindel

20. Rigsrevisionen har undersøgt, om SKAT har opgjort det fulde omfang af den formodede svindel med refusion af udbytteskat i perioden 1. januar 2012 - 5. august 2015, hvor SKAT formoder, at svindlen har fundet sted.

21. SKAT blev opmærksom på den formodede svindel efter at have modtaget oplysninger herom udefra og satte på den baggrund udbetalingerne af refusion af udbytteskat i bero den 6. august 2015.

SKAT oplyste i en pressemeddelelse i forbindelse med den 1. anmeldelse til SØIK den 24. august 2015, at SKAT havde modtaget i alt 2.120 anmodninger om refusion af udbytteskat, der formodes at kunne relateres til svindlen. Anmodningerne er modtaget i perioden 1. januar 2012 - 5. august 2015 og beløber sig til i alt 6,2 mia. kr.

SKAT har efterfølgende i november 2015 anmeldt yderligere formodet svindel for 2,9 mia. kr. til SØIK. Den 2. anmeldelse til SØIK er omfattet af fortrolighed af hensyn til SØIK's efterforskning.

22. Figur 2 giver et overblik over refusion af udbytteskat via blanketordningen og bankordningen.



Figur 2. Refusion af udbytteskat via blanketordningen og bankordningen i perioden 1. januar 2012 - 5. august 2015

**Refusion af udbytteskat**

i perioden 1. januar 2012 - 5. august 2015

**19,6** mia. kr.

VIA BANKORDNING
**5,4 mia. kr.**

VIA BLANKETORDNING
**14,2 mia. kr.**

Formodet svindel opgjort til 9,1 mia. kr.

5,4 mia. kr.
SKAT vil analysere disse udbetalinger for risiko for uretmæssig refusion

5,1 mia. kr.
SKAT er i gang med at gennemgå disse udbetalinger for yderligere formodet svindel

2,9 mia. kr.
2. anmeldelse til SØIK

6,2 mia. kr.
1. anmeldelse til SØIK

Kilde: Rigsrevisionen på baggrund af SIR's undersøgelse fra 2015 og oplysninger fra Skatteministeriet.

Det fremgår af figur 2, at der i perioden 1. januar 2012 - 5. august 2015 blev udbetalt refusion af udbytteskat for i alt 19,6 mia. kr., hvoraf 14,2 mia. kr. blev udbetalt via blanketordningen og 5,4 mia. kr. via bankordningen.

SKAT har opgjort den formodede svindel via blanketordningen til foreløbig 9,1 mia. kr., dvs. ca. ⅔ af det refusionsbeløb, der samlet blev udbetalt i perioden via blanketordningen. SKAT er i gang med at gennemgå de resterende 5,1 mia. kr., som blev udbetalt via blanketordningen, for yderligere formodet svindel. Skatteministeriet har oplyst, at gennemgangen forventes at afdække yderligere formodet svindel. Gennemgangen forventes afsluttet inden sommerferien 2016.

Skatteministeriet har oplyst, at der i foråret 2016 igangsættes et analysearbejde af udbetalingerne af refusion via bankordningen. Analysearbejdet skal afdække, om der i refusionerne via bankordningen er spor til den formodede svindel via blanketordningen, og om der er risiko for andre typer uretmæssige refusioner. SKAT har oplyst, at der vil blive foretaget en nærmere kontrol af grundlaget for disse refusioner, hvis analysen afdækker sådanne forhold. Skatteministeriet har videre oplyst, at det ikke kan udelukkes, at der har været svindel via bankordningen.

**Resultater**

23. Rigsrevisionens undersøgelse viser, at SKAT indtil videre har anmeldt formodet svindel for 9,1 mia. kr. ud af de 14,2 mia. kr., som blev udbetalt via blanketordningen i perioden 1. januar 2012 - 5. august 2015. SKAT er i gang med at gennemgå de resterende 5,1 mia. kr., som blev udbetalt via blanketordningen. Skatteministeriet har oplyst, at det er sandsynligt, at gennemgangen vil afdække yderligere formodet svindel ud over de 9,1 mia. kr., der indtil videre er anmeldt til SØIK.

Skatteministeriet vil primo 2016 igangsætte et analysearbejde af udbetalingerne af refusion via bankordningen, som skal afdække, om der er risiko for uretmæssig refusion. Hvis analysen afdækker sådanne forhold, vil SKAT foretage en nærmere kontrol af grundlaget for disse refusioner. Skatteministeriet har oplyst, at det ikke kan udelukkes, at der har været svindel via bankordningen.

## 2.2.  SKATs forvaltning af refusion af udbytteskat

24. Rigsrevisionen har undersøgt, om SKATs forvaltning af refusion af udbytteskat har været tilfredsstillende. Vi har i den forbindelse undersøgt SKATs interne kontroller. Vi har lagt til grund, at tilstrækkelig kontrol indebærer nedskrevne eller på anden måde fastsatte forretningsgange, efterprøvning af de oplysninger, som ligger til grund for udbetalingen, tilstrækkelig systemunderstøttelse, tydelig ansvarsfordeling, overvågning af området og opfølgning på kritiske revisionsrapporter og andre indikationer på problemer.

25. SKAT og Skatteministeriet har efterfølgende oplyst, at de finder det meget alvorligt og dybt beklageligt, at der har kunnet foregå svindel i det påviste omfang. Skatteministeriet tilføjer, at med den viden om området og den hertil forbundne risiko, som SKAT og Skatteministeriet har i dag, må det således konstateres, at kontrollen forbundet med refusion af udbytteskat skulle have været tilrettelagt anderledes. Skatteministeriet tilføjer, at det, at svindel kan foregå, bl.a. er et resultat af den risikobaserede tilgang, som er valgt for den danske skatte- og afgiftsmodel, hvor udgangspunktet er, at der er tillid til, at borgere og virksomheder generelt betaler den rette skat. Rigsrevisionen skal i den forbindelse henvise til en vismandsrapport fra 2011 (Dansk Økonomi, foråret 2011), hvoraf det fremgår, at det ikke er manglende lyst til snyd, men primært manglende muligheder for snyd, som holder niveauet af skattesnyd i Danmark lavt.

SKAT_MDL_001_0075136

26. I forlængelse af SKATs 1. anmeldelse til SØIK om formodet svindel iværksatte Skatte-ministeriet en intern undersøgelse af årsagerne til den formodede svindel. Undersøgelsen blev foretaget af SIR. Vi har i dette afsnit inddraget resultaterne fra den interne undersø-gelse. Boks 2 viser uddrag af undersøgelsen.

---

**BOKS 2. ÅRSAGER TIL KONTROLSVIGTET IFØLGE SIR'S UNDERSØGELSE**

**Interne kontroller**
- SKATs rutiner for godkendelse af refusionsanmodninger og efterfølgende udbetaling har omfat-tet en vurdering af, om refusionsanmodningerne har været bilagt påkrævet dokumentation, og en efterregning af refusionsbeløbet for at efterprøve, om beløbet er opgjort korrekt i henhold til den konkrete dobbeltbeskatningsoverenskomst.
- SKAT har i mindre omfang vurderet udsving i refusionsanmodningernes størrelse samt identifika-tion af refusionsanmodninger fremsendt af nye ukendte mellemmænd.
- SKAT har i begrænset omfang efterprøvet, om der foreligger reelle aktionærforhold bag refusions-anmodninger, samt om en refusionsanmodning kan henføres til en forudgående indeholdelse af udbytteskat.
- SKATs opfølgning på regnskabsdata i forbindelse med de løbende regnskabsgodkendelser har været mangelfuld. Perioderegnskaberne, der omfatter udbytteskat og refusion heraf, er godkendt uden forbehold. SIR vurderer, at den løbende regnskabsgodkendelse ikke er funderet i en syste-matisk regnskabsanalytisk efterprøvning af regnskabstallene.

**Systemunderstøttelse**
- SKATs it-systemer indeholder ikke oplysninger om ejerskab for aktier, der er placeret i omnibus-depoter.
- Registreringer i it-systemerne danner et utilstrækkeligt datagrundlag for at udføre en effektiv grundlagskontrol i forbindelse med anmodninger om refusion af udbytteskat.

**Ansvarsfordeling**
- Processen for udbytteskat har været fordelt mellem 4 direktørområder i SKAT.
- Der har ikke været et samlet organisatorisk forankret procesansvar, og det har medført væsent-ligt øget risiko for utilstrækkelig overvågning og vurdering af området, herunder en løbende vur-dering af kontrollerne i arbejdsgangene.

SIR konkluderer endvidere:

- At SKAT ved en lovændring fra 2009, som udmøntes i 2 bekendtgørelser, der har virkning fra 2012 (unoterede aktier) og 2013 (unoterede aktier), fik mulighed for at harmonisere fristerne for virksomhedernes udlodning af udbytte og indberetning af udbyttemodtagere. Lovændringen gav bl.a. SKAT mulighed for at sammenholde refusionsanmodningen med modtaget udbytte og inde-holdt udbytteskat. SKAT har endnu ikke implementeret de afstemningsrutiner for børsnoterede aktier, som der blev givet mulighed for i 2013.
- At SKAT ikke har fulgt op på revisionsrapporter og implementeret anbefalinger fra SIR med hen-blik på bl.a. at sikre, at der ikke sker uretmæssig refusion af udbytteskat.

Kilde:  SIR's undersøgelse fra 2015.

---

*Omnibusdepot er et samlede-pot, som typisk er ejet af en udenlandsk bank, hvori dan-ske aktier, der er ejet af uden-landske aktionærer, kan være placeret. I disse tilfælde inde-holder SKATs it-systemer ikke oplysninger om den enkelte ejer af aktierne, men kun op-lysninger til identifikation af ejeren af omnibusdepotet.*

**Kontrol af anmodning om refusion via blanketordningen**
27. De 9,1 mia. kr., som den formodede svindel indtil videre er opgjort til, blev udbetalt via den såkaldte blanketordning, hvor ansøger ved anmodning om refusion indsender en ud-fyldt blanket til SKAT vedlagt bilag med dokumentation.

28. SKAT har ifølge SIR's undersøgelse alene kontrolleret, om anmodninger via blanket-ordningen har været vedlagt påkrævede bilag med dokumentation, og om det ansøgte re-fusionsbeløb er opgjort korrekt i henhold til den gældende dobbeltbeskatningsoverenskomst. SIR's undersøgelse viser, at SKAT i begrænset omfang har efterprøvet, om udbyttemodta-geren har ejet aktierne ved udlodningen, og om der forud for udbetalingen af refusion er indeholdt udbytteskat. SIR's undersøgelse viser således, at SKAT har udbetalt det ansøgte refusionsbeløb, hvis ansøgningen var udfyldt, og der var vedlagt den krævede dokumenta-tion.

29. Rigsrevisionens undersøgelse viser, at SKAT i forbindelse med en ansøgning om refusion via blanketordningen har modtaget en udfyldt blanket, hvortil der har været vedhæftet en meget forskelligartet dokumentation for, at ansøger har krav på refusion. Dokumentationen for ansøgers krav har haft forskellig form. Fx har dokumentationen for ejerskab ikke i alle tilfælde været en depotoversigt, men har i stedet været udfærdiget af ansøger selv. Det fremgår ikke af hjælpeteksten på blanketten, hvilken form for dokumentation SKAT anmoder om. SKAT har endvidere ikke udarbejdet en vejledning til sagsbehandleren om, hvilken form dokumentationen bør have.

Ved gennemgangen af SKATs forretningsgange har Rigsrevisionen konstateret, at SKAT i forbindelse med behandling af refusionsanmodninger via blanketordningen mangler væsentlige nøglekontroller. Et eksempel på en manglende kontrol er, at SKAT ikke har verificeret, om den modtagne blanket er stemplet af en kompetent autoritet, så det kan verificeres, at ansøger er skattepligtig i det pågældende land og dermed omfattet af dobbeltbeskatningsoverenskomsten. SKAT kontrollerer heller ikke ejerforhold for aktier, og om de pågældende selskaber har udbetalt udbytte til ansøgeren.

Boks 3 opsummerer, hvad SKAT har foretaget sig i forbindelse med anmodninger om refusion af udbytteskat via blanketordningen.

---

BOKS 3. SKATS BEHANDLING AF REFUSIONSANMODNINGER VIA BLANKETORDNINGEN

SKAT har efterset følgende i forbindelse med modtagelse af en anmodninger om refusion af udbytteskat:

- om de påkrævede bilag er vedlagt
- om der er stempel fra en udenlandsk skattemyndighed
- om der foreligger en dobbeltbeskatningsoverenskomst med ansøgers hjemland, og om det ansøgte beløb er opgjort korrekt i henhold til denne.

---

30. Boks 4 viser eksempler på oplysninger, som SKAT ikke har kontrolleret, men som Rigsrevisionen vurderer ville have været relevante at undersøge i forbindelse med udbetalingen af refusion via blanketordningen.

---

BOKS 4. EKSEMPLER PÅ OPLYSNINGER, SOM SKAT IKKE HAR KONTROLLERET I FORBINDELSE MED UDBETALING AF REFUSION

- om selskabet har udbetalt udbytte til den pågældende ansøger
- om ansøgeren har fået indeholdt udbytteskat
- ægtheden af bilagene vedlagt ansøgningen, herunder oplysninger om ejerskab af aktier
- ægtheden af stempel fra udenlandsk skattemyndighed.

---

31. Rigsrevisionen konstaterer, at SKAT har udbetalt refusion af udbytteskat uden at kontrollere gyldigheden af de oplysninger, som SKAT har modtaget. SKAT har ikke fastsatte og nedskrevne forretningsgange for kontrol med refusion af udbytteskat. Rigsrevisionen finder, at et fravær af sådanne forretningsgange øger risikoen for en mangelfuld forvaltning.

**Kontrol af anmodning om refusion via bankordningen**

32. Ifølge SIR's undersøgelse har SKAT i bankordningen uddelegeret sine kontrolopgaver til 3 banker. SKAT har været afhængig af, at de 3 banker har etableret effektive kontroller på området. SIR vurderer, at SKAT ikke har fulgt op på, om disse kontroller var effektive. SIR's undersøgelse viser endvidere, at SKAT ikke overførte oplysninger fra refusionsanmodningerne via bankordningen til det interne it-system, og at det dermed ikke var muligt for SKAT at foretage en sammenholdelse med eventuelle udbyttemodtagere, som selskaberne havde indberettet til SKAT. SIR konkluderer, at det ikke kan udelukkes, at udbyttemodtageren, som fik refusion via bankordningen, også søgte om refusion via blanketordningen.

33. Rigsrevisionens undersøgelse viser ligeledes, at SKAT ikke foretog indholdsmæssig kontrol af refusionsanmodninger, som SKAT modtog fra de 3 banker i bankordningen, ligesom SKAT heller ikke kontrollerede, om der var udloddet udbytte for de aktier, der blev søgt om refusion på baggrund af.

De 3 banker skulle ifølge aftalen med SKAT alene kontrollere, at der var afregnet udbytte til den udenlandske bank, og at udbytteskatten var indeholdt. SKAT havde ifølge aftalen ikke stillet krav om, at de 3 banker i bankordningen sammen med refusionsanmodningerne fra udenlandske banker skulle modtage dokumentation for aktiernes ejerforhold eller for, at aktionæren var skattepligtig i det pågældende land.

SKAT kontrollerede ikke, om de 3 banker i bankordningen udførte den aftalte kontrol. SKAT udbetalte refusionen alene på baggrund af de samlede opgørelser, som bankerne indsendte. De 3 banker videresendte refusionen til de udenlandske banker, der efterfølgende foretog den endelige afregning til aktionærerne.

SKAT førte heller ikke kontrol med, om ansøgere, som fik refusion via bankordningen, også søgte om refusion via blanketordningen, dvs. om den indeholdte udbytteskat uretmæssigt blev refunderet flere gange.

34. Rigsrevisionen konstaterer, at SKAT ved refusion af udbytteskat via bankordningen ikke har været vidende om, hvorvidt den udenlandske bank foretager kontrol af ejerforholdet for de aktier, der søges om refusion på baggrund af, ligesom SKAT heller ikke har været vidende om, hvorvidt beløbet, der ønskedes refunderet, var opgjort efter den korrekte dobbeltbeskatningsoverenskomst.

35. Skatteministeriet har oplyst, at SKAT har vurderet, at bankordningen ikke kan anses for at udgøre en fornøden retlig ramme for anmodning om refusion af udbytteskat, og har derfor opsagt aftalerne med de 3 banker ultimo september 2015. SKATs vurdering af ordningen er, at der ikke foreligger et gyldigt repræsentationsforhold (banken optræder på vegne af udbyttemodtageren), og at SKAT ikke uden lovhjemmel kan uddelegere sine kontrolbeføjelser og sin kontrolpligt. De aktionærer, der har benyttet sig at bankordningen, er nu henvist til at bruge blanketordningen.

SKAT_MDL_001_0075139

### Systemunderstøttelse af kontrollen

36. SIR's undersøgelse viser, at SKATs it-understøttelse af udbytteområdet er utilstrække-lig til at gennemføre en effektiv grundlagskontrol med baggrund i de registrerede data. En grundlagskontrol omfatter kontrol af, om der ligger et ægte aktionærforhold til grund for an-modningen om refusion af udbytteskat, og om udbytteskatten er indeholdt.

37. Rigsrevisionens undersøgelse viser, at SKATs it-system til behandling af udbytteskat anvender obligatoriske felter, som skal udfyldes, fx navn, adresse, udbytte og vedtagelses-dato (for udbytteudlodning). Bortset fra krav om, at feltet "udbytte" skal indeholde tal, og at datofelterne skal opfylde et bestemt datoformat, har SKAT ikke fastsat krav til indholdet i felterne. Dette medfører risiko for en uensartet og ufuldstændig registrering af refusion af udbytteskat til udenlandske udbyttemodtagere, hvilket svækker muligheden for kontrol af refusionsanmodninger.

38. SKATs it-system til behandling af udbytteskat indeholder en kontrolfunktion, der orien-terer sagsbehandleren, hvis der for det enkelte udloddende selskab anmodes om refusion af et større beløb end det, der i alt er indbetalt i udbytteskat. Rigsrevisionens undersøgelse viser, at kontrolfunktionen har været sat ud af drift for nogle selskaber fra 2013 og frem til juli 2015. I denne periode har SKAT således ikke kontrolleret, om der rent faktisk har været "dækning" for den refunderede udbytteskat for disse selskaber. Ifølge SKAT er der ikke ud-ført kompenserende kontroller af refusionerne i denne periode, hvor kontrollen var ude af drift. SIR's undersøgelse viser eksempler på, at SKAT for nogle selskabers vedkommende har refunderet mere udbytteskat, end selskabet har indbetalt. I 2014 blev der fx refunderet 111 % af den indbetalte udbytteskat for et enkelt selskab.

39. Det er Rigsrevisionens vurdering, at SKATs it-understøttelse af kontrollen med refusion af udbytteskat har været helt utilstrækkelig. Dette har bl.a. betydet, at der har manglet kon-trol af inddata, ligesom der er eksempler på, at der er refunderet mere udbytteskat, end sel-skabet samlet har indbetalt i udbytteskat.

### Ansvarsfordelingen

40. SIR's undersøgelse viser, at der er 4 direktørområder, som har været involveret i admi-nistrationen af udbytteskat og refusionen heraf, hvilket har betydet, at der ikke har været et samlet organisatorisk forankret procesansvar. Dette har ifølge SIR været medvirkende til, at der ikke har været en tilstrækkelig overvågning af området, og at der heller ikke har væ-ret en vurdering af kontrollerne med refusion af udbytteskat.

41. Rigsrevisionens løbende årsrevision for regnskabsåret 2015 viser også, at SKAT heller ikke i 2015 har sikret en klar og entydig ansvars- og opgavefordeling mellem forretningsom-råderne og de underliggende processer. SKAT har heller ikke nedskrevne eller på anden måde fastsatte forretningsgange og interne kontroller vedrørende den samlede proces for udbytteskat.

42. Rigsrevisionens undersøgelse viser desuden, at SKATs direktion for 2013 og 2014 har modtaget resultatløn for sine ansvarsområder, mens enkelte medarbejdere, der har arbej-det med refusion af udbytteskat, har modtaget engangsvederlag. Begrundelserne for resul-tatløn og engangsvederlag er dog af mere generel karakter og er ikke begrundet med ek-spedition af et stort antal refusionsanmodninger.

**Overvågning**
43. Rigsrevisionens undersøgelse viser, at SKAT ikke har foretaget en grundlæggende
overvågning som led i kontrollen med refusion af udbytteskat. Rigsrevisionen finder, at en
helt grundlæggende, simpel overvågning ville have peget på behovet for en nærmere gen-
nemgang af området. Figur 3-6 viser udviklingen i refusion af udbytteskat i perioden 1. ja-
nuar 2010 - 5. august 2015.



Figur 3. Udvikling i indtægter og refusion af udbytteskat
(Mia. kr.)

Figur 4. Refusionsprocent

Figur 5. Udvikling i antallet af ansøgninger via blanket-
ordningen

Figur 6. Udvikling i gennemsnitligt ansøgt beløb via blanket-
ordningen
(Kr.)

Kilde: Rigsrevisionen på baggrund af SIR's undersøgelse fra 2015 og oplysninger fra Skatteministeriet. Fremskrivningen i figur 5 er
Rigsrevisionens egen beregning.

Det fremgår af figur 3, at den samlede refusion af udbytteskat (både via bankordningen og
blanketordningen) i perioden er steget fra 0,68 mia. kr. til 9,3 mia. kr., hvilket svarer til en
stigning på ca. 1.300 %, mens indtægterne fra udbytteskat er steget fra 6,4 mia. kr. til 19 mia.
kr. i samme periode, hvilket svarer til stigning på ca. 200 %.

Det fremgår af figur 4, at refusionsprocenten, som er forholdet mellem indtægter fra udbytteskat og refusion af udbytteskat, steg markant i perioden 1. januar 2010 - 5. august 2015. Refusionsprocenten er således steget fra ca. 11 % i 2010 til ca. 49 % i perioden. Refusionsprocenten omfatter den totale refusion af udbytteskat, dvs. både bankordningen og blanketordningen. Det fremgår endvidere, at refusionsprocenten særligt fra 2013 til 2014 steg markant fra ca. 24 % til ca. 46 %.

Det fremgår af figur 5, at antallet af anmodninger om refusion af udbytteskat via blanketordningen steg fra 6.019 i 2010 til 16.374 i 2014. I 2015 er der alene i perioden 1. januar 2010 - 5. august 2015 modtaget 12.041 anmodninger. Den stiplede linje er en fremskrivning af udviklingen for hele 2015 på baggrund af det gennemsnitlige antal dagligt modtagne ansøgninger fra 1. januar til 5. august 2015 for at illustrere, hvordan udviklingen i antal ansøgninger via blanketordningen kunne være fortsat, hvis SKAT ikke havde modtaget oplysninger udefra om formodet svindel og reageret ved at sætte udbetalingerne i bero.

Det fremgår af figur 6, at det gennemsnitlige beløb, som aktionærerne anmodede om at få refunderet via blanketordningen, er steget markant fra 37.113 kr. i 2010 til 681.007 kr. i 2015. Dette svarer til en stigning på ca. 1.700 %. Rigsrevisionen skal hertil tilføje, at SKATs 1. anmeldelse til SØIK omhandler 2.120 refusionsudbetalinger for i alt 6,2 mia. kr., jf. afsnit 2.1. Dette svarer til, at der for disse anmodninger er udbetalt gennemsnitligt knap 3 mio. kr. pr. anmodning, og disse anmodninger har således ligget på et markant højere beløb end det gennemsnitlige ansøgte beløb for alle anmodninger.

44. Rigsrevisionen konstaterer ud fra figur 3-6, at helt simple analyser af refusion af udbytteskat – på baggrund af de data, som SKAT allerede er i besiddelse af – klart peger på behovet for en grundig gennemgang af udviklingen i refusion af udbytteskat og dens årsager. Rigsrevisionen kan imidlertid konstatere, at end ikke den store stigning i antallet af anmodninger i undersøgelsesperioden gav anledning til, at SKAT undersøgte udviklingen i refusion af udbytteskat nærmere. SKAT har således i juni 2015 oplyst til SIR, at SKAT var i gang med at oplære nye medarbejdere for bl.a. at kunne håndtere det stigende antal anmodninger om refusion af udbytteskat.

Skatteministeriet har hertil anført, at Rigsrevisionen fremhæver det som noget negativt, at SKAT oplærer nye medarbejdere. Skatteministeriet tilføjer, at det objektivt set kan fremhæves som, at SKAT resursetilpasser på grund af forøget aktivitetsniveau vedrørende refusionsanmodninger. Dertil kommer, at svigomfanget antalsmæssigt kun udgør en meget lille andel af de samlede antal anmodninger. Rigsrevisionen skal hertil bemærke, at Rigsrevisionen ikke isoleret set fremhæver det som negativt, at SKAT oplærer nye medarbejdere. Dog finder Rigsrevisionen, at den store stigning i antallet af ansøgninger sammenholdt med den markante stigning i den samlede refusion burde have givet anledning til, at SKAT undersøgte området nærmere. Rigsrevisionen konstaterer, at SKAT ikke foretog en sådan undersøgelse, men at SKAT oplærte nye medarbejdere for at kunne håndtere det stigende antal anmodninger uden at reflektere over de bagvedliggende årsager.

### SKATs opfølgning på SIR's revisionsrapport fra 2013

45. Rigsrevisionens undersøgelse viser, at SKAT i 2013 modtog en revisionsrapport fra SIR. Rapporten indeholder 8 bemærkninger, som SIR anbefaler, at SKAT følger op på. Bemærkningerne er markeret med en farveskala, der angiver væsentligheden af bemærkningen. Rapporten indeholder 5 røde, 2 gule og 1 grøn bemærkning. SIR anbefaler i rapporten bl.a., "at SKAT sikrer sig bedre mod uretmæssig refusion af udbytteskat". Bemærkningen er markeret med gult, hvilket ifølge rapporten er udtryk for en betydelig svaghed, der vurderes som et problem, der bør tages hånd om.

SKAT har en procedure for opfølgning på revisionsrapporter, hvor SKAT i en opfølgnings-protokol bl.a. rapporterer om, hvilke handlinger der vil blive foretaget i SKAT som opfølgning på kritikken, og angiver en tidsfrist for afslutning af denne handling. Opfølgningsprotokollen forelægges SKATs direktion, inden den sendes til Skatteministeriet til orientering.

46. Tabel 1 viser uddrag af SKATs opfølgningsprotokoller. Af uddragene fremgår, hvordan SKAT har fulgt op på SIR's bemærkning i revisionsrapporten fra 2013 om at sikre sig bed-re mod uretmæssig refusion af udbytteskat.

**Tabel 1. Uddrag af SKATs opfølgningsprotokoller vedrørende SKATs arbejde med at sikre sig bedre mod uretmæssig refusion af udbytteskat**

| Tidspunkt | Handling i SKAT | Tidsfrist |
|---|---|---|
| 2. og 3. kvartal 2013 | SKAT vil afklare, om det er muligt at indlægge yderligere kontroller. Der nedsættes en arbejdsgruppe. | 31. december 2013. |
| 4. kvartal 2013 | Arbejdsgruppen er påbegyndt beskrivelse af opgaver og ansvarsområder. Arbejdet hermed forventes færdigt ultimo januar 2014. | 30. april 2014. |
| 1. kvartal 2014 | SKAT vil afklare, om det er muligt at indlægge yderligere kontroller. | Frist udskydes til 30. september 2014. |
| 2. kvartal 2014 | SKAT vil afklare, om det er muligt at indlægge yderligere kontroller. | Frist udskudt til 30. september 2014. |
| 3. kvartal 2014 | SKAT vil afklare, om det er muligt at indlægge yderligere kontroller. | Frist udskydes til 31. december 2014. |
| 4. kvartal 2014 | Proces for refusion af udbytteskat er under udarbejdelse via SKATs deltagelse i OECD-projektet TRACE. | Arbejdet med bemærk-ningen afsluttes. |

Det fremgår af tabel 1, at SKAT i 2013 erkender, at der er behov for at afklare, om det er muligt at indlægge yderligere kontroller for at sikre sig bedre mod uretmæssig refusion af udbytteskat. Imidlertid udskydes fristen for denne opgave flere gange, inden den afsluttes med henvisning til SKATs deltagelse i OECD-projektet TRACE.

47. Rigsrevisionen konstaterer, at SKATs direktion godkender, at arbejdet med at forbedre kontrollen med refusion af udbytteskat angives som afsluttet i opfølgningsprotokollen på et tidspunkt, hvor tidsplanen er overskredet med mere end 1 år, uden at SKAT har foretaget ændringer i det eksisterende kontrolsystem for refusion af udbytteskat. Arbejdet afsluttes alene med henvisning til dansk deltagelse i OECD-projektet TRACE. Skatteministeriet har oplyst, at OECD offentliggjorde en færdig TRACE-model i februar 2013, men modellen er endnu ikke blevet implementeret i Danmark eller i noget andet land. Det er på den baggrund Rigsrevisionens vurdering, at SKAT reelt ikke har arbejdet med bemærkningen fra SIR om at forbedre kontrollen med refusion af udbytteskat.

**SKATs håndtering af oplysninger udefra om formodet svindel**
48. Rigsrevisionens undersøgelse viser, at SKAT modtog oplysninger udefra om formodet svindel. På den baggrund satte SKAT udbetalingerne af refusion af udbytteskat i bero den 6. august 2015. Rigsrevisionen konstaterer, at der i perioden, fra SKAT modtog oplysnin-ger udefra om formodet svindel, til refusion af udbytteskat sættes i bero, blev udbetalt yder-ligere 3,2 mia. kr. i refusion af udbytteskat. Rigsrevisionen har af hensyn til SØIK's efter-forskning ikke kunnet formidle, hvilke oplysninger SKAT har modtaget udefra, og hvordan SKAT og Skatteministeriet har behandlet disse oplysninger om formodet svindel.

*OECD-projektet TRACE (Treaty Relief and Compli-ance Enhancement)*
*Formålet med projektet var at etablere et system, hvor der foretages automatisk nettoin-deholdelse af udbytteskat i henhold til den relevante dob-beltbeskatningsoverenskomst i forbindelse med udbetaling af udbytte til udenlandske aktio-nærer. Ved nettoindeholdelse af udbytteskat foretages ikke refusion.*

18                          FORMODET SVINDEL MED REFUSION AF UDBYTTESKAT

Rigsrevisionen konstaterer, at SKAT har udbetalt 3,2 mia. kr. i refusion af udbytteskat efter
det tidspunkt, hvor SKAT modtog oplysninger udefra om den formodede svindel, og indtil
udbetalingerne blev sat i bero. Skatteministeriet har oplyst, at SKAT på baggrund af de op-
lysninger, der fremkom hen over sommeren 2015, først den 6. august 2015 havde det nød-
vendige grundlag for at stoppe udbetalingerne. Skatteministeriet har endvidere anført, at
SKAT efter kildeskattelovens § 69 B er forpligtet til at refundere for meget indeholdt udbyt-
teskat, og at der skal foreligge helt særlige grunde, før de samlede udbetalinger kan stilles
i bero. Rigsrevisionen skal hertil anføre, at SKAT, da de modtog oplysninger udefra om for-
modet svindel, var vidende om, at antallet af anmodninger og det samlede refusionsbeløb
var steget markant, og SKAT var samtidig vidende om, at de interne kontroller var mangel-
fulde.

Rigsrevisionen finder derfor, at SKAT burde have undersøgt området nærmere, inden de
foretog yderligere udbetalinger af refusion. Rigsrevisionen finder ikke, at en nærmere un-
dersøgelse, inden yderligere udbetalinger blev foretaget, ville være i strid med kildeskatte-
lovens § 69 B. Ifølge kildeskattelovens § 69 B har SKAT 6 måneder til at refundere for me-
get indeholdt udbytteskat, fra den dag grundlaget for udbetaling er tilstrækkeligt oplyst, hvor-
efter der tilskrives renter. Denne bestemmelse blev indsat i kildeskatteloven i juni 2012.

**Resultater**
49. Rigsrevisionens undersøgelse viser, at SKATs forvaltning af refusion af udbytteskat –
både via bankordningen og blanketordningen – har været helt utilstrækkelig i undersøgel-
sesperioden, og at der ikke har været ledelsesmæssigt fokus på området.

SKAT har ingen nedskrevne og heller ikke fastsatte forretningsgange for, hvad der skal kon-
trolleres i forbindelse med behandling af anmodninger om refusion af udbytteskat, og hvor-
dan dette skal ske. SKAT har ikke kontrolleret grundlæggende oplysninger i anmodninger-
ne, fx ejerskab, og om ansøger har fået indeholdt udbytteskat. SKAT har haft en utilstræk-
kelig systemunderstøttelse, som ikke muliggør kontrol af grundlæggende oplysninger. SKAT
har ligeledes ikke sikret en klar og entydig ansvars- og opgavefordeling mellem forretnings-
områderne og de underliggende processer vedrørende administrationen af udbytteskat og
refusion heraf.

Ifølge SKATs egen vurdering har SKAT via bankordningen uden lovhjemmel uddelegeret
sine kontrolbeføjelser og kontrolpligt, og bankordningen har således efter SKATs egen vur-
dering ikke været lovlig. SKAT har opsagt aftalen med de 3 banker ultimo september 2015.
SKAT har ikke kontrolleret, om de 3 banker i bankordningen har udført den aftalte kontrol.
SKAT har derudover ikke foretaget indholdsmæssig kontrol af refusionsanmodninger, som
SKAT har modtaget fra de 3 banker i bankordningen, ligesom SKAT heller ikke har kontrol-
leret, om der er udloddet udbytte for de aktier, der er søgt om refusion på baggrund af. En-
delig har SKAT ikke ført kontrol med, om aktionærer, som har fået refusion via bankordnin-
gen, også har søgt om refusion via blanketordningen, dvs. om den indeholdte udbytteskat
uretmæssigt blev refunderet flere gange.

SKAT har reelt ikke fulgt op på en kritisk revisionsrapport fra 2013, hvori SIR bl.a. anbefa-
lede, at SKAT skulle sikre sig bedre mod uretmæssig refusion af udbytteskat. Endelig har
SKAT ikke overvåget området og som del heraf udarbejdet helt simple grundlæggende ana-
lyser, der klart ville have peget på behovet for en grundig undersøgelse af udviklingen i re-
fusion af udbytteskat. Tværtimod var SKAT, da de modtog oplysninger udefra om formodet
svindel, i gang med at oplære nye medarbejdere for at kunne håndtere det stigende antal
anmodninger om refusion af udbytteskat uden at undersøge årsagen til stigningen nærmere.

SKAT har udbetalt 3,2 mia. kr. i refusion af udbytteskat efter det tidspunkt, hvor SKAT mod-
tog oplysninger udefra om den formodede svindel, og indtil udbetalingerne blev sat i bero.
Skatteministeriet har oplyst, at SKAT på baggrund af de oplysninger, der fremkom hen over
sommeren 2015, først den 6. august 2015 havde det nødvendige grundlag for at stoppe
udbetalingerne. Rigsrevisionen skal hertil anføre, at SKAT, da de modtog oplysninger ude-
fra om formodet svindel, var vidende om, at antallet af anmodninger og det samlede refu-
sionsbeløb var steget markant, og SKAT var samtidig vidende om, at de interne kontroller
var mangelfulde. Rigsrevisionen finder, at SKAT burde have undersøgt området nærmere,
inden de foretog yderligere udbetalinger af refusion.

## 2.3. Skatteministeriets tilsyn

50. Rigsrevisionen har undersøgt, om Skatteministeriet har ført et tilstrækkeligt tilsyn med
SKATs forvaltning af refusion af udbytteskat. Vi har lagt til grund, at Skatteministeriet som
led i sit almindelig tilsyn har det overordnede styrings- og tilsynsansvar for SKAT. Af "Mi-
nisterieinstruks for Skatteministeriet" fremgår bl.a. de opgaver, som Skatteministeriet vare-
tager på regnskabsområdet som overordnet myndighed for bl.a. SKAT. Det fremgår, at Skat-
teministeriet som led i sit almindelige tilsyn bl.a. foretager en overvågning af skatte- og af-
giftsindtægter. I den forbindelse fremgår det, at Skatteministeriet skal overvåge, om indtæg-
terne er rimelige.

Derudover har vi lagt til grund, at et tilfredsstillende tilsyn omfatter, at Skatteministeriet rea-
gerer på kritiske revisionsrapporter og forholder sig til øvrige informationer, der indikerer
problemer eller risici på et givent område. Det fremgår af ministerieinstruksen, at SKATs
forvaltning af udgifter og indtægter skal tilrettelægges ud fra hensyntagen til de konkrete
forhold, dvs. væsentlighed og risiko samt størrelsen og arten af de forskellige typer indtæg-
ter og udgifter. Det fremgår endvidere, at Skatteministeriet som overordnet myndighed er
ansvarlig for at sikre, at forvaltningen inden for Skatteministeriets koncern foretages på en
forsvarlig måde. Hvis Skatteministeriet har kendskab til, at et område er risikofyldt, bør mi-
nisteriet således sikre, at der er de fornødne resurser og kompetencer til et effektivt tilsyn,
indtil forholdene er rettet op. Endvidere har vi lagt til grund, at Skatteministeriet indhenter
viden om SKATs forvaltning i et omfang, så ministeriet kan varetage sit overordnede sty-
rings- og tilsynsansvar for SKAT.

Skatteministeriet har i sin koncernstyringsstrategi for 2014-2017 udpeget SKAT som en sty-
relse med behov for udvidet tilsyn og styring, bl.a. med begrundelse i, at der er mange iden-
tificerede risici, som kan få meget væsentlige konsekvenser, og samtidig en meget stor kom-
pleksitet i opgaveløsningen. Det fremgår ligeledes af Rigsrevisionens beretning til Statsre-
visorerne om Skatteministeriets økonomistyring, at Skatteministeriet – efter departementet
blev genetableret i 2013 – udpegede SKAT som et område med store risici, hvor der er be-
hov for et udvidet tilsyn.

### Skatteministeriets almindelige tilsyn

51. Skatteministeriet har oplyst, at ministeriet som led i sit almindelige tilsyn foretager en
løbende overvågning af skatte- og afgiftsindtægter, hvilket som nævnt også fremgår af mi-
nisterieinstruksen. Overvågningen tager bl.a. udgangspunkt i Skatteministeriets kvartals-
vise regnskabsgodkendelser af SKATs regnskab. Skatteministeriets kvartalsvise regnskabs-
godkendelser er baseret på SKATs godkendelser af egne kvartalsregnskaber, SKATs må-
nedlige regnskabsgodkendelser og informationer fra de månedlige indtægtslister, som Skat-
teministeriet månedligt udarbejder til Folketingets Skatteudvalg og Finansudvalg.

52. Rigsrevisionens undersøgelse viser, at hverken Skatteministeriets kvartalsvise regn-
skabsgodkendelser eller SKATs godkendelser af egne kvartalsregnskaber for § 38 har in-
deholdt informationer, der har bidraget til overvågningen af området for udbytteskat.

*Indtægtslisten udarbejdes én
gang om måneden til Folketin-
gets Skatteudvalg og Finans-
udvalg og er efterfølgende til-
gængelig på Skatteministeriets
hjemmeside.*

*Indtægtslisten indeholder regn-
skabsoplysninger om nettoind-
tægterne fra skatter og afgifter
for den pågældende måned.
Indtægtslisten indeholder end-
videre oplysning om indtæg-
terne hidtil i året og sammen-
ligner med det tilsvarende tids-
punkt året før.*

*SKATs månedlige regnskabsgodkendelser*

53. Skatteministeriet modtager månedligt regnskabsgodkendelser fra SKAT, som indeholder regnskabsmæssige forklaringer på udvalgte udsving i regnskabsposter, herunder fx udbytteskat. Det fremgår af Skatteministeriets virksomhedsinstruks for § 38, at SKATs ledelse i forbindelse med godkendelsen af SKATs månedlige regnskaber bl.a. skal vurdere, om indtægter og udgifter forekommer rimelige. For afvigelser, der undersøges i forbindelse med sandsynlighedskontrollen, skal forklaringerne dokumenteres eller vedlægges.

Rigsrevisionens undersøgelse viser, at Skatteministeriet via SKATs månedlige regnskabsgodkendelser bliver gjort opmærksom på, at udgifterne til refusion af udbytteskat er markant stigende. Fx blev der i maj 2015 udbetalt 4,2 mia. kr., hvilket er 2,8 mia. kr. mere end samme måned året før, svarende til en stigning på 200 %. I en bemærkning til regnskabsgodkendelsen for maj 2015 forklarer SKAT en del af stigningen med, at amerikanske pensionskasser foretager opkøb i danske selskaber.

Endvidere gør SKAT via regnskabsgodkendelsen for juni 2015 Skatteministeriet særskilt opmærksom på, at der er en stigende tendens i refusionerne af udbytteskat, og at der år-til-dato i juni 2015 er refunderet 6,6 mia. kr. mod 4,1 mia. kr. år-til-dato i juni 2014 og 1,7 mia. kr. år-til-dato i juni 2013. En del af stigningen forklares også i denne regnskabsgodkendelse med, at amerikanske pensionskasser foretager opkøb i danske selskaber.

Skatteministeriet spørger ikke ind til og beder ikke om dokumentation for denne forklaring fra SKAT, på trods af at den samme forklaring benyttes gentagne gange i 2014 og 2015 til forklaring af den stigende refusion af udbytteskat. Rigsrevisionens undersøgelse viser, at SKAT ikke har dokumentation for denne årsagsforklaring, som efterfølgende viser sig at være ukorrekt. Rigsrevisionen konstaterer således, at hverken SKAT eller Skatteministeriet – heller ikke kort før, den formodede svindel blev opdaget – fandt anledning til at undersøge, om forklaringen med amerikanske pensionskassers opkøb i danske selskaber kunne forklare den stigende tendens i refusion af udbytteskat.

54. Boks 5 viser uddrag af regnskabsgodkendelser for maj og juni 2015.

---

BOKS 5. EKSEMPLER PÅ OPLYSNINGER OM REFUSION AF UDBYTTESKAT I DE MÅNEDLIGE REGNSKABSGODKENDELSER

**Maj 2015**
Periodens refunderede udbytteskatter udgør 4,2 mia. kr., hvilket er en stigning på 2,8 mia. kr. i forhold til samme periode sidste år, hvor de refunderede udbytteskatter udgjorde 1,4 mia. kr. En del af stigningen kan henføres til, at flere amerikanske pensionskasser foretager opkøb i danske selskaber. Da disse ikke skal betale dansk skat, medfører disse opkøb store refusioner af udbytteskat.

**Juni 2015**
Der er – som for ordinære indtægter vedrørende udbytteskat – år-til-dato en stigende tendens vedrørende refusion af udbytteskat. Refunderede udbytteskatter udgjorde således 6,6 mia. kr. ultimo juni 2015 mod 4,1 mia. kr. ultimo juni 2014 og 1,7 mia. kr. ultimo juni 2013. En del af stigningen kan henføres til, at flere amerikanske pensionskasser foretager opkøb i danske selskaber. Da disse ikke skal betale dansk skat, medfører disse opkøb store refusioner af udbytteskat.

Kilde:  SKATs regnskabsgodkendelser for maj og juni 2015.

---

SKAT_MDL_001_0075146

55. Skatteministeriet har efterfølgende oplyst, at stigningen i refusionen i 2015 skal ses i sammenhæng med, at indtægterne for udbytteskat i perioden april-juni 2015 er fordoblet i forhold til samme periode året før. Dette fremgår også af regnskabsgodkendelser, fx for april 2015, hvor indbetalingerne udgjorde 10,4 mia. kr., hvilket er 5,8 mia. kr. mere end samme måned året før. Rigsrevisionen konstaterer, at indtægterne fra udbytteskat i perioden 1. januar 2010 - 5. august 2015 er steget fra 6,4 mia. kr. til 19 mia. kr., hvilket svarer til en stigning på ca. 200 %. Til sammenligning er refusionerne af udbytteskat steget fra 0,68 mia. kr. i 2010 til 9,3 mia. kr. i 2015 (1. januar 2015 - 5. august 2015), svarende til en stigning på ca. 1.300 %, jf. afsnit 2.2.

56. Rigsrevisionen finder, at Skatteministeriet på baggrund af de regnskabsgodkendelser fra 2014 og 2015, hvori der peges på den stigende refusion af udbytteskat, burde have set nærmere på udviklingen i refusion af udbytteskat. Rigsrevisionen konstaterer, at Skatteministeriet ikke har spurgt ind til eller bedt om dokumentation for forklaringen om amerikanske pensionskassers opkøb i danske selskaber fra SKAT, på trods af at forklaringen går igen gentagne gange.

57. Skatteministeriet har anført, at kritikken forekommer uproportionel, idet ministeriet har modtaget godkendte regnskaber fra SKAT uden anmærkninger og med forklaring på afvigelser, hvorfor regnskabsgodkendelserne ikke efterlader indtryk af, at der er problemer. Rigsrevisionen finder det utilfredsstillende, at SKAT har afgivet en ukorrekt og udokumenteret forklaring på stigningen i refusion af udbytteskat. Rigsrevisionen skal dog hertil anføre, at de månedlige regnskabsgodkendelser fra SKAT tilgår Skatteministeriet som led i ministeriets tilsyn, og at ministeriet skal godkende regnskabet på baggrund af de underliggende regnskabsgodkendelser og eventuelle bemærkninger. Det er på den baggrund Rigsrevisionens vurdering, at Skatteministeriet burde have bedt om dokumentation for forklaringen eller spurgt ind til den – særligt i lyset af at samme forklaring går igen gentagne gange, hvor der konstateres en stigning i refusionen af udbytteskat.

*Skatteministeriets månedlige indtægtslister til Folketingets Skatteudvalg og Finansudvalg*
58. Skatteministeriet udarbejder månedlige indtægtslister til Folketingets Skatteudvalg og Finansudvalg, bl.a. på baggrund af SKATs månedlige regnskabsgodkendelser. Det fremgår af Skatteministeriets "Beskrivelse af arbejdsgangen i departementet for opgaver beskrevet i SKATs virksomhedsinstruks for § 38", at der udarbejdes kommentarer på indtægtslisten, i det omfang der er særlige forhold, der tilsiger det, herunder fra SKATs månedlige regnskabsgodkendelser.

Skatteministeriet har oplyst, at forretningsgange for godkendelse af indtægtslisten består af et "visuelt tjek" i 4 kontrolled, før indtægtslisten bliver sendt til Folketingets Skatteudvalg og Finansudvalg. Først godkendes tallene for udbytteskat af den ansvarlige for det relevante indtægtsområde. Herefter bliver den samlede indtægtsliste godkendt af chefrådgiveren, af afdelingschefen og til sidst af departementschefen.

Rigsrevisionens undersøgelse viser, at Skatteministeriet ikke har haft retningslinjer for, hvilken kontrol der ligger til grund for godkendelsen af indtægtslisterne. Skatteministeriet har oplyst, at kontrollen består af et "visuelt tjek" af, om udviklingen i indtægtslistens poster synes plausibel. Udviklingen vurderes ved at sammenligne månedens nettoindtægt fra udbytteskat med nettoindtægten for samme måned året før og de samlede nettoindtægter år-til-dato sammenholdt med det foregående år. Skatteministeriet har oplyst, at det er ministeriets vurdering, at det ikke i praksis via den løbende overvågning af statens indtægter generelt vil være muligt at identificere stigende svindel.

59. Rigsrevisionen har med udgangspunkt i tallene fra Skatteministeriets månedlige ind-
tægtslister sammenlignet de månedlige nettoindtægter fra udbytteskat i perioden januar
2012 - december 2014, jf. figur 7, og de samlede nettoindtægter år-til-dato for 2014 sam-
menholdt med 2013, jf. figur 8.



Figur 7. Månedlige nettoindtægter fra udbytteskat i perioden januar 2012 - december 2014
(1.000 kr.)

Normalt udsving på grund af modregning af selskabsskat i november

Første gang, at nettoindtægten er negativ (bortset fra i november)

Kilde:  Rigsrevisionen på baggrund af Skatteministeriets månedlige indtægtslister til Folketingets Skatteudvalg og Finansudvalg.

Det fremgår af figur 7, at der var store udsving i nettoindtægten i løbet af året, og at der i
november 2012, 2013 og 2014 var en negativ nettoindtægt. Skatteministeriet har oplyst, at
dette skyldes, at der modregnes selskabsskat hvert år i november. Det fremgår også af figu-
ren, at det i juni 2014 var første gang, at der var en direkte negativ nettoindtægt fra udbyt-
teskat, og at dette fortsatte i de 2 efterfølgende måneder.



Figur 8. Nettoindtægter år-til-dato for 2013 og 2014 (1.000 kr.)

Kilde: Rigsrevisionen på baggrund af Skatteministeriets månedlige indtægtslister til Folketingets Skatteudvalg og Finansudvalg.

Det fremgår af figur 8, at den samlede nettoindtægt fra udbytteskat i juni 2014 var lavere end samme måned i 2013, og at denne udvikling fortsatte i de resterende 6 måneder af 2014. Den samlede nettoindtægt i 2014 var således 2,3 mia. kr. lavere end i 2013. Rigsrevisionen konstaterer, at den samlede nettoindtægt i 2014 var lavere end i 2013, på trods af at indtægterne fra udbytteskat steg fra 11,7 mia. kr. i 2013 til 13,2 mia. kr. i 2014.

60. Rigsrevisionen konstaterer, at Skatteministeriet som led i ministeriets interne godkendelse af indtægtslisterne ikke har bedt om en nærmere undersøgelse, selv om der i 2014 i flere måneder var en direkte negativ nettoindtægt fra udbytteskat. Dertil kommer, at der var en negativ udvikling i nettoindtægten fra udbytteskat i 2014 sammenlignet med 2013, hvor der i 7 måneder i træk var lavere nettoindtægter, og det samlede nettoresultat for 2014 var 2,3 mia. kr. lavere end i 2013, på trods af at indtægterne fra udbytteskat var steget i samme periode. Rigsrevisionen er opmærksom på, at en negativ nettoindtægt i én eller flere måneder ikke i sig selv er tegn på svindel, men finder det naturligt, at Skatteministeriet i sit tilsyn beder om forklaring på en så markant negativ udvikling.

61. Rigsrevisionens undersøgelse viser, at Skatteministeriet i undersøgelsesperioden 6 gange har haft en bemærkning til de månedlige indtægtslister. Det drejer sig om 5 gange i 2010 og én gang i 2013, dvs. én gang i den periode, hvor svindlen formodes at have fundet sted. I bemærkningen fra 2013 fremgår det, at der i provenuet fra udbytteskat for maj 2013 indgår et beløb på 1,3 mia. kr. fra ca. 4.500 modtagne, men ikke-indtægtsførte angivelser.

62. Rigsrevisionen konstaterer, at Skatteministeriet alene har foretaget et "visuelt tjek" af, om udviklingen i indtægtslistens poster synes plausibel. Skatteministeriet har oplyst, at der ved bemærkninger i regnskabsgodkendelsen, eller hvis en udvikling skønnes ikke at være plausibel, efterspørges yderligere information hos SKAT. Rigsrevisionen finder, at Skatteministeriet i forbindelse med godkendelsen af de månedlige indtægtslister burde have efterspurgt helt grundlæggende analyser, der kunne forklare udviklingen i nettoindtægten. Sådanne analyser ville klart have peget på behovet for en grundig undersøgelse af udviklingen i refusion af udbytteskat, jf. afsnit 2.2.

*Early warnings*
*Skatteministeriet, SKAT og Skatteankestyrelsen har et "early warning-institut", hvor der er fastlagt en klar procedure for, hvordan der internt kan advares om huller i lovgivningen e.l., som medfører en trussel mod statskassen. Early warnings bruges fx i tilfælde, hvor der er tale om organiseret misbrug af skattelovgivningen, hvor skatteregler bruges i strid med lovgivers intention, eller hvor der træffes afgørelser i strid med praksis eller regelgrundlaget med betydning for et større antal sager. "Early warning-instituttet" blev indført med det formål at sikre en klar ansvarsfordeling i forhold til eventuelle advarsler for at sikre, at alle advarsler blev behandlet og hurtigt besvaret.*

Rigsrevisionen konstaterer, at Skatteministeriet således ikke i forbindelse med godkendelsen af de månedlige indtægtslister har vurderet, at der var særlige forhold i udviklingen af refusion af udbytteskat, som skulle medføre en bemærkning til indtægtslisten. Rigsrevisionen konstaterer desuden, at selv om det fremgår i 3 af SKATs månedlige regnskabsgodkendelser fra 2014, at refusionerne af udbytteskat var stigende, har Skatteministeriet heller ikke på den baggrund haft bemærkninger til indtægtslisterne i 2014 eller efterspurgt analyser heraf.

**Indikationer på problemer med refusion af udbytteskat**
63. Rigsrevisionen har undersøgt, om Skatteministeriet har modtaget andre indikationer på problemer med refusion af udbytteskat, herunder kritiske revisionsrapporter, early warnings og andre typer skriftlige henvendelser. Vi har i den forbindelse undersøgt, om Skatteministeriet som led i sit tilsyn har reageret på sådanne indikationer.

64. Rigsrevisionens undersøgelse viser, at Skatteministeriet i undersøgelsesperioden har modtaget adskillige indikationer på problemer i forbindelse med refusion af udbytteskat. Figur 9 viser de skriftlige indikationer, som Skatteministeriet har modtaget i perioden 1. januar 2010 - 5. august 2015.



Figur 9. Indikationer til Skatteministeriet på problemer med refusion af udbytteskat i perioden 1. januar 2010 - 5. august 2015

**2010**

1. indikation
SIR's revisionsrapport

**2011**

2. indikation
Medarbejder advarer om risiko
for uretmæssig refusion

3. indikation
Medarbejder advarer igen om risiko
for uretmæssig refusion og lang
tidshorisont i OECD-projektet TRACE

**2012**

÷34
mio. kr.

**2013**

4. indikation
SIR's revisionsrapport

5. indikation
Rigsrevisionens revisionsberetning

6. indikation
Opfølgningsprotokoller fra SKAT

÷608
mio. kr.

**2014**

7. indikation
SIR's rapport

÷3,1
mia. kr.

**2015**

8. indikation
Early warning

÷5,9
mia. kr.

9. indikation
Oplysninger udefra om formodet svindel

÷9,1
mia. kr.

**6. august 2015**
SKAT sætter
udbetalingerne i bero

Kilde: Rigsrevisionen.

Det fremgår af figur 9, at Skatteministeriet i perioden 1. januar 2010 - 5. august 2015 har modtaget flere skriftlige indikationer på problemer i forbindelse med refusion af udbytteskat. Figuren viser endvidere den indtil videre opgjorte formodede svindel, som er akkumuleret i perioden 2012 - 5. august 2015.

65. Skatteministeriet har anført, at figur 9 er misvisende, fordi den giver indtryk af, at videns-niveauet i ministeriet var stigende. Skatteministeriet har videre anført, at indikationer på risi-ko for uretmæssig refusion ikke er ensbetydende med, at der har været indikationer på risi-ko for konkret og systematisk svindel. Skatteministeriet finder, at der er tale om en lang ræk-ke informationer fra forskellige kilder, hvis sammenhæng ikke var umiddelbart åbenlys på de pågældende tidspunkter.

Rigsrevisionen skal hertil bemærke, at det er korrekt, at figur 9 illustrerer, at Skatteministeriet har modtaget flere indikationer på problemer med refusion af udbytteskat i perioden 1. ja-nuar 2010 - 5. august 2015, og at Rigsrevisionen netop finder det af afgørende betydning, at ministeriet reagerer på viden fra flere forskellige kilder, der akkumuleres over tid, og sam-menholder denne viden med de oplysninger, som ministeriet har via sit almindelige tilsyn. Rigsrevisionen er desuden enig i, at de enkelte indikationer ikke nødvendigvis peger på kon-kret og systematisk svindel, men at de indikerer problemer med refusion af udbytteskat.

*1. indikation – SIR's revisionsrapport fra 2010*
66. SIR afgav i maj 2010 en revisionsrapport vedrørende refusion af udbytteskat. Det frem-går af revisionsrapporten, at det var den daværende departementschef i Skatteministeriet, der ultimo oktober 2009 havde bedt SIR om at foretage en revisionsmæssig undersøgelse af refusionsordningen. Baggrunden var, at der i perioden 2006-2008 var registreret et me-get lavt eller direkte negativt nettoprovenu for udbytteskat vedrørende udenlandske aktionæ-rer, dvs. der var refunderet næsten ligeså meget eller mere udbytteskat til udenlandske ak-tionærer, som der samlet var indeholdt for disse. Det fremgår af forelæggelsen for departe-mentschefen fra oktober 2009, at det ikke kan udelukkes, at der refunderes for meget ud-bytteskat. Det fremgår ligeledes, at SKAT ikke har været i stand til at kontrollere, om skat-teydere, der ansøger om refusion, ikke allerede én gang har modtaget refusion, dvs. får re-funderet indeholdt udbytteskat flere gange. Endelig fremgår det, at der i tidligere rapporter fra Told- og Skatteregion København i 2000 og fra SIR i 2005 samt i et notat fra en intern arbejdsgruppe i SKAT i 2007 er peget på problemer vedrørende refusion af udbytteskat.

SIR behandler i revisionsrapporten fra 2010 ikke direkte problemstillingen vedrørende det lave eller direkte negative nettoprovenu og forholder sig ikke til, om det kan være et udtryk for svindel eller anden form for uretmæssig refusion. I stedet fremgår det af rapporten, at der er uenighed om, hvorvidt SKATs datagrundlag kan sikre en troværdig opgørelse af net-toprovenu for udbytteskat vedrørende udenlandske aktionærer.

SKAT_MDL_001_0075152

SIR peger i revisionsrapporten fra 2010 på en række mangler og problemer i kontrollen med refusion af udbytteskat. Boks 6 viser uddrag af rapporten.

---

**BOKS 6. BUDSKABER I SIR'S REVISIONSRAPPORT FRA 2010**

SIR peger i revisionsrapporten fra 2010 bl.a. på:

- at SKAT ikke kontrollerer, om den udbytteskat, som selskaberne indbetaler, stemmer overens med den udbytteskat, som udbyttemodtager søger refusion for
- at SKAT kan refundere udbytteskat, før skatten er indbetalt/indberettet til SKAT
- at SKAT alene kontrollerer, om blanketten er korrekt udfyldt, før der udbetales refusion
- at SKAT ikke kontrollerer, om der foreligger et reelt ejerskab af de aktier, der anmodes om refusion på baggrund af
- at SKAT ikke kontrollerer, om aktionæren reelt er skattepligtig i et land med en dobbeltbeskatningsoverenskomst
- at ansvaret for SKATs proces til håndtering af udbyttebeskatning bliver delt af flere procesejere, og at der ikke er defineret et overordnet ansvar for hele processen
- at der ikke er fulgt op på 3 tidligere undersøgelser fra 2000, 2005 og 2007, som har påpeget problemstillinger vedrørende refusion af udbytteskat.

Kilde:  SIR's revisionsrapport fra 2010.

---

67. Problemstillingen med, at SKAT refunderede udbytteskat, før skatten var indberettet/indbetalt til SKAT, blev på initiativ af Skatteministeriet løst ved, at en lovændring fra 2009 blev udmøntet i 2 bekendtgørelser gældende fra henholdsvis 2012 og 2013. Ændringen indebar bl.a., at fristerne for angivelse og indberetning af udbytte blev harmoniseret.

Ovennævnte lovændring med bekendtgørelser imødekom imidlertid fortsat ikke en række af de udfordringer, som SKAT havde i forhold til refusion af udbytteskat, herunder med kontrol af refusionsanmodninger for aktier placeret i omnibusdepoter. SIR har i sin undersøgelse fra 2015 på baggrund af en stikprøve vurderet, at danske aktier, der er ejet af udenlandske aktionærer, i langt overvejende grad er placeret i omnibusdepoter, dvs. samledepoter. I disse tilfælde har SKAT ikke oplysninger om den enkelte ejer af aktierne, men kun oplysninger om ejeren af depotet, der fremstår som udbyttemodtager. Lovændringen mv. imødekom således ikke udfordringen med kontrol af refusionsanmodninger for hovedparten af de udenlandsk ejede aktier.

Skatteministeriet har oplyst, at ministeriet var opmærksom på denne problemstilling, hvilket bl.a. var årsagen til, at ministeriet i 2010 besluttede at deltage i OECD-projektet TRACE. Rigsrevisionens undersøgelse viser, at beslutningen om deltagelsen i projektet blev forelagt departementschefen i februar 2010. Det fremgår af forelæggelsen, at Danmark havde særlig stor interesse i deltagelse, da den danske ordning for refusion af udbytteskat ikke lod til at fungere tilfredsstillende.

68. Rigsrevisionen konstaterer, at Skatteministeriets løsning på SKATs problemer i forhold til kontrol af ejerforholdet for de udenlandsk ejede danske aktier i omnibusdepoter var deltagelse i et projekt, der først på langt sigt eventuelt ville kunne forbedre kontrollen. På trods heraf tog Skatteministeriet ikke initiativ til at sikre, at SKAT iværksatte kompenserende kontroller i TRACE-projektperioden. Derudover konstaterer Rigsrevisionen, at en eventuel TRACE-løsning kun ville løse problemet vedrørende kontrol med refusion af udbytteskat for udenlandsk ejede danske aktier placeret i banker, der ville vælge at implementere TRACE. Skatteministeriet har oplyst, at banker i de lande, der ikke ville indføre TRACE, kunne tilslutte sig ordningen. Det afgørende for ordningen var således, at kildelandet indførte ordningen, at bankerne ville implementere den, og at aktionærerne ville benytte sig af den. Rigsrevisionen finder på den baggrund, at TRACE ikke i sig selv ville være en tilstrækkelig løsning på problemet med SKATs utilstrækkelige kontrol med refusion af udbytteskat.

69. Rigsrevisionen konstaterer, at SIR's revisionsrapport fra 2010, som var udarbejdet på departementschefens foranledning, klart advarede om problemer med refusion af udbytteskat. Rigsrevisionen konstaterer endvidere, at SKAT og Skatteministeriet hverken som opfølgning på revisionsrapporten eller efterfølgende har undersøgt, om det lave eller negative nettoprovenu i perioden 2006-2008 kunne skyldes svindel eller anden form for uretmæssig refusion.

*2. indikation – medarbejderhenvendelse i oktober 2011*
70. Skatteministeriet modtog i oktober 2011 en skriftlig henvendelse fra en centralt placeret medarbejder i SKAT, der havde et indgående kendskab til arbejdet med udbytteskat og til OECD-projektet TRACE. Medarbejderen pegede på alvorlige problemer i forbindelse med kontrollen med refusion af udbytteskat. Medarbejderen påpegede bl.a., at der var risiko for uretmæssig refusion af udbytteskat, da SKAT ikke havde mulighed for at kontrollere ejerforholdet for en del af de udenlandsk ejede danske aktier. Medarbejderen pegede desuden på, at der var risiko for refusion af udbytteskat for samme udlodning flere gange, da SKAT ikke kontrollerede, om en aktionær anmodede om refusion via blanketordningen, samtidig med at depotbanken anmodede om refusion via bankordningen.

Skatteministeriet besvarede henvendelsen med henvisning til, at der blev arbejdet intensivt på at finde en løsning i OECD-regi.

*3. indikation – medarbejderhenvendelse i november 2011*
71. Samme medarbejder rettede herefter i november 2011 fornyet henvendelse til Skatteministeriet og udtrykte endnu engang bekymring, idet TRACE-projektet ifølge medarbejderen havde en meget lang tidshorisont. Medarbejderen understregede, at Skatteministeriet dermed ikke fulgte op på den kritiske revisionsrapport fra 2010 (1. indikation). Medarbejderen gav over for Skatteministeriet udtryk for, at refusionen af udbytteskat blev foretaget i blinde. Skatteministeriet besvarede ikke denne henvendelse.

72. Rigsrevisionen konstaterer, at Skatteministeriet i 2011 fra en centralt placeret medarbejder blev gjort opmærksom på, at anmodninger om refusion af udbytteskat var stigende, og at der var store problemer med kontrollerne på området. Således blev refusionerne af udbytteskat ifølge medarbejderen udbetalt i blinde. Endvidere bemærker Rigsrevisionen, at Skatteministeriet blev gjort opmærksom på, at tidshorisonten for en eventuel løsning i OECD-regi var lang. Rigsrevisionen finder, at henvendelsen havde en sådan karakter, at Skatteministeriet burde have taget den alvorligt.

73. Skatteministeriet har oplyst, at de 2 henvendelser fra medarbejderen ikke har haft en sådan karakter og et sådant indhold, at den kan anses som en indikation på svindel med refusion af udbytteskat. Rigsrevisionen er enig i, at henvendelserne fra medarbejderen ikke i sig selv er en indikation på svindel med udbytteskat, men at de 2 henvendelser indikerer problemer med refusion af udbytteskat. Rigsrevisionen skal hertil bemærke, at medarbejderen påpegede, at det er vanskeligt at kontrollere for svig i forbindelse med refusion af udbytteskat.

*4. indikation – SIR's revisionsrapport fra maj 2013*

74. SIR afgav som tidligere nævnt en revisionsrapport vedrørende refusion af udbytteskat i 2013. SIR's vurdering var, at SKATs kontrol af refusionsanmodninger via bankordningen ikke var tilstrækkelig, og at det burde beskrives, hvad der skulle kontrolleres, inden en anmodning blev imødekommet, ligesom grundlaget for refusion i højere grad burde kontrolleres. SIR anbefalede endvidere, at SKAT sikrer sig bedre mod uretmæssig refusion af udbytteskat.

75. Skatteministeriets departement modtog den 31. maj 2013 revisionsrapporten fra SIR. Skatteministeriet har oplyst, at revisionsrapporten på grund af en beklagelig ekspeditionsfejl i Skatteministeriet ikke blev behandlet af ministeriet. Rigsrevisionen finder, at der bør være etableret en arbejdsgang i Skatteministeriet, der sikrer, at en kritisk revisionsrapport bliver behandlet i ministeriet.

76. SIR's revisionsrapport fra 2013 vedrører først og fremmest refusion af udbytteskat via bankordningen. Revisionsrapporten pegede dog på et generelt behov for, at SKAT sikrer sig bedre mod uretmæssig refusion af udbytteskat. Derudover var revisionsrapportens hovedkonklusion, at det samlet var SIR's vurdering, at forvaltningen på udbytte- og royaltyområdet ikke har fungeret helt tilfredsstillende.

Revisionsrapporten fra 2013 følger ligeledes op på resultaterne i revisionsrapporten fra 2010 vedrørende den manglende kontrol i forbindelse med refusion via blanketordningen. Det fremgår endvidere af rapporten, at TRACE-projektet ikke har løst problemerne vedrørende kontrol af ejerforholdet af udenlandsk ejede danske aktier.

*5. indikation – Rigsrevisionens revisionsberetning fra august 2013*

77. Rigsrevisionen sendte i august 2013 en revisionsberetning om Skatteministeriets regnskaber for 2012 til Skatteministeriet, som ministeriet tog til efterretning. Der henvises heri til SIR's revisionsrapport fra maj 2013. Rigsrevisionen konstaterer, at Skatteministeriet herigennem igen blev gjort bekendt med SIR's revisionsrapport fra 2013.

*6. indikation – opfølgningsprotokoller fra SKAT*

78. Skatteministeriet har oplyst, at ministeriet siden 2013 har modtaget SKATs kvartalsvise opfølgningsprotokoller fra SKATs direktion vedrørende SKATs opfølgning på SIR's revisionsrapport fra 2013. Skatteministeriet har herigennem kunnet følge SKATs arbejde med opfølgning på bemærkningen i revisionsrapporten fra 2013 om bedre sikring mod uretmæssig refusion af udbytteskat. Rigsrevisionen konstaterer, at SKATs opfølgning på revisionsrapporten fra 2013 i opfølgningsprotokollerne fra 4. kvartal 2014 angives som arbejdet i TRACE, der netop skulle følge op på problemstillinger vedrørende blanketordningen.

Rigsrevisionens undersøgelse viser, at TRACE-projektet blev afsluttet i februar 2013, men at projektet ikke er implementeret i Danmark eller i andre lande, jf. afsnit. 2.2. Undersøgelsen viser desuden, at departementet har deltaget i arbejdet med TRACE i OECD-regi gennem deltagelse i en arbejdsgruppe.

Skatteministeriet har således ikke reageret på, at SKAT reelt ikke har arbejdet med at forbedre kontrollen med refusion af udbytteskat, på trods af at ministeriet deltog i arbejdsgruppen for TRACE og dermed var vidende om, at TRACE-projektet ikke havde løst de konstaterede problemer med refusion af udbytteskat.

*7. indikation – SIR's rapport fra 2014*
79. SIR afgav i 2014 rapporten "SKATs opfølgning på SIR's anbefalinger og identificerede ikke-korrigerede fejl fra tidligere år". Rapporten indeholder en generel status over SKATs opfølgning på SIR's anbefalinger, og det fremgår af rapporten, at 57 ud af i alt 107 anbefalinger fra SIR er uafsluttede. SIR anbefaler i rapporten, at SKAT opprioriterer behandlingen af anbefalinger og får fokus på identificerede ikke-korrigerede fejl. Det fremgår af SIR's undersøgelse fra 2015, at anbefalingen om bedre sikring mod uretmæssig refusion af udbytteskat er blandt de 57 uafsluttede anbefalinger. Rigsrevisionen konstaterer, at det ikke er et enkeltstående tilfælde, at Skatteministeriet ikke har fulgt op på SIR's anbefalinger. Skatteministeriet har oplyst, at ministeriet efterfølgende har etableret en fast procedure for opfølgning på rapporter fra SIR.

Skatteministeriet har videre oplyst, at ministeriet i sommeren 2014 igangsatte en omfattende analyse af afdelingen Betaling og Regnskab i SKAT. Baggrunden var ifølge SKAT, at der forelå en række indikationer fra Rigsrevisionen, SIR og andre på, at risikoen for utilsigtede hændelser var særlig stor på dette område. Ud af analysen kom bl.a. en anbefaling om generelt at styrke kontrolmiljøet markant og at etablere en central regnskabsfunktion samt en række andre anbefalinger om forbedringer af kvalitet og organisering af regnskabet for § 38. Rigsrevisionen finder initiativerne positive, men konstaterer samtidig, at initiativerne har et langsigtet perspektiv og derfor ikke på nuværende tidspunkt har løst de problemer, som SKAT har i forhold til refusion af udbytteskat.

*8. indikation – early warning om risiko for uretmæssig refusion*
80. Skatteministeriet har modtaget en early warning om risiko for uretmæssig refusion af udbytteskat i forbindelse med aktieudlån den 7. juli 2015. Den mulige uretmæssige refusion af udbytteskat i forbindelse med aktieudlån vedrører en anden type af uretmæssig refusion og formodes at være foregået uafhængigt af den formodede svindel via blanketordningen. Skatteministeriet har anført, at den modtagne early warning ikke omhandler svindel med refusion af udbytteskat. Skatteministeriet har endvidere oplyst, at ministeriet i overensstemmelse med retningslinjerne har udarbejdet en vurdering af den modtagne early warning.

Rigsrevisionen er enig i, at den modtagne early warning ikke nødvendigvis omhandler svindel med refusion af udbytteskat. Rigsrevisionen konstaterer dog, at Skatteministeriet med denne early warning igen er blevet gjort opmærksom på mulige problemer vedrørende refusion af udbytteskat og behovet for at undersøge udbytteområdet nærmere, herunder udviklingen i indtægterne fra og refusionen af udbytteskat.

*9. indikation – oplysninger udefra om formodet svindel*
81. SKAT og Skatteministeriet modtog i sommeren 2015 oplysninger udefra om formodet svindel med refusion af udbytteskat. SKAT udbetalte i perioden, efter de modtog oplysninger, og indtil udbetalingerne blev stillet i bero, 3,2 mia. kr. i refusion af udbytteskat. SKAT stillede udbetalingerne i bero den 6. august 2015.

**Resultater**
82. Rigsrevisionens undersøgelse viser, at Skatteministeriets tilsyn med refusion af udbytteskat har været særdeles mangelfuldt, og at der ikke har været ledelsesmæssigt fokus på området.

Skatteministeriet har ført et fragmenteret tilsyn uden at sammenholde oplysninger fra sit almindelige tilsyn med de indikationer på problemer med refusion af udbytteskat, som ministeriet har modtaget. Hvis Skatteministeriet havde ført et mere proaktivt tilsyn og sammenholdt sine tilgængelige oplysninger, ville ministeriet være blevet opmærksom på behovet for en nærmere undersøgelse af området. Undersøgelsen viser, at helt simple analyser af udviklingen i refusion af udbytteskat ville have peget på problemer på området.

Skatteministeriet har ikke undersøgt stigningen i refusion af udbytteskat nærmere, selv om ministeriet via regnskabsgodkendelserne fra SKAT fx blev gjort bekendt med, at der i maj 2015 blev udbetalt 4,2 mia. kr., hvilket er 2,8 mia. kr. mere end samme måned året før, svarende til en stigning på 200 %. Endvidere gjorde SKAT via regnskabsgodkendelsen for juni 2015 Skatteministeriet opmærksom på, at der var en stigende tendens i refusionerne af udbytteskat, og at der år-til-dato i juni 2015 var refunderet 6,6 mia. kr. mod 4,1 mia. kr. år-til-dato i juni 2014 og 1,7 mia. kr. år-til-dato i juni 2013.

Rigsrevisionen konstaterer desuden på baggrund af indtægtslisterne, at der var en negativ udvikling i nettoindtægten fra udbytteskat i 2014, hvor der i 7 måneder i træk var lavere nettoindtægter sammenlignet med de samme måneder i 2013. Dertil kommer, at den samlede nettoindtægt i 2014 var 2,3 mia. kr. lavere end i 2013, på trods af at indtægterne fra udbytteskat var steget i samme periode. Endvidere konstaterer Rigsrevisionen, at nettoindtægten fra udbytteskat i 2014 for første gang – bortset fra i forbindelse med den årlige modregning af selskabsskat – var direkte negativ og det i en række på hinanden følgende måneder. På trods heraf fandt Skatteministeriet ikke anledning til at undersøge denne udvikling nærmere i forbindelse med ministeriets godkendelse af de månedlige indtægtslister.

Skatteministeriet har derudover ikke forholdt sig til og reageret på flere indikationer på problemer med refusion af udbytteskat. Skatteministeriet har i undersøgelsesperioden modtaget indikationer i form af diverse rapporter om udbytteskat fra SIR, henvendelser fra en medarbejder og en early warning om risiko for uretmæssig refusion af udbytteskat i forbindelse med aktieudlån. Der er ikke noget i Rigsrevisionens undersøgelse, der peger på, at Skatteministeriet uden oplysninger udefra om formodet svindel ville have reageret.

Rigsrevisionen, den 17. februar 2016

Lone Strøm

/Peder Juhl Madsen

SKAT_MDL_001_0075157

## Bilag 1. Statsrevisorernes anmodning

Undersøgelsen er igangsat på baggrund af en anmodning fra Statsrevisorerne.

Statsrevisorerne bad om, at undersøgelsen skulle afdække nedenstående forhold. Det er desuden angivet, hvor i beretningen punkterne er behandlet.

| Statsrevisorerne har bedt Rigsrevisionen om | Her behandles punkterne |
| --- | --- |
| At gennemgå resultatet af Skatteministeriets Interne Revisions undersøgelse af kontrolsvigtet i forbindelse med refusion af udbytteskat, herunder de væsentligste årsager til kontrolsvigtet. | Udvalgte resultater fra Skatteministeriets Interne Revisions undersøgelse behandles i afsnit 2.2, men indgår også som baggrundsinformation og kilde i afsnit 2.1 og 2.3. |
| At undersøge Skatteministeriets departements tilsyn med SKATs forvaltning af refusion af udbytteskat siden 2010. | Skatteministeriets tilsyn behandles i afsnit 2.3. |
| At vurdere den ledelsesmæssige opfølgning i SKAT og i Skatteministeriet på bemærkninger og anbefalinger vedrørende refusion af udbytteskat fra Skatteministeriets Interne Revision og Rigsrevisionen siden 2010. | Den ledelsesmæssige opfølgning i SKAT og Skatteministeriet behandles i henholdsvis afsnit 2.2 og 2.3. |
| At vurdere de aktuelle forretningsgange og kontroller i SKAT ved refusion af udbytteskat, herunder vurdere om datagrundlag og systemunderstøttelse har været tilstrækkelige til at kontrollere refusionsanmodninger fra udlandet. I den forbindelse anmodes også om en undersøgelse af, om SKAT har anvendt resultatløn eller lignende bonusordninger for at få ekspederet et stort antal refusionssager. | SKATs forretningsgange og kontroller, herunder datagrundlag og systemunderstøttelse, i forbindelse med refusion af udbytteskat behandles i afsnit 2.2.<br><br>SKATs anvendelse af resultatløn eller lignende bonusordninger behandles i afsnit 2.2. |
| At redegøre for, hvordan SKAT har opgjort, at der er svindlet for ca. 6,2 mia. kr.<br>SKAT har efter Statsrevisorernes anmodning om en undersøgelse anmeldt formodet svindel for yderligere ca. 2,9 mia. kr. | SKATs opgørelse af den formodede svindel for ca. 6,2 mia. kr. og den efterfølgende anmeldelse af yderligere ca. 2,9 mia. kr. behandles i afsnit 2.1. |

SKAT_MDL_001_0075158

Bilag 2. Metodisk tilgang

Rigsrevisionens undersøgelse er bl.a. baseret på en gennemgang af Skatteministeriets Interne Revisions (SIR) undersøgelse af SKATs administration af udbytteskat og refusion af udbytteskat fra september 2015. Undersøgelsen blev bestilt af Skatteministeriet. SIR gør i rapporten opmærksom på, at undersøgelsen ikke er revision i overensstemmelse med de internationale principper og standarder for offentlig revision, da SIR bl.a. ikke har udført review af de anvendte regnskabstal og oplysninger fra SKAT. Undersøgelsen er alene udarbejdet med det formål at understøtte skatteministeren i at vurdere SKATs administration af udbytteskat og refusion heraf med henblik på at orientere Folketingets Skatteudvalg herom. Vi har baseret vores undersøgelse på de opgørelser, som fremgår af SIR's undersøgelse. Vi har dog bedt Skatteministeriet verificere de anvendte opgørelser i forbindelse med høringen.

**Møder**
Vi har holdt møder med Skatteministeriet, SKAT og SØIK. Formålet med møderne har været at få supplerende forklaringer til det materiale, vi har modtaget, og at få en dybere forståelse for dele af området, fx opgørelsen af den formodede svindel.

**Væsentlige dokumenter**
Vi har gennemgået en række dokumenter, herunder:

- SIR's undersøgelse fra 2015 af SKATs administration af udbytteskat og refusion af udbytteskat
- SIR's revisionsrapporter fra 2010 og 2013
- Skatteministeriets månedlige indtægtslister
- SKATs månedlige regnskabsgodkendelser
- referater og indstillinger om SKATs og Skatteministeriets opfølgning på rapporter fra SIR og Rigsrevisionen
- resultatlønskontrakter for SKATs direktion
- resultater fra Rigsrevisionens løbende årsrevision og it-revision vedrørende udbytteskat for regnskabsåret 2015
- diverse notater/redegørelser udarbejdet af SKAT eller Skatteministeriet på Rigsrevisionens forespørgsel
- materiale fra kvartalsmøder
- spørgsmål fra Folketinget
- orientering af Folketingets Skatteudvalg
- øvrigt materiale fra SIR.

**Analyser af udviklingen i refusion af udbytteskat**
I afsnit 2.2 indgår analyser af udviklingen i refusion af udbytteskat i perioden 1. januar 2010 - 5. august 2015 (figur 3-6). Skatteministeriet har anført, at det giver et misvisende billede udelukkende at se på udviklingen i udbytteskat i perioden 2010-2015. Skatteministeriet har oplyst, at hvis man ser på udviklingen over en længere periode, er udviklingen ikke markant anderledes end de historiske udsving. Rigsrevisionen skal hertil bemærke, at undersøgelsesperioden er fastsat på baggrund af Statsrevisorernes anmodning, og at periodeafgrænsningen i analyserne i øvrigt er den samme, som anvendes i SIR's undersøgelse fra 2015. Rigsrevisionen finder, at analyserne på baggrund af data for perioden 1. januar 2010 - 5. august 2015 klart peger på et behov for at vurdere området nærmere.

SKAT_MDL_001_0075159

Skatteministeriet har endvidere anført, at den metode, som Rigsrevisionen har anvendt til fremskrivningen af antal refusionsanmodninger, er grundlæggende forkert, da de fleste anmodninger om refusion modtages i april, maj og juni, og at fremskrivningen dermed giver et misvisende billede. Rigsrevisionen skal hertil anføre, at fremskrivningen er baseret på det gennemsnitlige dagligt modtagne antal ansøgninger i perioden 1. januar 2015 - 5. august 2015, og konstaterer, at juli var den måned i 2015, hvor der blev udbetalt næstmest hele året, og at der alene i de første 5 dage af august, indtil udbetalingerne blev sat i bero, blev udbetalt mere end i januar, februar og marts 2015 tilsammen. Rigsrevisionen finder på den baggrund, at fremskrivningen illustrerer, hvordan udviklingen i antal ansøgninger via blanketordningen kunne være fortsat, hvis SKAT ikke havde modtaget oplysninger udefra om formodet svindel og efterfølgende havde reageret ved at sætte udbetalingerne i bero.

**Analyser af indtægtslister**
Rigsrevisionen har gennemgået Skatteministeriets indtægtslister til Folketingets Skatteudvalg og Finansudvalg for hele undersøgelsesperioden. I afsnit 2.3 indgår analyser af udviklingen i nettoindtægter på baggrund af oplysninger fra Skatteministeriets månedlige indtægtslister i perioden 2012-2014. Skatteministeriet har anført, at de udsving i indtægterne fra udbytteskat, som Rigsrevisionen gengiver i figur 7 og 8, ikke nødvendigvis ligger uden for de historiske erfaringer set over en længere periode end den, Rigsrevisionen anvender. Rigsrevisionen er uforstående over for Skatteministeriets indvending og finder, at fx en negativ nettoindtægt flere måneder i træk, eller når den samlede nettoindtægt år-til-dato er mindre end samme periode året før, bør give anledning til, at Skatteministeriet undersøger området nærmere. Rigsrevisionen skal hertil tilføje, at Skatteministeriets indtægtslister netop sammenligner opgørelse i nettoindtægter med foregående år. Rigsrevisionen bemærker endvidere, at der heller ikke i 2010 og 2011 har været en negativ nettoindtægt, bortset fra i november, hvor selskabsskatten modregnes, og i maj 2010, hvor den negative nettoindtægt skyldes en ekstraordinær refusion på 1,5 mia. kr. begrundet i en domskendelse. Rigsrevisionen finder, at analyserne på baggrund af information fra indtægtslisterne i perioden 2012-2014 klart peger på et behov for at undersøge baggrunden for udviklingen nærmere.

**Bilag 3. Ordliste**

| | |
|---|---|
| Aktieudlån | Ejeren af en aktie kan låne aktien ud til anden part. Aktielåneren har råderetten over aktien i en på forhånd fastsat periode, eller indtil aktien tilbagekaldes. |
| Bankordningen | En aftale mellem SKAT og 3 banker, der bestod i, at de 3 banker kunne anmode SKAT om refusion af udbytteskat på vegne af udenlandske aktionærer. |
| Blanketordningen | Ved anmodning om refusion af udbytteskat via blanketordningen skal aktionæren indsende en udfyldt blanket til SKAT med anmodning om refusion af udbytteskat. |
| Dobbeltbeskatnings-overenskomst | De respektive dobbeltbeskatningsoverenskomster fastsætter, hvor meget aktionæren skal betale i udbytteskat i henholdsvis Danmark og i hjemlandet. For aktionærer bosat i lande, der har en dobbeltbeskatningsoverenskomst med Danmark, betyder det, at den udenlandske modtager af dansk aktieudbytte kan anmode SKAT om at få refunderet den indeholdte udbytteskat helt eller delvist, afhængigt af hvad der er fastsat i dobbeltbeskatningsoverenskomsten. |
| Early warning | Betegnelse for system til håndtering af henvendelser til SKAT, Skatteministeriet eller Skatteankestyrelsen om huller i lovgivningen e.l., der medfører en trussel mod statskassen. |
| Indtægtsliste til Folketingets Skatteudvalg og Finansudvalg | Regnskabsoplysninger om nettoindtægterne fra skatter og afgifter for den pågældende måned og for samme måned året før. Indtægtslisten indeholder endvidere oplysninger om indtægterne år-til-dato og sammenligner år-til-dato året før. |
| Nettoindtægt fra udbytteskat | Indtægterne fra udbytteskat fraregnet refusion og modregnet selskabsskat. |
| Omnibusdepot | Et samledepot, som typisk er ejet af en udenlandsk bank, hvori danske aktier, der er ejet af personer hjemmehørende i udlandet, kan være placeret. I disse tilfælde indeholder SKATs it-systemer ikke oplysninger om den enkelte ejer af aktierne, men kun oplysninger til identifikation af ejeren af omnibusdepotet. |
| Opfølgningsprotokoller | Protokoller udarbejdet i SKAT og godkendt af SKATs direktion. Protokollerne giver et overblik over SKATs arbejde med at følge op på bemærkninger og anbefalinger fra SIR. |
| Refusion af udbytteskat | Tilbagebetaling af for meget indbetalt udbytteskat for udenlandske aktionærer i henhold til en dobbeltbeskatningsoverenskomst. |
| Regnskabsgodkendelse | Den afsluttende godkendelse af et regnskab for en periode, fx en måned eller et kvartal. |
| Sandsynlighedskontrol | En vurdering af, om indtægter og udgifter forekommer rimelige i den forløbne periode under iagttagelse af indtægter og udgifter de seneste 2 regnskabsår med udgangspunkt i udviklingen i de enkelte perioder samt år-til-dato (sandsynlighedskontrol). For afvigelser, der undersøges i forbindelse med sandsynlighedskontrollen, skal forklaringerne dokumenteres eller vedlægges som bilag. |
| Skatteministeriets Interne Revision (SIR) | Ifølge rigsrevisorlovens § 9, stk. 1, kan der indgås aftale om, at revisionsopgaver i henhold til lovens § 2, stk. 1, nr. 1 og 2, varetages i et nærmere fastlagt samarbejde mellem rigsrevisor og et organ for intern revision. Ifølge den indgåede § 9-aftale mellem Skatteministeriet og Rigsrevisionen sikrer departementschefen i samarbejde med revisionschefen, at den interne revision har en sådan kapacitet og kompetence, at den til enhver tid kan løse sine opgaver på en for departementschefen og Rigsrevisionen tilfredsstillende måde. |
| TRACE-projekt (Treaty Relief and Compliance Enhancement) | Et OECD-projekt med det formål at etablere et system, hvor der foretages automatisk nettoindeholdelse af udbytteskat i henhold til den relevante dobbeltbeskatningsoverenskomst i forbindelse med udbetaling af udbytte til udenlandske aktionærer. Ved nettoindeholdelse af udbytteskat foretages ikke refusion. |
| Udbytteskat | Beskatning af aktionærers udbytte fra aktier i danske virksomheder. |
| VP-ordning | En aftale om nettoindeholdelse af udbytteskat for udenlandske investorer. Blev administreret af VP-Securities (Værdipapircentralen). |